IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

RHONDA FLEMING, *et al*.,

     Plaintiffs,

v.

WARDEN T. RULE, *et al*.,

     Defendants.

Civil Action No. 4:25-cv-00157-D

(Consolidated with Civil Action No. 4:25-cv-00438-D)

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION

NANCY E. LARSON
Acting United States Attorney

Lisa R. Hasday
Assistant United States Attorney
Texas Bar No. 24075989
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8737
Facsimile:   214-659-8807
lisa.hasday@usdoj.gov

Attorneys for Defendants

**Table of Contents**

I.      Introduction ..................................................................................................... 1

II.     Legal Standards .............................................................................................. 2

III.    Argument and Authorities .............................................................................. 3

        A.      All of Plaintiffs' claims fail for lack of administrative exhaustion.............. 3

        B.      Herrera's potential transfer is not retaliatory. ............................................ 10

IV.     Conclusion ..................................................................................................... 16

# Table of Authorities

## Cases

*Alexander v. Tippah Cnty., Miss.*,
   351 F.3d 626 (5th Cir. 2003) .......................................................................... 6

*Bilbrew v. Corona*,
   No. CIV.A. H-04-2075, 2005 WL 1515409 (S.D. Tex. June 27, 2005) ...................... 11

*Black Fire Fighters Ass'n v. City of Dallas*,
   905 F.2d 63 (5th Cir. 1990) ............................................................................ 2

*Block v. Rutherford*,
   468 U.S. 576 (1894) ...................................................................................... 3

*Booth v. Churner*,
   532 U.S. 731 (2001) ...................................................................................... 6

*Canal Auth. v. Callaway*,
   489 F.2d 567 (5th Cir. 1974) .......................................................................... 2

*Cherokee Pump & Equip., Inc. v. Aurora Pump*,
   38 F.3d 246 (5th Cir. 1994) ............................................................................ 2

*Damond v. City of Rayville*,
   127 F.4th 935 (5th Cir. 2025) ........................................................................ 14

*Estrada v. Bundy*,
   No. 5:20-CV-00030-H, 2025 WL 2174160 (N.D. Tex. July 31, 2025) ..................... 8

*Gonzalez v. Seal*,
   702 F.3d 785 (5th Cir. 2012) .......................................................................... 3

*Hamer v. Jones*,
   442 F. App'x 106 (5th Cir. 2011) ..................................................................... 4

*Holland Am. Ins. Co. v. Succession of Roy*,
   777 F.2d 992 (5th Cir. 1985) .......................................................................... 2

*Huff v. Neal*,
   555 F. App'x 289 (5th Cir. 2014) ..................................................................... 5

*Jones v. Bock*,
   549 U.S. 199 (2007) ................................................................................ 3, 5, 6

*Kaba v. Stepp*,
    458 F.3d 678 (7th Cir. 2006) ....................................................................... 8

*Krilich v. Federal Bureau of Prisons*,
    346 F.3d 157 (6th Cir. 2003) ....................................................................... 4

*Martinez v. Mathews*,
    544 F.2d 1233 (5th Cir. 1976) .................................................................... 3

*Melot v. Bergami*,
    970 F.3d 596 (5th Cir. 2020) ..................................................................... 11

*Norman v. Carr*,
    No. 4:21-cv-630-O, 2022 WL 221227 (N.D. Tex. Jan. 25, 2022) ............. 4, 8

*Nottingham v. Finsterwald*,
    582 F. App'x 297 (5th Cir. 2014) ............................................................... 7

*Olim v. Wakinekona*,
    461 U.S. 238 (1983) ................................................................................... 12

*Porter v. Nussle*,
    543 U.S. 516 (2002) ................................................................................ 4, 5

*Rinaldi v. United States*,
    904 F.3d 257 (3d Cir. 2018) ....................................................................... 8

*Roberts v. Vannoy*,
    No. 16-CV-600-JWD-EWD, 2017 WL 2256962 (M.D. La. May 23, 2017) ................. 3

