IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>  Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>  Defendants.<br><br>ELIZABETH ANN HARDIN and<br>BRENDA LEIGH KIRK<br><br>  [Proposed] Intervenor-Plaintiffs<br><br>and<br><br>JASMINE MEABON, JESSICA<br>CLEMENCIO MORAIS, and<br>KEISHA WILLIAMS<br><br>[Supplemental Proposed] Intervenor-<br>Plaintiffs | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |

**COMBINED REPLY IN SUPPORT OF PROPOSED INTERVENOR-PLAINTIFFS'
MOTION TO INTERVENE [ECF NO. 68] AND MOTION TO INTERVENE ON
BEHALF OF ADDITIONAL INTERVENOR-PLAINTIFFS**

As already demonstrated, the Court should grant permissive intervention for Proposed Intervenor-Plaintiffs Elizabeth Ann Hardin and Brenda Leigh Kirk ("Original Intervenors") to protect themselves from the unlawful presence of biological males in federal prison. Additionally, FMC Carswell inmates Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams ("Additional Intervenors") request that the Court allow them also to intervene as plaintiffs in this case for similar reasons. A copy of a First Amended Proposed Complaint-in-Intervention on behalf of all five women is attached as Exhibit A.

## I.   INTRODUCTION

Defendants do not deny that *today* there are biological male inmates at FMC Carswell; that those males share housing, showering, and toilet facilities with female inmates; and that Defendants intend to continue housing those males with women, despite the President's Executive Order prohibiting housing biological male inmates with female inmates. Because these actions are unlawful and harmful, the Proposed Intervenor-Plaintiffs seek intervention to protect themselves.

Nevertheless, Defendants oppose intervention on three grounds: (1) timeliness; (2) asserted prejudice tied to the December 18, 2025 exhaustion hearing; and (3) adequacy of representation. *See* ECF No. 90. None supports denial of intervention.

First, timeliness is a practical inquiry, not a tool of retribution for failing to intervene earlier. Hardin and Kirk were *pro se*, incarcerated litigants who did not have access to ordinary email, much less sophisticated court tracking software related to litigation at FMC Carswell. They moved to intervene in early November 2025—just days after this case entered an active merits posture. *See* ECF Nos. 68, 69. Meabon, Morais, and Williams seek intervention now because they have recently been harmed by actions of the Warden at FMC Carswell. After the Court issued its recent Temporary Restraining Order prohibiting housing male inmates "within the general population of any housing unit where either plaintiff is currently or will be housed during the

pendency of this TRO," ECF No. 83, the Warden concluded that he could just shift constitutional injuries from one group of women onto another by moving biological male inmates from one women's housing unit to another. Ex. A ¶ 71. That decision now subjects Meabon, Morais, and Williams to the same injuries the Court sought to remedy through the TRO.

Second, Defendants will suffer no prejudice. Proposed Intervenors (including Additional Intervenors) do not seek to appear at, participate in, or expand the scope of the December 18 exhaustion hearing, and they do not seek any continuance that would affect that hearing. In the long run, intervention will conserve judicial and party resources by resolving materially identical claims in one case rather than in serial hallway-by-hallway litigation involving FMC Carswell. That is Defendants' current approach: Having been ordered to protect Plaintiffs Fleming and Herrera from biological males, the Warden simply took a male inmate and moved him into a different women's unit in the same prison. Instead of solving the problem, he chose to injure different women—including Additional Intervenors. Ex. A ¶ 71.

Third, existing Plaintiffs do not "wholly represent" Proposed Intervenors' interests. ECF No. 90 at 5. The TRO is expressly limited to the housing and privacy areas to which Plaintiffs (*viz*. Fleming and Herrera) have access. TRO ¶¶ 3–5, ECF No. 83. In practice, the Warden has chosen to "comply" with that TRO by simply moving men away from Fleming's and Herrera's unit while leaving other women exposed. Proposed Additional Intervenors Jessica Clemencio Morais and Keisha Williams are housed in FMC Carswell's One North unit. Ex. A ¶¶ 17, 18. And Proposed Additional Intervenor Jasmine Meabon is housed in FMC Carswell's Two South unit. Ex. A ¶ 16.

After entry of the TRO, Defendants moved a biologically male inmate from Two North (where Fleming and Herrera lived) into One North. In One North, nothing is changed from the circumstances Fleming and Herrera faced, the living spaces are not separate and distinct, and male

2

inmates today use the same showers and restrooms as women. The same is true in Two South, where Meabon has personally been sexually harassed by a male inmate in a shared common restroom, and she was unable to invoke this Court's TRO to protect herself. Ex. A ¶ 91. Intervention is needed so that FMC Carswell ends its practice of "remedying" a constitutional injury by dumping the injury on other inmates.

