IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

RHONDA FLEMING and MIRIAM
CRYSTAL HERRERA,

     Plaintiffs,

v.

WARDEN T. RULE, et al.,

     Defendants.

Civil Action No. 4:25-CV-157-D
(consolidated with No. 4:25-CV-438-D)

**DEFENDANTS' MOTION TO DISMISS COUNTS FIVE AND SIX
OF PLAINTIFFS' VERIFIED AMENDED COMPLAINT**

This case involves claims by Plaintiffs Rhonda Fleming and Crystal Herrera

("Plaintiffs") challenging the practice of housing male inmates at Federal Medical Center,

Carswell ("FMC Carswell") in Fort Worth, Texas.  FMC Carswell is a facility operated

by the Federal Bureau of Prisons for female inmates, but since approximately 2013, it has

also housed certain male inmates[1] due to their claimed gender identity or other factors.[2]

As explained in a notice that is being filed contemporaneously with this motion,

the government does not want to continue housing male inmates at FMC Carswell (or at

any other prison facility designated for females) and wants to ensure that males do not

---

[1] Consistent with the language used by the Court in its temporary restraining order, "male inmate" as used herein "means a person who is biologically male, regardless of gender identity."  (Doc. 83 at 1.)

[2] *See* Declaration of Jody R. Upton ¶ 48, *Fleming v. United States*, No. 7:17-CV-9-O (N.D. Tex. Aug. 10, 2017) ("Beginning in December 2013, male- to-female transgender inmates have been designated to FMC Carswell . . . .") (Doc. 100 in No. 7:17-CV-9-O, at page App. 199).

**Defendants' Motion to Dismiss Counts Five and Six of Plaintiffs' Verified Amended Complaint – Page 1**

enter intimate spaces designated for women, as explained in Executive Order No. 14168

issued on January 20, 2025.  In the Executive Order, the President confirmed that it is the

"policy of the United Staes to recognize two sexes, male and female," and directed the

Attorney General to "ensure that males are not detained in women's prisons or housed in

women's detention centers."[3]  The government has not yet been able to fully carry out

this mandate, however, because of court orders entered in litigation elsewhere in the

aftermath of the Executive Order[4]—including certain litigation that is currently on appeal

to the U.S. Court of Appeals for the District of Columbia Circuit, in which the

government is seeking to lift any injunction or prohibition on its ability to transfer male

inmates out of female facilities.

In light of the above, Defendants do not object to, and in fact agree with,

Plaintiffs' substantive arguments that they should not be housed with male inmates.

Accordingly, Defendants have filed a notice informing the Court that they have no

objection to the Court's converting the existing temporary restraining order (Doc. 83)

into a permanent injunction in favor of Plaintiffs, and in fact Defendants affirmatively

request and invite the Court to do so.[5]  This relief would appear to cover the bulk of

---

[3] *See* Exec. Order No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615, 8515, 8616 (Jan. 20, 2025).

[4] *See* Order at 11, *Doe v. McHenry*, No. 1:25-CV-286-RCL (D.D.C. Feb. 4, 2025) (requiring the government to "maintain and continue the [male inmates'] housing status and medical care as they existed immediately prior to January 20, 2025"); Order Granting Preliminary Injunction at 2, *Doe v. Bondi*, No. 1:25-CV-286-CRL (D.D.C. Nov. 17, 2025) (granting the same relief to an expanded group of plaintiffs, to require the government to "maintain and continue the plaintiffs['] . . . housing status in women's facilities").

[5] To the extent any other claims or parties may still remain at this time, Rule 54(d) nonetheless allows for entry of a final judgment granting such a permanent injunction.

**Defendants' Motion to Dismiss Counts Five and Six of Plaintiffs' Verified Amended Complaint – Page 2**

Plaintiffs' allegations and claims in this action, and again, Defendants are not opposed to that relief and are affirmatively requesting that the Court grant it.

With that big-picture framework in mind, Defendants now file this limited motion to dismiss directed at two other, discrete aspects of Plaintiffs' amended complaint:  (a) Fleming's claim for tort damages of $10,000,000 under an intentional infliction of emotional distress theory, (Doc. 61, ¶¶ 108, 159–68); and (b) Herrera's claim for injunctive relief against any future transfer away from FMC Carswell, (Doc. 61, ¶¶ 100–06, 153–58).  As explained below, these claims should be dismissed under Rule 12(b)(1) and (6).

