IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

RHONDA FLEMING and MIRIAM
CRYSTAL HERRERA,

     Plaintiffs,

v.

WARDEN T. RULE, et al.,

     Defendants.

Civil Action No. 4:25-CV-157-D
(consolidated with No. 4:25-CV-438-D)

## DEFENDANTS' MOTION TO DISMISS THE
## FIRST AMENDED COMPLAINT-IN-INTERVENTION

This case is a consolidation of two separate actions filed by Plaintiffs Rhonda

Fleming and Crystal Herrera challenging the practice of housing male inmates at Federal

Medical Center, Carswell ("FMC Carswell") in Fort Worth, Texas.  FMC Carswell is a

facility operated by the Federal Bureau of Prisons ("BOP") for female inmates, but since

approximately 2013, it has also housed certain male inmates[1] due to their claimed gender

identity or other factors.[2]

This motion relates to the First Amended Complaint-In-Intervention filed on

January 8, 2026 by five additional female inmates at FMC Carswell (Elizabeth Ann

---

[1] Consistent with the language used by the Court during these proceedings, "male inmate" as used herein "means a person who is biologically male, regardless of gender identity."  (Doc. 83 at 1.)

[2] *See* Declaration of Jody R. Upton ¶ 48, *Fleming v. United States*, No. 7:17-CV-9-O (N.D. Tex. Aug. 10, 2017) ("Beginning in December 2013, male- to-female transgender inmates have been designated to FMC Carswell . . . .") (Doc. 100 in No. 7:17-CV-9-O, at page App. 199).

**Defendants' Motion to Dismiss the First Amended Complaint-in-Intervention – Page 1**

Hardin, Brenda Leigh Kirk, Jasmie Meabon, Jessica Clemencio Morais, and Keisha Williams (collectively, "Intervenor Plaintiffs")). (*See* Doc. 125.) As explained below, Intervenor Plaintiffs lack standing for their claims, and therefore their complaint should be dismissed under Rule 12(b)(1) for lack of jurisdiction.

## I. Background

**A.    Beginning in early 2025, various courts in other districts enjoin the BOP from implementing the President's Executive Order that calls for housing male inmates separately from female inmates.**

As noted above, male inmates have been housed at FMC Carswell since approximately 2013. On January 20, 2025, however, the President issued an Executive Order confirming that it is the "policy of the United Staes to recognize two sexes, male and female," and directing the Attorney General to "ensure that males are not detained in women's prisons or housed in women's detention centers."[3] "Consistent with the executive order, BOP informed male trans-identifying inmates who were housed in women's facilities before January 20 that they would be transferred to men's prisons, and BOP began to transfer inmates accordingly." (App.[4] 035.)

That was not the end of the matter, though. Twenty male inmates housed in women's prisons, including some at FMC Carswell, filed lawsuits (across several separate civil actions) to challenge the Executive order and to bar their transfers and any cessation of their treatment for gender dysphoria. (App. 035.) By February 4, 2025, a

---

[3] *See* Exec. Order No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615, 8515, 8616 (Jan. 20, 2025).

[4] "App. __" citations refer to the materials in the accompanying appendix.

**Defendants' Motion to Dismiss the First Amended Complaint-in-Intervention – Page 2**

district court in the District of Columbia "held a hearing and issued a nationwide TRO barring BOP from transferring any inmates pursuant to" the President's Executive Order. (App. 049.)  Numerous similar orders and preliminary injunctions followed, with the effect that the BOP has been precluded from implementing the Executive Order's mandate to cease the housing of male inmates with female inmates.  (App. 049–55.)  The preliminary injunction entered in the *Doe v. Bondi* litigation is emblematic of the type of court order that, through this day, dictates the housing of male inmates in female prisons, by providing that "the defendants shall maintain and continue plaintiffs Jane Doe, Mary Doe, Sara Doe, Emily Doe, Zoe Doe, Oliva Doe, Susan Doe, Lois Doe, Sally Doe, Wendy Doe, Rachel Doe, and Ellen Doe's housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025."  (App. 108.)  The government has appealed the *Doe v. Bondi* injunction and the other similar orders, and there is now a consolidated appeal pending in the U.S. Court of Appeals for the District of Columbia Circuit, captioned *Doe v. Bondi*, No. 25-5099.  (App. 001–21.)  But as of now, the injunctions and orders remain in effect.

