**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RHONDA FLEMING and**<br>**MIRIAM CRYSTAL HERRERA,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **WARDEN T. RULE, WILLIAM K.**<br>**MARSHALL, III, PAMELA J. BONDI,**<br>**and THE UNITED STATES OF**<br>**AMERICA,** | § § § § § | **Civil Action No. 4:25-CV-0157-D**<br>**(Consolidated with**<br>**Civil Action No. 4:25-CV-0438-D)** |
| **Defendants.** | § § § | |
| **ELIZABETH ANN HARDIN,**<br>**BRENDA LEIGH KIRK, JASMINE**<br>**MEABON, JESSICA CLEMENCIO**<br>**MORAIS, and KEISHA WILLIAMS** | § § § § § | |
| **Intervenor-Plaintiffs,** | § § | |
| **v.** | § § | |
| **WARDEN T. RULE, WILLIAM K.**<br>**MARSHALL, III, PAMELA J. BONDI,**<br>**and THE UNITED STATES OF**<br>**AMERICA,** | § § § § § | |
| **Defendants.** | § § | |

**APPENDIX TO INTERVENOR-PLAINTIFFS'
MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION
<u>AND BRIEF IN SUPPORT</u>**

Intervenor-Plaintiffs file this Appendix in support of their Motion for Preliminary and Permanent Injunction and Brief in Support. The contents of the declarations of each Intervenor-Plaintiff contained herein were reviewed and approved by the declarant. Because Intervenor-Plaintiffs are incarcerated, a copy has been sent to them by U.S. mail for execution. Counsel will promptly file the executed declarations upon receipt.

**APPENDIX INDEX**

| DESCRIPTION | APP. PAGES |
|---|:---:|
| Declaration of Elizabeth Ann Hardin, Mar. 26, 2026 | 1–2 |
| Declaration of Brenda Leigh Kirk, Mar. 26, 2026 | 3–6 |
| Declaration of Jasmine Meabon, Mar. 26, 2026 | 7–9 |
| Declaration of Jessica Clemencio Morais, Mar. 26, 2026 | 10–12 |
| Declaration of Keisha Williams, Mar. 26, 2026 | 13–16 |

March 30, 2026

Respectfully submitted,

*/s/ John Greil*
John Greil
  Tex. Bar No. 24110856
Brian J. Field (*pro hac vice*)
Justin A. Miller
  Tex. Bar No. 24116768
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
jgreil@schaerr-jaffe.com
bfield@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

*Counsel for Intervenor-Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **RHONDA FLEMING** and<br>**MIRIAM CRYSTAL HERRERA,** | § § § | |
| **Plaintiffs,** | § § § | |
| **v.** | § § | **Civil Action No. 4:25-CV-0157-D** |
| | § § | **(Consolidated with** |
| **WARDEN T. RULE, WILLIAM K.**<br>**MARSHALL, III, PAMELA J. BONDI,**<br>**and THE UNITED STATES OF**<br>**AMERICA,** | § § § § § | **Civil Action No. 4:25-CV-0438-D)** |
| **Defendants.** | § § § § | |
| **ELIZABETH ANN HARDIN,**<br>**BRENDA LEIGH KIRK, JASMINE**<br>**MEABON, JESSICA CLEMENCIO**<br>**MORAIS, and**<br>**KEISHA WILLIAMS** | § § § § § § | |
| **Intervenor-Plaintiffs,** | § § § | |
| **v.** | § § § | |
| **WARDEN T. RULE, WILLIAM K.**<br>**MARSHALL, III, PAMELA J. BONDI,**<br>**and THE UNITED STATES OF**<br>**AMERICA,** | § § § § § | |
| **Defendants.** | § § § | |

## DECLARATION OF ELIZABETH ANN HARDIN

I, Elizabeth Ann Hardin, declare:

1. My name is Elizabeth Ann Hardin. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2. Until I was transferred in February 2026, I was incarcerated at FMC Carswell in Fort Worth, Texas, where I was housed in Two North.

---

DECLARATION OF ELIZABETH ANN HARDIN

**APP.1**

3.  While I was at Carswell, male inmates were present in Two North and in women's private areas. I personally saw Sean Patrick O'Brien in the women's bathroom around 4:00 a.m. while I was getting ready for my 6:00 a.m. work shift. I saw him shaving there with a visible erection.

4.  Because male inmates were present in the bathroom and shower area, I changed my daily routine to protect my privacy. I no longer came out of the shower in a towel. Instead, I got fully dressed inside the shower so I would not be seen. I also stopped changing shirts openly in the bathroom and avoided bathrooms with broken or non-locking doors.