*Ross v. Blake*,
    578 U.S. 632 (2016) ................................................................................... 6

*Stone Metals Am., LLC v. Eubank*,
    No. 3:20-cv-253-K, 2020 WL 570906 (N.D. Tex. Feb. 5, 2020) ................... 2

*Taylor v. Sterrett*,
    532 F.2d 462 (5th Cir. 1976) ..................................................................... 11

*Thornton v. West*,
    529 F. App'x 107 (3d Cir. 2013) ................................................................. 4

*Thryv, Inc. v. Listing Central, LLC*,
    No. 3:20-cv-2756-X, 2020 WL 6504668 (N.D. Tex. Nov. 5, 2020) ............... 2

*United States v. Voda*,
994 F.2d 149 (5th Cir. 1993) ........................................................................... 11

*United States v. Wilson*,
503 U.S. 329 (1992) ........................................................................................ 11

*Valentine v. Collier*,
978 F.3d 154 (5th Cir. 2020) ....................................................................... 4, 6

*Wilson v. Epps*,
776 F.3d 296 (5th Cir. 2015) ........................................................................... 6

*Wright v. Hollingsworth*,
260 F.3d 357 (5th Cir. 2001) ........................................................................... 4

## Statutes, Regulations, and Other Authorities

18 U.S.C. § 3621 ...................................................................................... 11, 12

28 U.S.C. § 1915A ......................................................................................... 3

42 U.S.C. § 1983 ........................................................................................... 4

42 U.S.C. § 1997e(a) ............................................................................... 3, 4, 5

28 C.F.R. § 115.52(e)(1) ................................................................................. 5

28 C.F.R. § 540.19 ...................................................................................... 11

28 C.F.R. § 540.103 ..................................................................................... 11

28 C.F.R. §§ 542.10–542.19 ........................................................................ 5, 6

BOP Program Statement 1315.07 .................................................................. 10

BOP Program Statement 5100.08 .................................................................. 14

BOP Program Statement 5264.08 .................................................................. 11

BOP Program Statement 5265.14 .................................................................. 11

# I.    Introduction

Plaintiffs Rhonda Fleming and Miriam Crystal Herrera, inmates at the Federal Medical Center ("FMC") Carswell in Fort Worth, Texas, seek a temporary restraining order ("TRO") and preliminary and permanent injunction that would enjoin Defendants, the United States of America and officials of the Department of Justice and the Federal Bureau of Prisons ("BOP"), from (1) housing any biologically male inmate in the same housing unit as either plaintiff, (2) giving any biologically male inmate access to certain "private" spaces in the prison, and (3) transferring Plaintiff Herrera to another institution "or otherwise adversely altering the terms or conditions of her confinement . . . except where supported by a bona fide, documented penological or medical reason unrelated to this lawsuit."  Doc. 58, at 38.[1]

In seeking this extraordinary relief, Plaintiffs have not carried the heavy burden that the law imposes on them.  Foremost among the requirements of a TRO or injunction is that Plaintiffs show a substantial likelihood that they will prevail on the merits of their claims.  But because neither plaintiff engaged in the required administrative remedy process before filing suit, they show *no* likelihood of success on the merits of *any* claim. Although Plaintiffs' failure to exhaust administrative remedies alone forecloses any relief in this Court, Defendants nonetheless discuss why Herrera's potential transfer to another institution is not retaliatory, contrary to her allegation.  In sum, Plaintiffs fail to

---

[1] "Doc. ___" citations refer to the items on the Court's electronic docket.  The referenced page numbers are the ECF-generated page numbers at the top of the pages in each document.

**Defendants' Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunction – Page 1**

demonstrate a likelihood of success on their claims, and their motion should therefore be denied.