The Court should grant Hardin's and Kirk's motion to intervene and grant the motion to intervene of Meabon, Morais, and Williams.

## II.  BACKGROUND

Original Plaintiffs Fleming and Herrera filed their Motion for TRO on November 3, 2025. ECF No. 58. Plaintiffs filed a Verified Amended Complaint on November 4, 2025. ECF No. 61.

Hardin and Kirk moved to intervene on November 10, 2025. ECF Nos. 68, 69. On November 19, 2025, the Court entered a TRO. ECF No. 83. The TRO restrains Defendants from housing male inmates "within the general female population" in any housing unit where either Fleming or Herrera is housed (at the time of the TRO, Two North). *Id.* ¶¶ 3–4. The TRO then provides two compliance options: Defendants may (a) "reassign male inmates away from plaintiffs' housing and privacy areas," or (b) "house such inmates in a secure, segregated area at FMC Carswell … while preventing access to female-only privacy areas." *Id.* ¶ 5. The Warden chose the former, sending the biological male inmate living in Fleming's and Herrera's unit to live with new women.

Keisha Williams seeks to intervene because, despite this Court's TRO, she continues to have men housed in her unit: One North. Ex. A ¶ 18. Williams witnessed how, after entry of the TRO, FMC Carswell moved at least one male inmate from Two North (Original Plaintiffs' unit at the time) into One North. FMC Carswell thus chose to "comply" with the Court's TRO by inflicting an additional constitutional injury on Williams. Today, in One North, male inmates share

3

the same showers and restrooms with women, and Defendants destroy women's bodily privacy daily.

Jessica Clemencio Morais is also housed in One North, where men currently live. Male inmates have sexually harassed her by winking, blowing kisses, invading her personal space, and peeking into her showers. Ex. A ¶ 95. A male inmate even "offered" Morais commissary goods in exchange for sex, an exchange that left Morais uncomfortable and embarrassed. *Id.*

Jasmine Meabon is housed in the Two South unit, where Defendants house at least one biological male inmate. He behaves "very aggressively" toward women and becomes hostile when women report him. After this Court's TRO, Meabon suffered an injury to her bodily privacy in a common-area restroom when a male inmate, Gary Boone, entered while she was in a stall, looked over her stall, and made a threatening and sexually explicit comment. Ex. A ¶ 91. Camera footage shows this male inmate entering the restroom. Morais witnessed the incident and saw Gary Boone laughing as he exited the common area restroom. When Morais reported the incident to a lieutenant, the prison staff member refused to help.

Proposed Intervenors and Additional Intervenors do not seek merits adjudication now; these facts are offered to show the common factual nucleus and the ongoing nature of the injury across units and common areas, despite this Court's TRO protecting Fleming and Herrera.

### III.  ARGUMENT

**A.  The motions are timely.**

"The timeliness inquiry is contextual . . . [and] is not limited to chronological considerations but is to be determined from all the circumstances." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (internal citations and quotation marks omitted). The context here is that of legally unsophisticated prisoners, "[u]nskilled in law, unaided by counsel, and unable to leave the prison," until undersigned counsel was able to

4

communicate with them. *Houston v. Lack*, 487 U.S. 266, 271 (1988). Given that context, their attempt to intervene has been notably prompt.

Hardin and Kirk moved quickly once the case reached an active merits posture. It is not clear how they could have moved faster, as they would not have been aware of Fleming's and Herrera's original *pro se* complaints. Hardin and Kirk filed their Motion within a week of the Verified Amended Complaint and TRO motion that framed the operative claims and requested immediate injunctive relief. ECF No. 69 at 3 (citing ECF Nos. 58, 61). Defendants identify no concrete prejudice caused by that short interval.

Meabon, Morais, and Williams moved promptly after learning their interests would not be protected. Defendants' timeliness theory assumes the operative injury is confined to the unit where the original Plaintiffs were housed. The opposite is true. The TRO itself contemplated that Defendants might "reassign male inmates away from plaintiffs' housing and privacy areas." ECF No. 83 ¶ 5(a). As Morais and Williams report, that is what happened—Defendants moved an inmate from Two North to their unit, One North. Ex. A ¶ 71. So, unfortunately, Defendants' choice of "compliance" with the TRO causes the self-same injury to Additional Intervenors. And Meabon reports a biological male inmate is housed in her unit, Two South, and behaves aggressively toward women who report him, and that he enters common restrooms despite the Court's TRO. Ex. A ¶¶ 88–91.