I.      Argument and Authorities

**A.      Fleming cannot establish jurisdiction in this action for her tort claim for intentional infliction of emotional distress.**

Fleming's claim for intentional infliction of emotional distress in count six of Plaintiffs' amended complaint is brought under the Federal Tort Claims Act.  (*See* Doc. 61, ¶ 159.)  In that statute, Congress provided a limited waiver of sovereign immunity by consenting to suit against the United States, under certain circumstances, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).

But in order to establish jurisdiction under the Federal Tort Claims Act, a plaintiff must first present an administrative claim to the appropriate federal agency.  *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011) (citing 28 U.S.C.

§ 2675(a)).  A lawsuit can then be initiated, but only (1) after the administrative claim has been finally denied, or (2) after the passage of six months, if the agency does not act on the administrative claim within that time period.  28 U.S.C. § 2675(a).  As the Fifth Circuit has explained, "subject matter jurisdiction of the court is conditioned on compliance with 28 U.S.C. § 2675(a), which declares that 'an action shall not be instituted' unless the plaintiff has filed an administrative claim and either obtained a written denial or waited six months."  *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995).  Accordingly, if § 2675's prerequisites are not satisfied, a dismissal under Rule 12(b)(1) is appropriate.

In this case, there is no dispute that Fleming submitted an administrative claim to the Federal Bureau of Prisons, seeking $10,000,000.00 in damages for harm allegedly caused to her by being housed at a facility with male inmates.  (*See* Doc. 61, ¶ 108.) Fleming explains that the Federal Bureau of Prisons "received [the] administrative claim on January 2, 2025," and that as of six months later, on July 2, 2025, it had "neither accepted nor rejected Ms. Fleming's claim."  (Doc. 61, ¶ 108.)  Per Fleming's own pleadings, then, she could not have filed any jurisdictionally proper action on her tort claim prior to July 2, 2025.

The problem, though, is that Fleming filed this action *before* July 2, 2025, i.e., before the six-month period had elapsed and also before her administrative claim had ever been decided.  She filed her original complaint on February 19, 2025, and complained therein of the presence of male inmates at FMC Carswell and sought, among other things, an award of damages.  (*See* Doc. 1.)  Her tort claim in this proceeding is,

**Defendants' Motion to Dismiss Counts Five and Six of Plaintiffs' Verified Amended Complaint – Page 4**

therefore, jurisdictionally premature.

Nor is the jurisdictional deficiency cured by the fact that the six-month period ending on July 2, 2025 has now passed.  The Fifth Circuit considered this issue in *Gregory v. Mitchell*, 634 F.2d 199, 204 (5th Cir. 1981), where the plaintiffs had submitted an administrative claim but then "did not await the required six month period prior to bringing [the] action, nor was there the required formal denial."  The court explained that "[l]acking jurisdiction, the district court was required to dismiss the suit against the United States," and the court expressly rejected the plaintiffs' argument "that the six month requirement is now meaningless because the period has already run." *Id.* "We cannot accept this proposition," the court explained, because "[w]aivers of sovereign immunity must be strictly construed," and the Federal Tort Claims Act "is more than a mere statement of procedural niceties," but instead "requires that jurisdiction must exist at the time the complaint is filed."[6] *Id.*

As summarized by the Fifth Circuit in a separate case, "[a]n action that is filed before the expiration of the six-month waiting period, and is thus untimely, cannot become timely by the passage of time after the complaint is filed." *Price*, 69 F.3d at 54. "This requirement is jurisdictional, and may not be waived." *Id.*  Here, that means jurisdiction is lacking for Fleming's tort claim, and it must be dismissed.[7]

---

[6] The Fifth Circuit further considered whether to "allow the district court to stay or hold in abeyance the damage claim . . . until the six month period accrues," but also found that this was not possible. *Gregory*, 634 F.2d at 204.