**B.      Intervenor Plaintiffs file their complaint in January 2026 seeking to require the BOP to house male inmates in a segregated unit at FMC Carswell.**

As noted above, this case was originally filed (in separate actions) by Plaintiffs Rhonda Fleming and Crystal Herrera to challenge the housing of male inmates at FMC Carswell.  On December 19, 2025, Intervenor Plaintiffs Elizabeth Ann Hardin and Brenda Leigh Kirk filed a complaint in intervention raising similar claims.  (Doc. 112.)  And on January 8, 2025, three additional Intervenor Plaintiffs, Jamine Meabon, Jessica

Clemencio Morias, and Keisha Williams, joined the case via the filing of a first amended complaint in intervention (to which the original Intervenor Plaintiffs, Elizabeth Ann Hardin and Brenda Leigh Kirk, are also parties). (Doc. 125.) That complaint is thus the live pleading for all Intervenor Plaintiffs.

In their complaint, Intervenor Plaintiffs challenge the housing of male inmates at FMC Carswell under causes of action based on (1) a violation of bodily integrity, (2) cruel and unusual punishment, (3) the Administrative Procedure Act, and (4) *ultra vires* action. (Doc. 125 at ¶¶ 144–65.) The operative relief that Intervenor Plaintiffs seek is injunctive relief that would bar Defendants from "housing any male inmate (meaning any person who is biologically male, regardless of gender identity) within the general population of any housing unit where biological females are present or will be confined" and "permitting any male inmate to enter or remain in any female-only privacy area (including showers, restrooms, changing areas, or dormitory spaces) to which either Intervenor-Plaintiff has access, so that Intervenor-Plaintiffs are not exposed to male inmates while showering, toileting, dressing, or sleeping."[5] (Doc. 125 at 40–41 (Relief Requested section).)

Critically, Intervenor Plaintiffs specify that as part of this requested relief they seek a court order that "to comply with the relief provided . . . , Defendants house male inmates in a secure, segregated area at FMC Carswell (including the Hospital Unit or an equivalent setting) that preserves access to programming and services while preventing

---

[5] Intervenor Plaintiffs also seek related declaratory relief, but a request for declaratory relief "is merely a procedural device that creates no standalone cause of action." *Mid-Am. Supply Corp. v. Truist Bank*, 660 F. Supp. 3d 594, 601 (E.D. Tex. 2023).

access to female-only privacy areas." (Doc. 125 at 41.)  This is different than the relief that was requested by original Plaintiffs Rhonda Fleming and Miriam Herrera, which gave Defendants the option of *either* housing male inmates in a secure, segregated unit *or* simply reassigning male inmates away from Plaintiffs' housing and privacy areas (but still housing them within the general-population female units of FMC Carswell).  (Doc. 61 at 40.)  The government understands the injunctions that are now on appeal in the consolidated *Doe v. Bondi* proceeding in the D.C. Circuit to bar them from providing the former category of relief, *i.e.*, moving the male inmates to segregated housing.  In contrast, the government has not been precluded from offering the second category of relief—reassigning male inmates from one general-population housing unit at FMC Carswell to another such unit away from Plaintiffs (i.e., but not to a segregated male-only unit).  For this reason, Defendants were agreeable to the entry of a permanent injunction in favor of Plaintiffs Rhonda Fleming and Miriam Herrera relief with this option for compliance.  (*See* Doc. 137.)

Intervenor Plaintiffs, in contrast, have pointedly not included within their request for relief the second compliance option of reassigning male inmates to different female units at FMC Carswell.  (*See* Doc. 125 at 40–41.)  The *only* option for compliance under Intervenor Plaintiffs' claims, as set forth in their first amended complaint, is to move male inmates to a segregated unit at FMC Carswell.  (Doc. 125 at 41.)  And the government understands that this sort of action would violate the injunctions entered by courts elsewhere that, for example, require the government to "maintain and continue [the male inmates'] housing status in women's facilities."  (App. 108.)  That "housing status"

**Defendants' Motion to Dismiss the First Amended Complaint-in-Intervention – Page 5**

is housing in a female general-population unit, not a segregated male unit. Thus, as much as the government would like to move all the male inmates out of FMC Carswell entirely and back to male prisons (which are themselves, of course, a form of segregated housing), it does not believe it has the power to do so at this time.

## II.    Legal Standard

Standing is an issue of subject-matter jurisdiction, *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006), and thus can be raised via a Rule 12(b)(1) motion. "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

## III.    Argument and Authorities

"To establish Article III standing, an injury must be [1] 'concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling.'" *Texas v. Yellen*, 105 F.4th 755, 763 (5th Cir. 2024) (brackets added; citation omitted). A "plaintiff's standing is evaluated at the time of filing of the initial complaint in which they joined." *Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377, 392 (W.D. La. 2024); *see also Pluet v. Frasier*, 355 F.3d 381, 386 n.3 (5th Cir. 2004) ("A party must have standing at the time the complaint is filed.").