5.  The problem at Carswell was not limited to where inmates slept. Women and male inmates still used common areas, including the elevators. That is one reason why simply moving a male inmate to another hallway would not solve the problem for me.

6.  In December 2025, after this court's order to Fleming and Herrera, I was still dealing with this problem in the elevators and other shared spaces. Around that time, Peter Langan would give me weird looks when he saw me getting on the shared elevator. This made me feel unsafe and uncomfortable, and I did not want to have to share an elevator with him.

7.  In February 2026, I was told I was being sent for RDAP. I understood that I was supposed to go to Bryan, Texas, but instead I was sent through the Oklahoma transfer center and then to Waseca, Minnesota. This transfer took me farther from my family, which I did not want, and which was difficult for me personally.

8.  I do not know for certain why I was sent to Minnesota instead of Bryan. But I believe my transfer to Minnesota may have been in retaliation for my participation in this lawsuit about male inmates being housed with women at Carswell.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

_____
Elizabeth Ann Hardin

**DECLARATION OF ELIZABETH ANN HARDIN**

**APP.2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>   Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>   Defendants.<br><br>ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and<br>KEISHA WILLIAMS<br><br>   Intervenor-Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>   Defendants. | §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |

## <u>DECLARATION OF BRENDA LEIGH KIRK</u>

I, Brenda Leigh Kirk, declare:

1.  My name is Brenda Leigh Kirk. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2.  I am incarcerated at FMC Carswell. In December 2025 and March 2026, I was housed in Two North.

---

**DECLARATION OF BRENDA LEIGH KIRK**

**APP.3**

3. At Carswell, the problem is not limited to where the male inmates sleep. Women in Two North still have to use the same elevator and other common areas. To leave my unit, I have to go down the elevator through One North, where the male inmates are housed. I see male inmates in the elevator and in food service every day, often several times a day.

4. One of the male inmates I regularly encounter is Zack Lawrence, who has sexually assaulted a female inmate. By March 2026, he had become loud, hostile, and threatening. In shared spaces, including the elevator, he would make hostile comments blaming women for the restrictions placed on him and mutter violent things. His behavior makes me fear that he might snap and hurt someone. Even today I have to ride the elevator with him. There's only one elevator for the top floor, so Two South and Two North take the elevator. Males still live in Two South, so even though there are no men in Two North, I have to be in a confined area with males.

5. In December 2025, another inmate, Takisha Brown, began harassing me. Brown said that the women involved in this case should be segregated away from the men because we were the ones who had a problem with the men being here. I had not been discussing this case with other inmates, so I did not understand how Brown knew who was involved in the case.

6. Around the same time, Brown wrote false statements about me on the bathroom wall and spread rumors about me to other inmates. Because of that, several women approached me and asked why I had supposedly been talking about them. I reported this harassment to staff because I believed it was connected to my participation in this case. I knew Brown was trying to get me in trouble because of this case.

7. When I reported Brown's harassment to Lieutenant Garcia, he did not want to hear my complaint. Instead, he focused on my job and said he would call Counselor Cooperwood about it. Lieutenant Stegall looked at the handwriting and said that's not Brown's handwriting, which was false. I saw Brown go in the stall while I was in the bathroom, Brown wrote it in the stall, and then she told me "deal with that, bitch." That response made me believe staff were not protecting me from retaliation.

8. Right after Brown's harassment and the lack of response, prison staff informed me I could not have my job any more. They told me it was because you can't keep a job longer than a year, but I had been in the same job for three and a half years, and never had a problem. I have seen many other inmates hold down the same job for multiple years.

9. As you hold a job for longer time, you receive different job grades, with different pay. I was at Grade 2 for my job as orderly clerk. I took care of all the payroll, ordering, supplies, for our housing unit.

---

**DECLARATION OF BRENDA LEIGH KIRK**

**APP.4**

10. Moving a male inmate to another hallway, or moving women to another hallway, would not solve this problem for me. I still have to encounter male inmates in the elevator, food service, and other shared spaces. That is why I believe the male inmates should be removed from the women's housing units and placed in a separate unit.

11. I feel women should not have to be subjected to this. Men housed here have already done horrible things to women and children. The situation is wrong, and the prison is not taking women's concerns seriously.