## II.    Legal Standards

Temporary restraining orders and preliminary injunctions are extraordinary remedies. *Cherokee Pump & Equip., Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994); *Stone Metals Am., LLC v. Eubank*, No. 3:20-cv-253-K, 2020 WL 570906, at *1 (N.D. Tex. Feb. 5, 2020). Such remedies are "not to be granted routinely, but only when the movant, by a clear showing, carries [the] burden of persuasion." *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)); *see also Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974) (explaining that a preliminary injunction "is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion").

"The four prerequisites are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Auth.*, 489 F.2d at 572; *see also Thryv, Inc. v. Listing Central, LLC*, No. 3:20-cv-2756-X, 2020 WL 6504668, at *1 (N.D. Tex. Nov. 5, 2020).

The "primary justification" of such relief is to "preserve the court's ability to render a meaningful decision on the merits." *Canal Auth.*, 489 F.2d at 573. But here,

Plaintiffs are actually seeking a change in the status quo, i.e., a mandatory injunction that would require Defendants to take specific action by a specific deadline.  Such mandatory preliminary relief that goes beyond maintaining the status quo is "particularly disfavored."  *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) (citation omitted).  Moreover, "prison administrators are to be accorded wide-ranging deference in their adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain internal security."  *Roberts v. Vannoy*, No. 16-CV-600-JWD-EWD, 2017 WL 2256962, at *2 (M.D. La. May 23, 2017) (citing *Block v. Rutherford*, 468 U.S. 576, 584-85 (1894)) (denying a motion for temporary restraining order or preliminary injunction).

### III.    Argument and Authorities

The heavy burden for obtaining a mandatory temporary restraining order or preliminary injunction is well known.  Because Plaintiffs show no likelihood of success on the merits, they are far from meeting that burden.

### A.    All of Plaintiffs' claims fail for lack of administrative exhaustion.

As a procedural matter, Plaintiffs have no likelihood of prevailing on the merits because they have failed to exhaust mandatory administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA").  The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit."  *Jones v. Bock*, 549 U.S. 199, 202 (2007) (citing 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a)).  The timing of exhaustion is critical, as "[i]t is irrelevant whether exhaustion is achieved during the federal proceeding."  *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

"The PLRA's exhaustion requirement is no-nonsense." *Valentine v. Collier*, 978 F.3d 154, 160 (5th Cir. 2020).  It provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 543 U.S. 516, 532 (2002); *see also Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The exhaustion requirement thus applies to Plaintiffs' bodily privacy, Eighth Amendment, Religious Freedom Restoration Act ("RFRA"), Administrative Procedure Act ("APA"), and First Amendment claims—in sum, the requirement applies to *all* the claims at issue in the motion.  *See Hamer v. Jones*, 442 F. App'x 106, 108 (5th Cir. 2011) (dismissing inmate's bodily privacy claim regarding an alleged cross-sex strip search for failure to exhaust under the PLRA); *Valentine*, 978 F.3d at 162 (5th Cir. 2020) (finding inmate's failure to exhaust under the PLRA "fatal" to the inmate's Eighth Amendment claim); *Norman v. Carr*, No. 4:21-cv-630-O, 2022 WL 221227, at *6 (N.D. Tex. Jan. 25, 2022) (dismissing a RFRA claim for want of exhaustion under the PLRA); *Krilich v. Federal Bureau of Prisons*, 346 F.3d 157, 159 (6th Cir. 2003) (dismissing APA claim for failure to exhaust under the PLRA); *Thornton v. West*, 529 F. App'x 107, 109–10 (3d Cir. 2013) (dismissing section 1983 action alleging retaliatory transfer for lack of exhaustion under the PLRA).

"Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  Exhaustion allows a prison to address complaints first, reduces litigation by resolving some complaints in-house, and improves litigation by developing an administrative record. *Jones*, 549 U.S. at 219.  The BOP's administrative remedy procedures, set forth in 28 C.F.R. §§ 542.10–542.19, provide for review of any complaint that relates to any aspect of an inmate's confinement.  Informal resolution is first attempted.  If informal resolution proves unsuccessful, then the inmate may file a formal complaint with the prison warden.  *See id.* at §§ 542.13–542.14.  Informal resolution is initiated through the filing of a form BP-8, while a formal complaint is initiated through a form BP-9.  *Huff v. Neal*, 555 F. App'x 289, 293 (5th Cir. 2014) (per curiam).[2]

If an inmate is not satisfied with the warden's response to a form BP-9, the inmate may appeal the warden's response to the prison's regional director via a form BP-10.  28 C.F.R. § 542.15(a); *Huff*, 555 F. App'x at 293.[3]  If the inmate is dissatisfied with the regional response, the inmate may file a national appeal with the Office of General Counsel in Washington, D.C.  28 C.F.R. § 542.15(a).  Appeal to the general counsel is the final administrative appeal within the BOP.  *Id*.  This final step is effectuated via a form BP-11.  *Huff*, 555 F. App'x at 293.  If an inmate does not receive a response within

---

[2] Third parties, including attorneys, may file requests for administrative remedies relating to allegations of sexual abuse.  *See* 28 C.F.R. § 115.52(e)(1).

[3] Inmates alleging retaliation may initiate a grievance directly with the BOP's regional director using a form BP-10 if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the request became known at the institution.  *See* 28 C.F.R. § 542.14(d)(1).

a specified time, the absence of a timely response is considered a denial at that level.  28

C.F.R. § 542.18.

The PLRA's exhaustion requirement is "mandatory" and cannot be excused by a

court.  *Ross v. Blake*, 578 U.S. 632, 638 (2016); *id.* at 641 ("[T]he PLRA prevented a

court from deciding that exhaustion would be unjust or inappropriate in a given case.");

*Valentine*, 978 F.3d at 162 (finding exhaustion required even where grievance process

was lengthy, unlikely to provide relief, and by all accounts, suboptimal).  The only

"textual exception to mandatory exhaustion" in the PLRA is the "availability" of

administrative remedies.  *Ross*, 578 U.S. at 642.  To determine what remedies are

"available," and thus must be exhausted, courts look to "the applicable procedural rules

. . . defined . . . by the prison grievance process itself."  *Jones*, 549 U.S. at 218.

Administrative relief is "available" so long as the prison administrator has "authority to

take some action in response to a complaint," even if that relief does not provide the

precise "remedial action an inmate demands to the exclusion of all other forms of

redress."  *Booth v. Churner*, 532 U.S. 731, 736 (2001).  Courts are not "to inquire

whether administrative procedures satisfy minimum acceptable standards of fairness and

effectiveness"; rather, "a prisoner must exhaust such administrative remedies as are

available, whatever they maybe."  *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630

(5th Cir. 2003) (per curiam) (citation and internal quotations omitted).

The Fifth Circuit has taken a "strict" approach to the exhaustion requirement.

*Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) (citation and internal quotations

omitted) ("[P]risoners must not just substantially comply with the prison's grievance

procedures, but instead must exhaust available remedies *properly*.").  The Fifth Circuit has also recognized that "[w]hen a defendant asserts the affirmative defense of lack of exhaustion, the district court should rule on [the exhaustion] issue before allowing the case to proceed to the merits."  *Nottingham v. Finsterwald*, 582 F. App'x 297, 297 (5th Cir. 2014) (citation and internal quotations omitted).[4]