Meabon, Morais, and Williams sought intervention promptly after these post-TRO developments became clear and after counsel could conduct client interviews despite the constraints of incarceration.[1]

---

[1] Client communication is particularly difficult with these incarcerated parties. On November 26, Undersigned Counsel requested a legal call with Morais to take place on December 1, 2025. *See*

5

### B.    Defendants' "More Work" argument does not warrant denial; there is no exhaustion-hearing related prejudice.

Defendants argue intervention will "double" their preparation for the December 18 exhaustion hearing. ECF No. 90 at 3–4. Proposed Intervenors do not dispute that adding parties can theoretically increase work. But Rule 24(b)(3) asks whether intervention will "*unduly* delay or prejudice" the original parties—not whether it imposes any incremental burden. Fed. R. Civ. P. 24(b)(3) (emphasis added). There is no undue burden here.

Proposed Intervenors and Additional Intervenors will not testify at the December 18 exhaustion hearing, and they do not seek discovery or deadlines that will alter Defendants' preparation for that hearing.

Defendants also acknowledge that if Proposed Intervenors filed a separate lawsuit, Defendants will "consider not opposing" consolidation so long as it will not prejudice Defendants' interests. ECF No. 90 at 4 n.3. That concession underscores the point: Intervention now, with reasonable conditions, avoids duplicate litigation and conserves resources for the Court and all parties.

### C.    Fleming and Herrera do not adequately represent Proposed Intervenors' or Additional Intervenors' interests.

"In assessing whether to allow permissive intervention, the court may consider, *inter alia*, the effect of permitting intervention on the existing parties, whether the intervenors' interests are adequately represented by other parties, and whether the intervenors will significantly contribute to full development of the underlying factual issues in the suit." *Texas v. Biden*, No. 3:22-cv-780-M, 2022 WL 22858891, at *1 (N.D. Tex. May 26, 2022) (cleaned up).

---

ECF No. 103 at 2. Undersigned Counsel was not able to actually speak with Morais until December 16, 2025.

6

As FMC Carswell's actions confirm, the TRO's plaintiff-specific scope leaves other units exposed. Defendants have responded to the TRO by shifting the injury that *was* suffered by Fleming and Herrera onto *different* incarcerated women.

Defendants claim Proposed Intervenors Hardin and Kirk are "real beneficiaries" of the TRO because they allegedly share housing and private spaces with Plaintiffs. ECF No. 90 at 5. First off, that ignores that (1) Fleming has relocated to Florida, (2) Defendants are trying to move Herrera (potentially to moot this case), and (3) Hardin and Kirk are at the mercy of Defendants for housing unit placement. In the prison setting, housing transfers and reassignments can moot claims for declaratory and injunctive relief. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). Defendants control those housing assignments. Proposed Intervenors seek to join the case to protect their rights and obtain judicially enforceable relief that is not dependent on the housing assignments of Fleming and Herrera.

Moreover, Defendants' argument is certainly irrelevant for women in other units, like Additional Intervenors. From the perspective of Meabon, Morais, and Williams, the Defendants' response to the Court's TRO *increases* their injuries, because FMC Carswell has moved at least one man to another women's unit. Ex. A ¶ 71.

"Especially when immediate implementation of an equitable remedy threatens to impinge upon the expectations of innocent parties, the courts must look to the practical realities and necessities inescapably involved in reconciling competing interests, in order to determine the special blend of what is necessary, what is fair, and what is workable." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 375 (1977). It is an "age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties." *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994) (Posner, C.J.).

The Court's current TRO causes injuries to "innocent third parties" by allowing Defendants to shift the injury from some women onto others. Given the possibility of mootness for Hardin and Kirk, and the effects of equitable relief on Meabon, Morais, and Williams, the current named Plaintiffs do not adequately represent Intervenors' interests. Allowing intervention will assist the Court in crafting durable relief that resolves the common dispute rather than prompting repeated, unit-specific TRO practice.

## IV.　CONCLUSION

Intervenors respectfully request that the Court grant Hardin's and Kirk's Motion to Intervene (ECF No. 68) and grant the Motion to Intervene for Meabon, Morais, and Williams, subject to the condition that no Intervenor will testify at the December 18 exhaustion hearing, and direct the Clerk to file the attached First Amended Proposed Complaint-in-Intervention as of the date of the Court's order, and grant such other and further relief as is just and proper.

Dated: December 17, 2025

Respectfully submitted,

*/s/ John Greil*
John Greil
  Tex. Bar No. 24110856
Brian J. Field*
  D.C. Bar No. 985577
Justin A. Miller
  Tex. Bar No. 24116768
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
jgreil@schaerr-jaffe.com
bfield@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

**Pro hac vice* motion forthcoming

*Attorneys for Proposed Intervenor-Plaintiffs Elizabeth Ann Hardin, Brenda Leigh Kirk, and Additional Intervenor-Plaintiffs Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams*

9

**CERTIFICATE OF SERVICE**

      Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

                                                  */s/ John Greil*
                                                  John Greil