[7] The fact that Fleming filed her most recent amended complaint after the six-month period had elapsed also does not suffice to create jurisdiction.  The Federal Tort Claims Act refers to the "action," not to any specific complaint or amended complaint. *See* 28 U.S.C. § 2765(a).  And in any event, an amended

**Defendants' Motion to Dismiss Counts Five and Six of Plaintiffs' Verified Amended Complaint – Page 5**

**B.      Hererra's claim challenging any future transfer away from FMC Carswell is subject to dismissal.**

In count five of Plaintiffs' amended complaint, Herrera brings a claim by which she alleges that after filing this lawsuit, "BOP officials threatened to transfer [her] to FCI Aliceville, Alabama," which she says would constitute unlawful retaliation in violation of the First Amendment.  (Doc. 61, ¶ 154.)  Herrera explains that this occurred in October 2025 and that "[u]pon information and belief, Defendants selected [her] for transfer to attempt to undermine and moot this litigation."  (Doc. 61, ¶¶ 100, 102.)

But Herrera's challenge to any anticipated transfer out of FMC Carswell fails to state a claim upon which relief can be granted, for several reasons.[8]  First, Congress has given the Federal Bureau of Prisons discretion to "designate the place of the prisoner's imprisonment," 18 U.S.C. § 3621(b), and that discretion is "exclusive," *Melot v. Bergami*, 970 F.3d 596, 598 (5th Cir. 2020).  Moreover, the relevant statute states that the

---

complaint that arises out of the same conduct or transactions (which is the case here) relates back to the date of filing of the original complaint, *see* Fed. R. Civ. P. 15(c), and an "amendment may not create subject matter jurisdiction when none exists," *Guevara v. United States*, No. 3:20-CV-22-D, 2020 WL 1529005, at *4 (N.D. Tex. Mar. 31, 2020) (quoting *In re Katrina Canal Breaches Litig.*, 342 F. App'x 928, 931 (5th Cir. 2009)).  Also instructive is the Fifth Circuit's explanation in *Reynolds v. United States*, 748 F.2d 291, 293 (5th Cir. 1984), where the plaintiff had filed suit prematurely (before her administrative claim had been denied or the six-month period had elapsed), but had also filed an amended complaint after the six-month period had elapsed.  The court explained:  "The date of Ms. Reynolds' original pleading was August 10, 1982; Rule 15(c) gave the district court no authority to relate Ms. Reynolds' amended complaint back to any date except August 10, 1982.  On that date the court lacked subject matter jurisdiction of Ms. Reynolds' claim.  Her amended complaint was therefore properly dismissed for lack of subject matter jurisdiction." *Id.* at 203.  It is also notable that Fleming named the United States as a defendant in her original complaint and sought damages based on a theory that the government had harmed her by housing her with male inmates—the same theory that undergirds her current tort claim.  (*See* Doc. 1.)

[8] Defendants also are not abandoning other possible defenses to Herrera's retaliation claim, including the defense of failure to exhaust administrative remedies.  However, that defense would require consideration of materials outside the pleadings and is not evidenced on the face of the complaint and any attachments, so it is not raised here.

agency's "designation of a place of imprisonment . . . is not reviewable by any court."  18

U.S.C. § 3621(b).  Thus, to the extent Herrera seeks to have this Court review any

administrative decision to transfer her to a different prison, § 3621(b) bars her claim.

Nor has Herrera alleged any factual basis for a retaliatory transfer claim.  "To

prevail on a claim of retaliation" (even assuming one were theoretically possible here), "a

prisoner must establish (1) the exercise of a specific constitutional right; (2) the

defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act;

and (4) causation, which in this context means that, but for the retaliatory motive, the

complained of incident would not have occurred."  *King v. Lott*, No. 25-785, 2025 WL

2525037, at *6 (E.D. La. July 23, 2025) (citing *McDonald v. Steward*, 132 F.3d 225, 231

(5th Cir. 1998)), *rec. adopted*, 2025 WL 2522209 (E.D. La. Sept. 2, 2025).  "Mere

conclusory allegations of retaliation will not be enough," and an "inmate must allege

more than his personal belief that he is the victim of retaliation."  *Jones v. Greninger*, 188

F.3d 322, 325 (5th Cir. 1999).