In this case, it is the second and third elements of standing that are at issue, and the relevant date for assessing the standing of Intervenor Plaintiffs Eliabeth Ann Hardin and Brenda Leigh Kirk is December 19, 2025 (when their initial complaint was filed), and is January 8, 2026 for Intervenor Plaintiffs Jamine Meabon, Jessica Clemencio Morias, and

Keisha Williams (when they joined the case via the first amended complaint in intervention).  (Doc. 112; Doc. 125.)  As discussed below, Plaintiffs cannot show traceability because it is the actions of third parties not before this Court—specifically, courts elsewhere that have entered injunctions prohibiting the BOP from transferring male inmates out of female prisons—that have caused the Intervenor Plaintiffs' claimed injuries as of the relevant time their initial complaints were filed.  And also, because of the existence of these other court orders, Intervenor Plaintiffs likewise cannot show redressability.  Instead, the appeal currently pending in the D.C. Circuit is the proceeding in which Intervenor Plaintiffs' claims may (indirectly) ultimately be vindicated, if the court there lifts the injunctions which currently dictate how male inmates are housed at FMC Carswell.

**A.      Intervenor Plaintiffs cannot satisfy the traceability element of standing.**

The second prong of standing, traceability, requires Intervenor Plaintiffs to show that the challenge government action caused their claimed injury.  *See Allen v. Wright*, 468 U.S. 737, 757 (1984).  But an injury is not fairly traceable if it is "the result of the independent action of some third party not before the court." *Inclusive Cmtys. Proj., Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (internal quotation marks and citation omitted).

That is the situation here.  As discussed above, by the time the first Intervenor Plaintiffs filed their complaint in December 2025, it was not any actions of Defendants that were causing Intervenor Plaintiffs' alleged injury.  Instead, it was the actions of the various courts, in civil actions filed by male inmates in other districts (now consolidated

in the *Doe v. Bondi* appeal), that were and are the cause of male inmates' presence in the same housing units as female inmates at FMC Carswell.  (*See* pp. 2–3, *supra*.)  For example, in the *Doe v. Bondi* case, a preliminary injunction requires BOP to "maintain and continue [the male inmates'] housing status in women's facilities and . . . continue to provider their gender dysphoria treatment as it existed prior to January 20, 2025."  (App. 108.)  This injunction was entered by a third party that is not before this Court (and in fact is another court), and was entered over the government's objection and is currently the subject of an appeal being prosecuted by the government.  (*See* App. 022.)  As of December 2025 and January 2026 when Intervenor Plaintiffs filed their complaints, it was the court orders from elsewhere, and not anything Defendants were doing, that formed the basis for Intervenor Plaintiffs' alleged injuries.  Therefore, traceability is absent.

**B.      Intervenor Plaintiffs cannot satisfy the redressability element of standing.**

The third prong to demonstrate standing is redressability.  Redressability requires a plaintiff to show that that a favorable decision "is *likely*, as opposed to merely *speculative*," to redress its injury.  *Inclusive Cmtys. Proj.*, 946 F.3d at 655 (emphasis in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Here, redressability is also absent for essentially the same basic reasons discussed above that traceability does not exist—it is court orders from elsewhere that dictate the current housing of male inmates at FMC Carswell.  The existence of an adverse court order entered against a party is, of course, not inherently unredressable.  But, the proper

way to redress such an order is through an appeal—which the government is pursuing in the D.C. Circuit. It is the D.C. Circuit that has jurisdiction over the injunctions at issue and has the power to overturn them, if it believes that to be the legally appropriate outcome (which is what the government is advocating for on appeal). And Intervenor Plaintiffs apparently have not sought to intervene in the pending appeal in the D.C. Circuit or in any of the underlying district court cases, where they could presumably ask the courts to lift or modify the injunctions as Intervenor Plaintiffs might desire.

Intervenor Plaintiffs have instead filed suit in this Court. Therefore, and with all due respect for this Court's jurisdiction and authority, Intervenor Plaintiffs cannot show that it is "likely" they can obtain redress against those injunctions in this proceeding. *Inclusive Cmtys. Proj.*, 946 F.3d at 655. This Court does not have appellate jurisdiction over the courts that have entered the relevant injunctions that are currently dictating the housing of male inmates at FMC Carswell. At most, if this Court were to grant the relief requested by Intervenor Plaintiffs, that would seem to set up a direct conflict with the injunctions entered elsewhere, and it is at best "speculative," *id.*, to consider how that ultimately would play out and whether the result would be that male inmates remain in their current housing status at FMC Carswell or are transferred to a segregated unit. This sort of speculative outcome is insufficient to establish standing for Intervenor Plaintiffs.

### IV.    Conclusion

For all these reasons, the Intervenor Plaintiffs' complaint should be dismissed for lack of standing

Respectfully submitted,

Ryan Raybould
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Certificate of Service

On March 9, 2026, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

**Defendants' Motion to Dismiss the First Amended Complaint-in-Intervention – Page 10**