12. Shortly after I joined the lawsuit, I was told that my acceptance in the Office Management Program for training once I get out had been revoked. I was not given a real reason, and believe it was revoked because of my participation in this case. They said it was because I didn't have a job anymore, but I only didn't have a job because they revoked my orderly position.

DECLARATION OF BRENDA LEIGH KIRK

**APP.5**

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

_____

Brenda Leigh Kirk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>    Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |
| ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and<br>KEISHA WILLIAMS<br><br>    Intervenor-Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## DECLARATION OF JASMINE MEABON

I, Jasmine Meabon, declare:

1. My name is Jasmine Meabon. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2. I am incarcerated at FMC Carswell. In late 2025 and early 2026, I have been housed in Two South. I was in One North until about August 2025. There is currently one male

---

**DECLARATION OF JASMINE MEABON**

**APP.7**

inmate living in Two South, I do not know his name, but I have seen him use the female restroom.

3. On or about November 10, 2025, I was using the restroom on the recreation yard when a male inmate, Gary Boone, came into the restroom while I was in a stall. He looked over the stall and asked me if I needed help wiping my vagina.

4. There was a sign on that restroom stating that only one inmate was allowed in at a time. I could see there was a camera, and staff told me there was camera footage showing Boone entering the restroom while I was inside. I reported what happened, including to Lieutenant Recorder and SIS staff member Freeze, but I do not believe staff took the matter seriously.

5. What happened with Boone affected me deeply. I have previously been the victim of rape, and this incident caused flashbacks and set me back mentally.

6. Even after they moved a male inmate, Michael Reed, out of my housing unit, I still saw Boone in shared spaces, including outside and in main line for food. I tried to stay away from him as much as I could. By March 2026, I still sometimes saw him, and when I did, he would be laughing. Because we still share common areas, moving male inmates from one women's unit to another does not solve the problem for me.

7. I also believe staff have not taken my safety seriously. I filed a grievance to the warden, but I felt like what happened to me was thrown under the rug. I was told the captain was supposed to follow up with me, but no one meaningfully addressed what happened.

8. I am afraid of retaliation if I complain. I fear retaliation both from male inmates and from staff. I fear staff may search my locker, treat me aggressively, or try to put me in the SHU, and I do not believe the prison protects women who report these problems.

9. It is not enough to move male inmates to another hallway or move women somewhere else while the same men still use the same restrooms, main line, and other shared spaces. I believe the male inmates should be removed from the women's housing units and placed in a separate unit.

10. I feel like staff should take our safety more seriously, and not just mine, but the safety of all the women here. This situation has been very draining for me, especially because what happened to me feels like it was thrown under the rug. No one has really talked to me about it or followed up with me, and it has left me feeling like nobody cared and like what happened to me did not matter. I want staff to do better and to take these incidents seriously when women report them.

11. On or about March 18, 2026, Jessica Clemencio Morais and I were in the women's restroom talking. There were many other inmates in the restroom, and staff believed some of them had been smoking. Morais and I were not smoking. Male officers came into the women's restroom without announcing themselves or knocking. They banged on

---

**DECLARATION OF JASMINE MEABON**

**APP.8**

the doors and ordered people to come out. A female officer later came to our stall. Morais and I were fully dressed, and we were not doing anything sexual or threatening.

12. Even though many other inmates were in the restroom, only Morais and I were taken to the Special Housing Unit. This was my first incident report at Carswell, and it was not a serious incident report. The other inmates were not taken to the SHU. After that, Warden Rule spoke to me and Clemencio in an angry and aggressive way and threatened to ship me out if I got into more trouble. That threat scared me. It made me believe staff were singling us out. No one knew who I was before the lawsuit, and since the lawsuit staff and leadership has had a target on me.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

_____

Jasmine Meabon

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>    Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants.<br><br>——————————————<br><br>ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and<br>KEISHA WILLIAMS<br><br>    Intervenor-Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |

## <u>DECLARATION OF JESSICA CLEMENCIO MORAIS</u>

I, Jessica Clemencio Morais, declare:

1. My name is Jessica Clemencio Morais. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge.

2. I am incarcerated at FMC Carswell. In late 2025 and early 2026, I was housed in One North. By March 2026, I had been moved to Two South.

---

**DECLARATION OF JESSICA CLEMENCIO MORAIS**

**APP.10**

3.  In November 2025, there were male inmates housed in One North with me. I regularly saw male inmates in the unit. Men would wink at women, blow kisses, come too close to women in the phone and computer lines, and be in places where they could see women in the showers.

4.  I personally had problems with Gary Boone. On or about November 12, 2025, I saw Boone enter the restroom while another woman, Jasmine Meabon, was inside. After he came out, he asked me a sexual question about having sex in exchange for commissary. On another occasion, while it was raining, he told me to come out of the rain and come closer to him, in a sexual way. His behavior made me feel uncomfortable and unsafe.

5.  I reported the restroom incident to staff and asked that camera footage be preserved. I also emailed the warden and psychology staff asking them to hold the footage. Even after I reported it, I do not believe staff took the incident seriously or meaningfully protected me.

6.  By February 2026, Boone had received papers related to this case and was showing them to other inmates in the unit. Other inmates were whispering and looking at me. Because Boone lived in the same unit and the gate was open, I spent most of the day outside the unit, from about seven in the morning until eight at night, trying to avoid conflict.

7.  I asked staff to move me away from Boone. On February 20, 2026, Captain Smith told me she did not have to move me even though I told her I felt very uncomfortable in the unit and with my unit team. I believed staff were treating me differently and holding a grudge against me because I was involved in this lawsuit.

8.  Around February 28, 2026, I was subjected to retaliation by staff about my clothing. As I was going to recreation, staff made me change clothes and took my clothes because they said my sweatpants and t-shirt were too tight, even though they were my usual size and had not been altered. Staff commented on my body and made me feel humiliated. This caused me a mental breakdown and made me afraid to leave my room or even wear my clothes. I think they were targeting me because of this lawsuit.

9.  By March 2026, I had been moved to Two South, but that did not solve the problem. I still had to see Boone in shared spaces, especially recreation. In March 2026, Boone stood directly behind the bench where I was sitting with another woman, stared at us, and listened to our conversation. He also continued to stay close to me and stare at me. That made me scared and very uncomfortable because I did not know what he was going to do.

10. Even after I was moved to Two South, staff continued retaliating against me about my clothes and other matters. Moving me to another unit did not fully protect me, because I still had to encounter Boone in shared spaces and I still faced retaliation from staff.

---

**DECLARATION OF JESSICA CLEMENCIO MORAIS**

**APP.11**

11. In my experience, it is not enough to move a woman to a different hallway or move a man to another hallway while we still overlap in recreation and other shared areas. I believe the male inmates should be removed from the women's housing units and placed in a separate unit.

12. On or about March 18, 2026, I was in the women's restroom with Jasmine Meabon. I was upset and crying because of a family problem involving my little sister, and Meabon came to check on me. Other inmates in the restroom were smoking, but Meabon and I were not. Two male officers came into the women's restroom without announcing themselves or knocking, which is against policy. They began slamming on the stall doors and accusing inmates of smoking. Because they came in suddenly and aggressively, I was scared and did not open the stall door right away. A female officer later came to our stall. Meabon and I were fully dressed.

13. Even though other inmates were in the restroom and staff believed others had been smoking, only Meabon and I were taken to the Special Housing Unit. I was charged with being out of bounds and disobeying an order. The female officer told us words to the effect that if we had opened the door right away, she would not have sent us to the SHU. The other inmates were not taken to the SHU. Afterward, Warden Rule personally threatened that if we got into more trouble he would separate us and ship us out. But I do not have serious disciplinary charges against me. Based on how staff handled this incident, I believe staff were targeting me and retaliating against me because of this lawsuit.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

_____
Jessica Clemencio Morais

DECLARATION OF JESSICA CLEMENCIO MORAIS

**APP.12**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>    **Plaintiffs,**<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    **Defendants.**<br><br>ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and<br>KEISHA WILLIAMS<br><br>    **Intervenor-Plaintiffs,**<br><br>v.<br><br>WARDEN T. RULE, WILLIAM K.<br>MARSHALL, III, PAMELA J. BONDI,<br>and THE UNITED STATES OF<br>AMERICA,<br><br>    **Defendants.** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |

## <u>DECLARATION OF KEISHA WILLIAMS</u>

I, Keisha Williams, declare:

1. My name is Keisha Williams. I am over eighteen years of age, of sound mind, and competent to testify. I make this declaration based on my personal knowledge. I earned a B.S. in Electrical Engineering in 1998, an M.S. in Electrical Engineering in 2000, and a Juris Doctor with a concentration in Intellectual Property in 2006, and I held a Top Secret clearance with a lifestyle polygraph.

---

**DECLARATION OF KEISHA WILLIAMS**

**APP.13**

2.  In December 2025, I was housed in One North at FMC Carswell. In early March 2026, I was moved to the camp at FMC Carswell.

3.  In One North, male inmates were housed with women and shared the same showers, restrooms, and living areas with us. There was no meaningful separation. I personally saw that men could see into the showers and bathrooms, and I personally caught Gary Boone watching me.

4.  Boone also acted aggressively toward me in common areas. He would bump me, use hostile language, and make me feel unsafe. At one point, he accused me of bumping him while I was getting my mail, but I told staff to check the cameras because he had bumped me on purpose. I reported Boone's conduct, but I did not see staff take meaningful action to protect me.

5.  Other male inmates also made me fear for my safety. In February 2026, I reported that Michael Sternquest had been trying to antagonize me, trying to place himself wherever I was, and had reported a false PREA allegation against me. Around that same time, I also reported that Sternquest had threatened to blow up the place when he leaves and to harm people he had conflicts with while at Carswell.

6.  Moving me to the camp did not solve the problem. Even at the camp, male inmates are still present in common areas, including the mail room. In my experience, that means the same basic problem continues even after a transfer, because women still have to encounter men in shared spaces.

7.  I also believe I have faced retaliation for speaking up about these issues. Staff knew I was complaining about the presence of men in the women's housing units. After I complained, staff told me to stop filing emails and grievances because it made them look bad. I have also believed that staff retaliated against me through other aspects of my confinement when I continued to speak up.

8.  I have a serious autoimmune disease, ulcerative colitis. My condition has been severe, and my body has gone septic multiple times while I have been in BOP custody.

9.  I believe staff have retaliated against me through my medical care. In December 2025, I stated that when I complain or write things up, staff give me subpar medical care to keep me sick. I also stated that I had been told by a social worker that staff were retaliating against me medically by giving me inadequate care.

10. After I was moved to the camp on March 3, 2026, my medication situation got worse. The camp only had pill line twice a day, so I stopped receiving my midday Gabapentin dose. Even after I asked for help, and even after staff recommended that I receive that midday dose, Dr. Brown deleted the midday dose completely. I believed I was being punished for being moved to the camp and was being forced to walk around in severe pain.

DECLARATION OF KEISHA WILLIAMS

**APP.14**

11. I also believe staff have used my release-related issues against me. In February 2026, I stated that I had about 2,100 days of First Step Act credit but that only about 1,100 days were being applied. In December 2025, I was also told to state in a sensitive grievance that staff could retaliate against me by taking away privileges and First Step Act credits.

12. In my experience, it is not enough to move a woman to another hallway or move men from one unit to another. It only shifts the danger and leaves women exposed to the same men, the same threats, and the same retaliation in shared spaces. That is why I believe the male inmates should be removed from the women's housing units and placed in a separate unit.

13. The prison tries to scare women from reporting by leaking supposedly confidential complaints back to staff. There's no other way they could know some of the things I have put in forms that are supposed to be confidential. Staff retaliation has tried to make me stop fighting and stop speaking up, but I will continue to speak up because I am a fighter, and I won't quit.

14. I believe BOP staff uses substandard medical care to retaliate against me for speaking up about the condition of women at Carswell. I have serious medical conditions, including ulcerative colitis, and I have gone septic multiple times while in BOP custody. In 2025, despite severe symptoms including substantial bleeding, rapid weight loss, nausea, fatigue, dizziness, and weakness, I believe my care was delayed and inadequate for months, and I was not timely sent out for the level of treatment I needed. I have also had recommended outside testing and follow-up care that did not occur, and I learned from my records that an abdominal MRI identified Bosniak cysts on my right kidney, but no one explained that finding to me.

15. On March 20, 2026, I went to the Camp Clinic for a severe allergic rash on my face, arms, hands, and chest, but I was not given any treatment and no one followed up with me that day. On March 21 and 22, 2026, my rash became worse and I repeatedly sought care, including from Nurse Masters and Dr. Rasha, but I was given only Benadryl despite the visible severity of the rash, inflammation, and itching. By March 23, 2026, I was still waiting to be seen again while continuing to suffer from a severe and obvious allergic reaction.

16. I served this country for more than twenty years and never imagined that I would one day be in prison asking simply for safety and adequate medical care. I want people to understand that what happens inside these walls is real: women live with fear, women suffer in silence, and serious medical needs can go untreated while no one on the outside sees it. I am speaking out because I do not want this hidden from the public, and I do not want other women to endure what I have endured.

**DECLARATION OF KEISHA WILLIAMS**

**APP.15**

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

March __, 2026.

_____

Keisha Williams