Here, Plaintiff Fleming is very familiar with the BOP's administrative remedy procedures.  Since her arrival in BOP's custody in 2010, she has submitted 493 administrative remedy requests, which is approximately three per month.  App. 3, ¶ 12.[5] Fleming is also familiar with the administrative appeals procedures and has satisfactorily navigated the procedural requirements to fully present—and thereby exhaust— approximately 39 distinct remedies.  *Id*.  But she has not presented any administrative claim related to this lawsuit to FMC Carswell or any other BOP institution in which she has been housed.  *Id*. at 3, ¶ 14.  The closest Fleming came to presenting a matter related to her current litigation was in October 2023, when she submitted Remedy 1179161-F1, in which she repeatedly requested the removal of all "male officers"—not inmates—from women's federal prisons.  *Id*. at 3, ¶ 15.  She alleged that officers at another institution had been engaged in sexual misconduct.  *Id*.  Fleming's request at no point discussed biologically male inmates housed in female facilities.  *Id*.  Therefore, that remedy request was unrelated to any issue currently at play and, in any event, it was not exhausted.  *Id*.

---

[4] Defendants reserve the right to respond to Plaintiffs' claims on the merits after the Court decides the exhaustion issue.

[5] "App." citations refer to the appendix in support of this response.

Fleming now claims that she sought the required forms but was ignored. As evidence, she attaches an email message that she sent on January 31, 2025, the day after she arrived at FMC Carswell, requesting "access to the grievance process." Doc. 59, at 110. From the time Fleming sent that email, she submitted sixteen administrative remedy requests: eleven to FMC Carswell and five to the regional director. App. 3, ¶ 13. The BOP thus clearly gave Fleming "access to the grievance process." *Cf. Estrada v. Bundy*, No. 5:20-CV-00030-H, 2025 WL 2174160, at *7 (N.D. Tex. July 31, 2025) (supporting its finding that an inmate had failed to exhaust under the PLRA with "evidence offered by Defendants show[ing] that the grievance procedure was available to Plaintiff and that he used it to address other matters during the same time frame"); *Norman v. Carr*, No. 4:21-cv-630-O, 2022 WL 221227, at *4 (N.D. Tex. Jan. 25, 2022) (supporting failure-to-exhaust finding with "records . . . show[ing] that [the inmate] did have access to the administrative-remedy process and was able to successfully file (and administratively appeal) a number of administrative-remedy requests" in the prior few years).

Some courts have stated that an inmate's continued ability to file administrative claims on mundane matters does not necessarily undermine a conclusion that she may have been unable to file on more serious matters. *See Kaba v. Stepp*, 458 F.3d 678, 685 (7th Cir. 2006) (recognizing "a prisoner may only be able to file grievances on certain topics"); *Rinaldi v. United States*, 904 F.3d 257, 270 (3d Cir. 2018) (observing that a prisoner's "willingness to file grievances concerning unrelated and far less inflammatory subjects . . . [was] hardly dispositive" as to whether grievances were universally available). However, that concern is not present here. Fleming's requests this year

include allegations that FMC Carswell's warden engaged in misconduct, that a staff member engaged in sexual abuse, and that commissary funds were being stolen, alongside less serious concerns including access to copiers and cosmetic items. App. 4, ¶ 17. Fleming does not address her obvious access to and repeated use of the administrative remedy program, but instead claims that the "forms were never provided" and "no administrative remedy process was made available to me." Doc. 59, at 106–07, ¶ 17. Fleming's claim is demonstrably false and her failure to previously present these matters for administrative consideration is fatal to her current action.

As for Plaintiff Herrera, she has not filed any administrative remedies since her arrival in BOP custody. App. 4, ¶ 18. This includes any grievance regarding her potential transfer to another institution or any other matter relevant to the current litigation. *Id*. While the operative amended complaint alleges that Herrera "was also not provided the grievance form" to present these issues for administrative review (Doc. 61, at 30, ¶ 109), her declaration indicates only that her grievances were "ignored" (Doc. 59, at 114, ¶ 10). As Herrera's co-plaintiff's conduct demonstrates, the administrative remedy program is available at FMC Carswell.

Indeed, inmates may request grievance forms from their correctional counselor, who is regularly available in the housing unit and has weekly open house hours. App. 2, ¶ 11. If an inmate's counselor has not provided the requisite forms, the inmate may escalate the matter and request the forms from her unit manager. *Id*. Inmates have access to their unit managers during lunch as well as during regularly scheduled open house hours. *Id*. Inmates may also speak directly with FMC Carswell's executive assistant or

even the warden during the lunch hour. *Id.* In addition, inmates may send email messages to every member of their unit team, including the unit manager and correctional counselor, and to every member of the executive staff. *Id.* at 2–3, ¶ 11. In light of these numerous ways of obtaining grievance forms, Herrera's conclusory allegation that an unidentified officer refused to provide her the requested forms is inadequate to excuse her obligation, especially when Fleming has demonstrated the ability to both obtain and submit grievance forms regarding wide-ranging and serious allegations.

Because both Fleming and Herrera have failed to exhaust the PLRA's mandatory administrative remedies, they have no likelihood of prevailing on the merits and their motion for a TRO and preliminary and permanent injunction should be denied.

## B. Herrera's potential transfer is not retaliatory.

The Court need not proceed further to dispose of this case. Nonetheless, to dispel Plaintiff Herrera's claim that the BOP is retaliating against her for filing this lawsuit, Defendants explain here the BOP's authority to make designation decisions and the reasons for Herrera's potential transfer to another institution. Paradoxically, although Herrera complains about the conditions at FMC Carswell, she also claims that the BOP's designating her for transfer out of FMC Carswell is an adverse, retaliatory act because the potential institution that she would be transferred to is "inferior." Doc. 58, at 35. She fails to explain why the potential transferee institution is inferior to FMC Carswell.[6] But

---

[6] There is insufficient evidence to conclude that any transfer would diminish Herrera's legal representation or access to the courts. If Herrera is transferred to a new institution, she would still be able to visit and confer with her attorneys. The BOP has well-established protocols to facilitate legal visits. *See* 28 C.F.R. § 543.13(b) (the BOP "generally may not limit the frequency of attorney visits"); *see also Legal Activities, Inmate*, BOP Program Statement 1315.07. Inmates are also entitled to phone calls with

even if Herrera could show that the other institution is somehow inferior, "it is not

sufficiently clear that a transfer . . . without other consequences is a retaliatory adverse

act" because "[a] prisoner has no constitutional right to avoid a transfer." *Bilbrew v.

Corona*, No. CIV.A. H-04-2075, 2005 WL 1515409, at *2 (S.D. Tex. June 27, 2005),

*aff'd*, 213 F. App'x 302 (5th Cir. 2007).

Congress has granted the BOP discretion to "designate the place of the prisoner's

imprisonment . . . ." 18 U.S.C. § 3621(b).  BOP's discretion is "exclusive." *Melot v.*

*Bergami*, 970 F.3d 596, 598 (5th Cir. 2020).  Indeed, the relevant statute states that the

BOP's "designation of a place of imprisonment . . . is not reviewable by any court."  18

U.S.C. § 3621(b).  "The Bureau of Prisons is given this responsibility because the

executive branch and not the judicial branch is responsible for administering sentences."

*United States v. Voda*, 994 F.2d 149, 152 (5th Cir. 1993) (citing *United States v. Wilson*,

503 U.S. 329 (1992)).

In exercising its exclusive authority, the BOP does not make designation decisions

lightly and, in fact, is required to consider numerous statutory factors before designating

an inmate to a particular facility.  These factors include, critically, "the resources of the

---

their attorneys when visits are not feasible or adequate.  *See* 28 C.F.R. § 540.103; *see also Inmate Telephone Regulations*, BOP Program Statement 5264.08, at 10–11.  In addition, inmates may communicate with their attorneys in writing via confidential legal mail.  *See* 28 C.F.R. § 540.19; *see also Correspondence*, BOP Program Statement 5265.14, at 16–17, *available at* https://www.bop.gov/policy/progstat/5265_014.pdf.  While it may be true that Herrera's legal team would have an easier time visiting her and could more cheaply and quickly mail her correspondence if she remained in the area local to them, this is not grounds for abridging the BOP's authority to relocate its inmate population as needed.  There are certain inconveniences inherent in representing incarcerated individuals, but, where those burdens do not "effectively diminish a prisoner's access to the courts," *Taylor v. Sterrett*, 532 F.2d 462, 473 (5th Cir. 1976), courts have refrained from intervening.  To hold otherwise would be to invite similar requests for transfer holds from every inmate with pending litigation.

facility contemplated." 18 U.S.C. § 3621(b). In addition, as Plaintiffs recognize, the BOP shall place a prisoner in a facility within 500 driving miles to the prisoner's primary residence, "to the extent practicable." *Id*.; Doc. 58, at 18. After considering the statutory factors, the BOP shall "at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b). "Overcrowding . . . may necessitate interstate transfers." *Olim v. Wakinekona*, 461 U.S. 238, 246 (1983). Ultimately, the BOP may house a prisoner in "any . . . facility that meets minimum standards of health and habitability established by the [BOP]." 18 U.S.C. § 3621(b). A prisoner does not have a constitutional right to be placed in the correctional facility of her choice. *See Olim*, 461 U.S. at 245.

Currently, Herrera is assigned to FMC Carswell's general population unit. App. 294, ¶ 4. That unit is currently overpopulated. *Id*. FMC Carswell is the only BOP facility in Texas or any surrounding state with a permanent population of low-security female inmates. *Id*. at 294, ¶ 5. Additionally, FMC Carswell is within 500 miles of multiple major metropolitan centers, including the Dallas-Fort Worth metroplex, Houston, San Antonio, Austin, Oklahoma City, Memphis, and Baton Rouge. As a result, space is often at a premium and, when the inmate population exceeds capacity, the BOP will transfer inmates who are from places further afield and who are not engaged in any of the unique programming opportunities offered at FMC Carswell. *Id*. When a specific institution such as FMC Carswell is at or exceeds its capacity, inmates from that facility are transferred to other facilities matching their security and other needs. *Id*.

To that end, on May 22, 2025, the BOP's regional correctional programs administrator asked FMC Carswell's case management coordinator and associate warden to consider whether 48 specified FMC Carswell inmates, including Herrera, could be transferred to another institution where the inmate population is currently below capacity. *Id.* at 295, ¶ 7.  The 48 inmates were selected based on various factors, including their release dates, the number of miles between the relevant institutions and the inmates' releasing addresses, and the inmates' medical "care levels." *Id.*  Whether an inmate had filed a grievance or litigation was *not* a factor.[7]  *Id.* at 296, ¶ 16.

The regional correctional programs administrator requested that FMC Carswell conduct further individualized assessments of each of the 48 inmates who were preliminarily selected for transfer.  *Id.* at 295, ¶ 8.  FMC Carswell was tasked with considering additional factors including whether the inmate was participating in a program that would prohibit transfer such as the Female Integrated Treatment Program ("FIT") or the Residential Drug Abuse Program ("RDAP") and whether the inmate was subject to the Central Inmate Monitoring System, which has additional procedures for transferring inmates who present special management needs.  *Id.*  Again, whether an inmate had filed a grievance or litigation was not a factor.  *Id.* at 296, ¶ 16.  On October 3, 2025, after conducting the individualized assessments, FMC Carswell produced a list of fifteen inmates, including Herrera, who were deemed suitable for transfer.  *Id.* at 295, ¶ 9.

---

[7] Indeed, Plaintiff Fleming was not included in this group of 48 inmates.  App. 295, ¶ 7.

BOP deemed Herrera suitable for transfer not due to any retaliation, but because her circumstances met the relevant factors.  With a release date of March 8, 2052, Herrera will not leave the BOP's custody anytime soon.  *Id.* at 15.  Herrera's releasing address is designated only as "Mexico."[8]  *Id.* at 296, ¶ 15.  Her "care levels" are the lowest that the BOP can assign an inmate.  *Id.* at 295, ¶ 10; *id.* at 308.  Finally, she is not participating in any program that would prohibit transfer, and she is not subject to the Central Inmate Monitoring System.  *Id.* at 295, ¶ 11.  Thus, Herrera is incorrect about the motivation behind her redesignation status.  The BOP has been evaluating Herrera for possible transfer, along with dozens of other inmates, as part of its routine course of business. This process began long before counsel was appointed and well before Plaintiffs attempted service.  And even assuming for the sake of argument that the BOP did possess some retaliatory motive, Herrera cannot show—given all the factors supporting a transfer—that she would not have been designated for transfer but for the alleged retaliatory motive.  Herrera's conclusory allegations of retaliation fail.  *Cf. Damond v. City of Rayville*, 127 F.4th 935, 941 (5th Cir. 2025) (affirming dismissal of prisoner's retaliation claim based on "only conclusory allegations that he was transferred to another prison in retaliation for filing grievances and lawsuits").

---

[8] Herrera is an illegal immigrant who, upon her release, is subject to a detainer from U.S. Immigration and Customs Enforcement and will be returning to the community outside the United States.  App. 296, ¶ 15. Accordingly, the BOP need not make any special effort to ensure that Herrera is within 500 miles of a specific location.  *Id.* (citing BOP Program Statement 5100.08, *Inmate Security Designation and Custody Classification*, ch. 7, p. 4).

**Defendants' Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunction – Page 14**

Regardless of FMC Carswell's identification of Herrera as suitable for transfer, Herrera will not be imminently transferred to another institution because she is subject to a medical hold.  App. 296, ¶ 12.  The BOP issues medical holds if an inmate has a pending appointment which, in the determination of the clinical director or designee, should not be interrupted.  *Id*.  The BOP entered a medical hold for Herrera on September 27, 2025.  *Id*.  Therefore, from that moment, Herrera could not be transferred—even if designated to a new facility—until such time as that hold is lifted.  *Id*.[9]  Herrera claims that, in October 2025, "[o]nly after Ms. Herrera's counsel intervened did the BOP 'remove her from the transfer list' because of an upcoming oral surgery."  Doc. 58, at 15. This is incorrect.  It is only because of Herrera's medical hold—entered before Herrera or her counsel became aware of any potential transfer—that the BOP cannot move her. Herrera was identified for transfer through ordinary procedures, and her transfer was stayed also due to ordinary procedures.  Her claim that any part of this process was motivated by a retaliatory purpose is baseless.

Because BOP's reasons for designating Herrera for transfer are legitimate and non-retaliatory, there is nothing improper about the BOP's designation decision, and her First Amendment claim fails.

---

[9] A medical hold prevents transfer but does *not* prevent the BOP from *designating* an inmate for transfer, as was done here.  App. 296, ¶ 12.  The existence of a medical hold does not necessarily suggest that the lowest care-level designation is inappropriate for the inmate with the medical hold.  *Id*.  If Herrera's health needs should change such as to warrant an increase in her care level above the lowest care level, the BOP would then consider her for redesignation to a facility that could meet those needs, including potentially remaining at FMC Carswell.  *Id*. at 296, ¶ 14.

## IV.     Conclusion

For the foregoing reasons, Plaintiffs' motion should be denied.

Respectfully submitted,

NANCY E. LARSON
Acting United States Attorney

/s/ Lisa R. Hasday
Lisa R. Hasday
Assistant United States Attorney
Texas Bar No. 24075989
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8737
Facsimile:    214-659-8807
lisa.hasday@usdoj.gov

Attorneys for Defendants

### Certificate of Service

On November 10, 2025, I electronically submitted the foregoing document with

the Clerk of Court for the U.S. District Court, Northern District of Texas, using the

electronic case filing system of the Court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Lisa R. Hasday
Lisa R. Hasday
Assistant United States Attorney