Herrera fails to plead anything beyond conclusory assertions and speculation about

a possible transfer, though.  She simply states that in October 2025, she was "threatened"

with a transfer to FCI Aliceville, and then she goes on to lodge, in the next sentence, a

conclusory assertion that "[t]his proposed transfer is in retaliation for Ms. Herrera's

exercise of her constitutionally protected right to petition the government for redress of

grievances through this lawsuit, as well as Ms. Herrera raising safety and privacy

complaints with prison officials."  (Doc. 61, ¶ 100.)  These allegations "fall short of

anything more than barebone conclusory statements from which a plausible inference of

**Defendants' Motion to Dismiss Counts Five and Six of Plaintiffs' Verified Amended Complaint – Page 7**

retaliation *cannot* be made." *King*, 2025 WL 2525037, at \*7. Moreover, Herrera

recounts that the allegedly retaliatory transfer was floated in October 2025, but the record

reflects that she had filed her lawsuit some six months earlier, on April 22, 2025.[9] This

timing does not support any causal nexus between Herrera's protected litigation or

expressive activities and the allegedly retaliatory transfer proposal.[10] *See Armenta v.*

*Pryor*, 377 F. App'x 413, 416 (5th Cir. 2010) (finding no chronology of events where the

plaintiff's "grievances were filed months before the alleged retaliatory act").

Herrera also fails to allege who was supposedly behind the retaliatory nature of the

proposed transfer and why that person or persons would have harbored retaliatory animus

against her, specifically, based on her filing of a lawsuit relating to the broad, much-

litigated issue of whether male inmates should be housed in female prisons. Even

assuming that the existence of Herrera's lawsuit or related complaints were known to the

relevant decisionmaker, Hererra "identifies no reason why [her] suit might have stood out

from the mass of litigation so as to possibly draw the ire of [the decisionmaker]." *See*

*Johnson v. Collier*, 854 F. App'x 621, 622 (5th Cir. 2021). Hererra also makes no

allegation that the (nationwide) issue of whether to house male inmates at female

facilities like FMC Carswell was somehow within the control of the same prison

---

[9] *See Herrera v. Rule*, No. 4:25-CV-438-D (N.D. Tex.) (action later consolidated into No. 4:25-CV-157-D).

[10] Herrera's allegation that a transfer was proposed in an "attempt to undermine and moot this litigation" also fails to support any claim. (Doc. 61, ¶ 102.) Herrera's co-plaintiff, Fleming, was in fact transferred out of FMC Carswell some time ago, but that has not affected the litigation. And Plaintiffs have sought relief against the United States, the Attorney General, the Director of the Federal Bureau of Prison (in addition to the warden of FMC Carswell) to, *inter alia*, enjoin Defendants from "housing any male inmate . . . within the general population of *any* housing unit where either Plaintiff is presently or will be confined during the pendency of the TRO." (Doc. 1, § VII (Relief Requested) (emphasis added).)

administrator or administrators who were responsible for the mundane, everyday work of transferring inmates to or from FMC Carswell (which transfers are typically based on inmate medical needs, given that FMC Carswell is the only Federal Medical Center for female inmates within the Federal Bureau of Prisons, in addition to the usual normal overcrowding and population-balancing issues).

Indeed, the issue of whether male inmates should be housed with female inmates is clearly the subject of high-level policymaking judgments made by incumbent Presidents or other senior political appointees over the years, and likewise it has been the subject of litigation for years.  It is not plausible to think, given these considerations, that Herrera's suit would cause unidentified prison-transfer personnel to suddenly begin to harbor a retaliatory animus against her.  Put another way, this is not a situation like some other cases in which a retaliation claim might clear the bar of plausibility—for example, when an inmate files a grievance accusing a specific guard of concrete, personalized wrongdoing or misconduct, and then the guard allegedly retaliates against the inmate for filing that grievance, which amounts to a personal attack on the guard's integrity and may result in disciplinary or other employment consequences.  No rational prison administrative official in charge of routine transfers and population-balancing measures would similarly perceive a systemic lawsuit of the type filed by Herrera to constitute a personal attack along these lines that might plausibly give rise to an individualized, specific animus against the plaintiff.  No facts plausibly establishing a claim for retaliation have been pleaded.

**Defendants' Motion to Dismiss Counts Five and Six of Plaintiffs' Verified Amended Complaint – Page 9**

## II.    Conclusion

For all these reasons, counts five and six Plaintiffs' amended complaint should be dismissed.

Respectfully submitted,

Ryan Raybould
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Certificate of Service

On January 20, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney