IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and MIRIAM CRYSTAL HERRERA, <br><br> Plaintiffs, <br><br> v. <br><br> WARDEN T. RULE, WILLIAM K. MARSHALL, III, PAMELA J. BONDI, and THE UNITED STATES OF AMERICA, <br><br> Defendants. | § § § § § § § § § § § § § § § § | Civil Action No. 4:25-CV-0157-D (Consolidated with Civil Action No. 4:25-CV-0438-D) |
| ELIZABETH ANN HARDIN, BRENDA LEIGH KIRK, JASMINE MEABON, JESSICA CLEMENCIO MORAIS, and KEISHA WILLIAMS <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> WARDEN T. RULE, WILLIAM K. MARSHALL, III, PAMELA J. BONDI, and THE UNITED STATES OF AMERICA, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § | |

OPPOSITION OF INTERVENOR-PLAINTIFFS
TO MOTION TO DISMISS OF DEFENDANTS [ECF NO. 147]

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................ii

BRIEF IN OPPOSITION.................................................................................................. 1

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 4

III.  LEGAL STANDARD............................................................................................ 5

IV.   ARGUMENT........................................................................................................ 6

      A.    The *Doe* order allows defendants to transfer male inmates within FMC
            Carswell ........................................................................................................ 6

            1.    Judge Lamberth's reasoning was about transfer to male
                  prisons, not unit assignments within a women's prison. ..................... 6

            2.    The only grammatical reading of the D.D.C. order is that
                  Defendants must (1) maintain and continue the *Doe* plaintiffs'
                  housing status in women's facilities and (2) continue to provide
                  gender dysphoria treatment as it existed immediately prior to
                  January 20, 2025. ................................................................................ 7

            3.    Segregated housing within FMC Carswell is consistent with the
                  D.D.C. injunction.............................................................................. 9

      B.    Intervenor-Plaintiffs plausibly allege injuries fairly traceable to
            Defendants' own present choices..................................................................... 10

      C.    Intervenor-Plaintiffs plausibly allege redressability. ...................................... 12

V.    CONCLUSION................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Air Evac EMS, Inc. v. Tex., Dep't of Ins.*,
   851 F.3d 507 (5th Cir. 2017) ..................................................................... 5, 11

*Barnhart v. Thomas*,
   540 U.S. 20 (2003) ......................................................................................... 8

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) .......................................................................... 6

*Doe v. Bondi*,
   763 F. Supp. 3d 81 (D.D.C. 2025) ........................................................ *passim*

*Gutierrez v. Saenz*,
   606 U.S. 305 (2025) ...................................................................................... 10

*Inst. for Free Speech v. Johnson*,
   148 F.4th 318 (5th Cir. 2025) ..................................................................... 5, 6

*K.P. v. LeBlanc*,
   627 F.3d 115 (5th Cir. 2010) ........................................................................ 10

*King v. U.S. Dep't of Veterans Affs.*,
   728 F.3d 410 (5th Cir. 2013) .......................................................................... 5

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ...................................................................................... 13

*Parr v. Cougle*,
   127 F.4th 967 (5th Cir. 2025) ......................................................................... 5

*Reed v. Goertz*,
   598 U.S. 230 (2023) ...................................................................................... 13

*Texas v. Yellen*,
   105 F.4th 755 (5th Cir. 2024) ......................................................................... 5

*Utah v. Evans*,
   536 U.S. 452 (2002) ...................................................................................... 13

**Regulation**

Exec. Order No. 14168,
   Defending Women From Gender Ideology Extremism and Restoring
   Biological Truth to the Federal Government, 90 Fed. Reg. 8615 (Jan. 20, 2025) ............. 2, 3, 6

**Rule**

Fed. R. Civ. P. 12 ............................................................................................. 5

**BRIEF IN OPPOSITION**

Warden Tyal Rule and the other Defendants are harming women at FMC Carswell. They don't have to. But they are choosing to.

Every day at Carswell, biological males share showers and toilets with women. Many days, biological males—including convicted rapists, murderers, and sex offenders—threaten women.

Today, the Defendants force Intervenor-Plaintiffs to share elevators with male inmates. They force them to go to recreation areas where male inmates approach them, glare at them, and threaten them. As inmates, Intervenor-Plaintiffs lose their liberty, and lose their freedom. That is the law.

But as women, and as persons endowed by their Creator with certain inalienable rights, they should not be subjected to the daily presence of male inmates. That is a choice made by Warden Tyal Rule, Warden William Marshall, and Attorney General Pamela Bondi.

No court order mandates this choice. The injunction that Defendants point to orders Defendants *not to transfer the male inmates to a men's facility.* The only thing stopping Defendants from transferring the male inmates at Carswell to segregated housing is Defendants' preference not to.

That choice harms Intervenor-Plaintiffs. And it can be redressed by an order of this Court. The Defendants' motion to dismiss should be denied.

## I.    <u>INTRODUCTION</u>

Defendants treat a separate injunction entered in separate litigation as if it dictates every housing choice inside FMC Carswell. It does not.

The injunctions issued in *Doe v. Bondi* addresses the transfer of certain male inmates to male prisons under Executive Order ("EO") No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615 (Jan.

20, 2025). *See* Defs.' App'x in Supp. of Mot. to Dismiss at 107–109, ECF No. 148 ("App.") (Order Granting Preliminary Injunction, *Doe v. Bondi*, No. 1:25-cv-286-RCL (D.D.C. Nov. 17, 2025)); *see also Doe v. Bondi*, 763 F. Supp. 3d 81, 90 (D.D.C. 2025) (explaining rationale of order, which is carried forward through subsequent injunctions).

This case challenges present choices at FMC Carswell: who is housed with whom, where male inmates are placed inside the institution, whether they are dispersed through the female general population, whether they may enter female-only privacy areas, whether common-area rules are enforced, and whether a workable segregated unit is used. The Intervenor-Plaintiffs' First Amended Complaint ("FAC" or "Complaint") alleges that Warden Rule controls housing-unit assignments and transfers, has discretion to assign all male inmates to a single unit for security reasons, declined to do so, and instead continues to permit male inmates to remain dispersed throughout the facility and to interact with, denigrate, and threaten women throughout Carswell. FAC ¶¶ 21–22, 94, 103–106 (ECF No. 125). Those allegations are enough to establish both traceability and redressability.

The motion fails for three independent reasons.

First, the Complaint alleges ongoing injuries caused by Defendants' own decisions. Warden Rule allegedly controls housing assignments and transfers at FMC Carswell. *Id.* ¶ 21. The Complaint further alleges that he has discretion to assign all male inmates to a single unit but has chosen not to do so. *Id.* ¶ 94. It also alleges that after this Court entered relief protecting two women in Two North, Defendants simply moved a male inmate into One North, thereby injuring different women. *Id.* ¶ 71; *see also id.* ¶ 118. Those are Defendants' choices. Another court's injunction does not erase them.

Second, the Complaint seeks broader relief than Defendants admit. Defendants reduce the prayer for relief to one compliance sentence about a segregated unit. *See* Defs.' Mot. to Dismiss 1st Am. Complaint-in-Intervention at 4–6 (ECF No. 147) ("Mot."). That is incomplete. Intervenor-Plaintiffs seek an injunction forbidding Defendants from housing any male inmate within the general population of housing units where biological females are present and from permitting any male inmate to enter or remain in female-only areas, including showers, restrooms, changing areas, and dormitory spaces, *but also* the dining and recreation areas, where males interact with women. FAC ¶¶ 22, 91, 109. The Hospital Unit language appears as a way to comply with that relief, not as the only conceivable remedy. *See id.* at 41 (Prayer for Relief ¶ 2(ii)); *see also id.* ¶¶ 103–104. At minimum, a favorable ruling would relieve a discrete portion of Intervenor-Plaintiffs' injuries by requiring Defendants to stop dispersing male inmates through the female general population for housing and to stop allowing those males into women's spaces like the dining and recreation areas.

Third, the D.D.C. order does not do the work Defendants assign to it. Judge Lamberth sought to enjoin enforcement of the "Transfer Provision" of Executive Order 14168.[1] That provision is about whether men should be housed *in* women's prisons. It does not concern *where* in those prisons the men are housed. Indeed, Judge Lamberth recognized that BOP retained discretion in formulating new policies, including whether male inmates are placed "in segregated

---

[1] *See Doe v. Bondi*, 763 F. Supp. 3d 81, 90 (D.D.C. 2025) ("[D]efendants are temporarily enjoined and restrained from implementing Sections 4(a) and 4(c) of Executive Order 14168."). Section 4(a) provides that "The Attorney General and Secretary of Homeland Security shall ensure that males are not detained in women's prisons or housed in women's detention centers, including through amendment, as necessary, of Part 115.41 of title 28, Code of Federal Regulations and interpretation guidance regarding the Americans with Disabilities Act." *See id.* at 84 (quoting EO 14168, 90 Fed. Reg. at 8616).

housing." *Doe v. Bondi*, 763 F. Supp. 3d at 89. Intervenor-Plaintiffs are asking for exactly that exercise of discretion. Defendants are refusing to exercise it.

The motion should be denied.

## II.    BACKGROUND

Intervenor-Plaintiffs are biological women incarcerated at FMC Carswell. FAC ¶¶ 1–5. The Complaint alleges that FMC Carswell is designated for "female offenders," that Defendants control women inmates' housing assignments and transfers, and that the facility contains multiple housing units, including One North, Two North, One South, Two South, a Hospital Unit, and an Administrative Unit. *Id.* ¶¶ 19, 21, 63.

The Complaint alleges that male inmates are currently housed within the general female population, including in One North and Two North, and that Defendants continue to permit male inmates in common and intimate spaces used by women. *Id.* ¶¶ 67–72, 91–102. It specifically alleges that male inmates can and do watch women shower; that male inmates have entered restrooms and common areas used by women; that one male inmate entered the common-area recreation restroom while Ms. Meabon was in a stall, looked over the stall, and made a threatening sexual comment; that Ms. Clemencio Morais witnessed that male inmate leave the restroom and was threatened by him; and that staff refused to act despite camera footage and two witnesses. *Id.* ¶¶ 64, 91–92, 96–102. The complaint further alleges that Warden Rule has discretion to assign all male inmates to a single unit for security and administrative reasons, but has declined to do so. *Id.* ¶ 94. It alleges that the Hospital Unit is a secure medical area distinct from the SHU, with its own recreation area and commissary access, and that male inmates could be safely and humanely housed there, or in an equivalent segregated setting, without access to female housing units and privacy spaces. *Id.* ¶¶ 103–104.

Most of these allegations are supported by declarations already in the record and in-court testimony. *See, e.g.,* Pls.' Fleming & Herrera's App'x in Supp. of Mot. TRO & Prelim. Inj. (ECF No. 59); Tr. of Evidentiary Hr'g (Dec. 18, 2025), ECF No. 126.

Defendants' motion does not dispute that those are the injuries Intervenor-Plaintiffs plead. Instead, it argues that a separate injunction entered in the District of Columbia severs traceability and redressability because that injunction now "dictates" housing conditions at FMC Carswell. Mot. at 7–9. Defendants' theory fails because it overreads the D.C. orders and understates Defendants' ongoing control over the complained-of harms.

## III.    LEGAL STANDARD

A Rule 12(b)(1) motion directed at the pleadings tests whether the complaint plausibly alleges subject-matter jurisdiction. The court evaluates subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Inst. for Free Speech v. Johnson*, 148 F.4th 318, 326 (5th Cir. 2025) (quoting *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 413 (5th Cir. 2013)).

At the motion to dismiss stage, a plaintiff must allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Texas v. Yellen*, 105 F.4th 755, 763 (5th Cir. 2024) (citation omitted). For traceability, the alleged injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Parr v. Cougle*, 127 F.4th 967, 975 (5th Cir. 2025) (citation omitted). Redressability requires a plaintiff to show that "a favorable decision will relieve a discrete injury to himself, but not necessarily that a favorable decision will relieve his *every* injury." *Air Evac EMS, Inc. v. Tex., Dep't of Ins.*, 851 F.3d 507, 514 (5th Cir. 2017) (cleaned up).

5

"Generally, these elements are 'easily satisfied' when the 'potential enforcement of the' challenged law causes injury, 'and the injury could be redressed by enjoining enforcement of the' challenged law." *Inst. for Free Speech*, 148 F.4th at 330 (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660–61 (5th Cir. 2006)).

## IV.    ARGUMENT

### A.    The *Doe* order allows defendants to transfer male inmates within FMC Carswell

The crux of Defendants' motion is that "The government understands the injunctions that are now on appeal in the consolidated *Doe v. Bondi* proceeding in the D.C. Circuit to bar them from providing the former category of relief, *i.e.*, moving the male inmates to segregated housing." Mot. at 5. That understanding is wrong.

#### 1.    Judge Lamberth's reasoning was about transfer to male prisons, not unit assignments within a women's prison.

The D.C. litigation challenged the implementation of Executive Order No. 14168 against certain male inmates who had been housed in women's facilities after the government informed those men "of BOP's intention to transfer them to a male penitentiary." *Doe*, 763 F. Supp. 3d at 84 (citing the *Doe* complaint).

Judge Lamberth ultimately enjoined implementation of Section 4(a) of that Executive Order, which he dubbed the "Transfer Provision," and which states that government officials "'*shall ensure that males are not detained in women's prisons or housed in women's detention centers*.'" *Doe*, 763 F. Supp. 3d at 84 (emphasis added) (quoting EO 14168 § 4(a)); *see id.* at 90 ("the defendants are temporarily enjoined and restrained from implementing Sections 4(a) and 4(c) [concerning medication for gender dysphoria, not relevant here] of Executive Order 14168").

6

Judge Lamberth described the relevant harm[2] as plaintiffs' "imminent transfer to a male penitentiary." *Id.* at 87. He identified "the alleged constitutional violation" as "aris[ing] from the forthcoming transfer to a male penitentiary." *Id.* And he credited plaintiffs' assertion "that placement in a male penitentiary *by itself* will exacerbate the symptoms of their gender dysphoria." *Id.* at 88.

Everything about the *Doe v. Bondi* litigation: *why* the lawsuit was filed, *what* the alleged constitutional violation is, and *how* the plaintiffs' are allegedly injured, is based on the transfer of those male plaintiffs *to a male penitentiary*.

When placed in that one-sided context, it becomes plain that the *Doe* injunction enjoins defendants from moving the anonymous male plaintiffs into male penitentiary. But it also means that the injunction said nothing about where those men would be housed *within a women's penitentiary* such as FMC Carswell.

> **2.     The only grammatical reading of the D.D.C. order is that Defendants must (1) maintain and continue the *Doe* plaintiffs' housing status in women's facilities and (2) continue to provide gender dysphoria treatment as it existed immediately prior to January 20, 2025.**

The Defendants point to the following language from *Doe v. Bondi* tying their hands:

> the defendants shall maintain and continue plaintiffs Jane Doe, Mary Doe, Sara Doe, Emily Doe, Zoe Doe, Oliva Doe, Susan Doe, Lois Doe, Sally Doe, Wendy Doe, Rachel Doe, and Ellen Doe's housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025.

Mot. at 3 (quoting App. 108).

At first blush, this language may be difficult to parse. But when brought down to brass tacks, its grammatical meaning is unambiguous.

---

[2] The *Doe* plaintiffs separately requested relief related to hormone therapy, which is not germane to this case.

The language contains two commands:

1.  maintain/continue the plaintiffs' housing status in women's facilities; and

2.  continue to provide their gender-dysphoria treatment as it existed immediately prior to January 20, 2025.

*See* App. 108.

The date limitation (immediately prior to January 20, 2025) applies to the second duty alone. Under the "grammatical rule of the last antecedent, . . . a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (cleaned up). Thus, "as it existed immediately prior to January 20, 2025" modifies only "gender dysphoria treatment."

Even more tellingly, the use of the singular pronoun "it" in "as it existed" makes it grammatically impossible for the time limitation to modify both "gender dysphoria treatment" *and* "housing status." If the time limitation were meant to modify both, the pronoun would need to be plural: "as *they* [i.e. housing status and gender dysphoria treatment] existed immediately prior to January 20, 2025."

For Defendants to "maintain and continue plaintiffs' . . . housing status in women's facilities," then, Defendants must continue to place the plaintiffs in the status category of "housed in a women's facility." They have no dictate to freeze those male inmates in a specific bed, cell, wing, or unit. Such a reading would be absurd—prohibiting Defendants' from moving the named plaintiffs' to an adjacent cell, changing roommates, or even transferring inmates for security reasons. The language does not mean "the exact same housing situation forever." And for the same reason, it does not bar Defendants from moving the male inmates into a separate, segregated unit within FMC Carswell.

In short, although Intervenor-Plaintiffs disagree with the injunction on the merits, they concede that the *Doe* injunction prevents Defendants from transferring the named plaintiffs *into* a male facility. There is nothing in the injunction's language, grammar, or context, however, that prevents Defendants from moving the male inmates into a separate housing unit *within* FMC Carswell.

### 3. Segregated housing within FMC Carswell is consistent with the D.D.C. injunction.

Once "housing status in women's facilities" is understood as a category of "placed somewhere within a women's facility" rather than dictating exact unit arrangements, the illusion of Defendants' tied hands disappears.

Housing male inmates in a secure segregated unit within FMC Carswell would maintain their status in a women's facility while protecting the women—including Intervenor-Plaintiffs— now exposed to them. That is exactly the kind of middle path the D.D.C. court's reasoning leaves open: no transfer to a men's prison, but no command to scatter male inmates through the female general population either.

The Complaint alleges that FMC Carswell's Hospital Unit is inside the facility, secure, separate from the SHU [Special Housing Unit, used for mainly for discipline], and capable of preserving access to programming and services. FAC ¶¶ 103–104. Using that unit would therefore satisfy the Complaint's requested relief without violating the *Doe* court's concern about transfer to a male penitentiary.

That remedy is available to Defendants. The Defendants' choice not to implement it today means Intervenor-Plaintiffs' injuries are traceable to Defendants, and the injury would be redressed by an order from this court mandating that relief.

**B.    Intervenor-Plaintiffs plausibly allege injuries fairly traceable to Defendants' own present choices.**

Defendants' traceability argument fails because the Complaint challenges current decisions made by FMC Carswell officials, tracing their injuries to those decisions, not merely to injuries caused by an outside injunction.

The Complaint alleges that Defendants control women inmates' housing-unit assignments and transfers. FAC ¶ 21. It alleges that Warden Rule has discretion to assign all male inmates to a single unit for security and administrative reasons, but has declined to do so. *Id.* ¶ 94. It alleges that after this Court protected women in Two North, Defendants responded by moving a male inmate into One North, where at least two Intervenor-Plaintiffs were living. *Id.* ¶¶ 71, 118. It alleges that prison officials continue to permit male inmates to remain dispersed throughout the facility rather than confined to a separate unit. Id. ¶ 94. It alleges that male inmates continue entering female common and privacy spaces, including a common-area recreation restroom, and that officials refuse to intervene even when they have camera footage and witness accounts. *Id.* ¶¶ 91–92. Those facts describe injuries caused by Defendants' present administration of Carswell.

That is enough under Article III. Traceability is not defeated merely because another actor also matters. "Tracing an injury is not the same as seeking its proximate cause," *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010), and standing may exist even when third parties are involved, so long as the complaint plausibly alleges that the defendants' conduct contributes to the injury in a predictable way, *Gutierrez v. Saenz*, 606 U.S. 305, 315 (2025) (second element of standing satisfied because named defendant "denied access to the evidence and thereby caused [plaintiff's] injury" (citation omitted)). Traceability is also satisfied when government defendants oversee a

process, or provide oversight over a system that causes a plaintiff's injury. *See Air Evac EMS*, 851 F.3d at 514.

That makes the injuries in this case traceable to Defendants. Even granting that the D.D.C. injunction currently limits the option of transferring of male inmates to male prisons, that order does not compel Warden Rule to continue housing males in women's units at Carswell, nor does it require the Warden to grant male inmates access to women inmates in common areas like recreation and dining areas. And the injunction certainly does not compel him to forgo the Hospital Unit separate unit proposal. On a more specific note, allowing male inmates into a common-area recreation restroom contrary to posted rules to sexually threaten a female inmate and then ignoring inmates' reports of that incident are not required by Judge Lamberth. Those are local choices by local officials.

Defendants' own words confirm the point. The Defendants admit that "the government has not been precluded from offering" relief in the form of "reassigning male inmates from one general-population housing unit at FMC Carswell to another such unit away from Plaintiffs." Mot. at 5. That concession defeats their traceability theory. A defendant cannot plausibly say, on one page, that outside orders "currently dictate how male inmates are housed at FMC Carswell," *id.* at 7, and then describe how prison officials remain free to reshuffle housing conditions within Carswell—and then pivot again to saying they cannot shuffle them the way Intervenor-Plaintiffs demand. If Defendants can presently move male inmates from one women's unit to another, then Defendants remain a direct cause of which women are exposed to male inmates and where.

That is exactly what the Complaint alleges happened: when two women obtained protection, Defendants simply shifted the burden to different women. FAC ¶¶ 71, 118. The causal

11

chain therefore runs directly through Defendants' own choices, and Intervenor-Plaintiffs' injuries are traceable to Defendants.

###### C.   Intervenor-Plaintiffs plausibly allege redressability.

Defendants' mistaken interpretation of the D.D.C. injunction leads them to cry that their hands are tied when they are not. Defendants' redressability argument also fails for a second reason: it describes the requested relief too narrowly.

The Complaint does not ask only for an order saying "use the Hospital Unit." Intervenors ask for an injunction:

- "housing any male inmate (meaning any person who is biologically male, regardless of gender identity) within the general population of any housing unit where biological females are present or will be confined"; and

- enjoining Defendants from allowing "any male inmate to enter or remain in any female-only privacy area (including showers, restrooms, changing areas, or dormitory spaces) to which [Intervenor-Plaintiffs] ha[ve] access, so that Intervenor-Plaintiffs are not exposed to male inmates while showering, toileting, dressing, or sleeping"; and

- ordering Defendants to "house male inmates in a secure, segregated area at FMC Carswell (including the Hospital Unit or an equivalent setting) that preserves access to programming and services while preventing access to female-only privacy areas."

FAC at 40–41 (Prayer for Relief ¶ 2).

So even if the *Doe v. Bondi* injunction *did* tie Defendants' hands as they say it does, there would still be relief that this Court could provide to Intervenor-Plaintiffs. That matters because redressability is assessed against the relief requested in the complaint, not against a defendant's narrowed retelling of the complaint.

If this Court agrees with Intervenor-Plaintiffs on the merits, and agrees with Intervenor-Plaintiffs on the scope of the *Doe* injunction, then "that court order would eliminate the [Defendants'] justification for denying" Intervenor-Plaintiffs their requested relief. *See Reed v. Goertz*, 598 U.S. 230, 234 (2023). In other words, the Court would "order[] a change in a legal status," and "the practical consequence of that change would amount to a significant increase in the likelihood" that the Defendants would protect Intervenor-Plaintiffs from the cruel and unusual punishment of being imprisoned with males, and Intervenor-Plaintiffs therefore "would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002).

Here, even if Defendants were completely correct on their interpretation of the *Doe* injunction, a favorable ruling would redress at least a discrete portion of Intervenor-Plaintiffs' injuries. If the Court orders Defendants to stop housing male inmates within the general female population and to stop allowing them into female-only privacy areas, the relief would directly reduce Intervenor-Plaintiffs' complained-of exposure, fear, humiliation, and loss of privacy. If the Court further orders Defendants to use a secure segregated unit within Carswell, the relief would redress even more. But for standing purposes, partial relief is still enough. A remedy need not eliminate every injury to satisfy Article III; it need only likely alleviate a concrete piece of it. *See Massachusetts v. EPA*, 549 U.S. 497, 525–26 (2007).

The relief this Court has already provided to Plaintiffs Fleming and Herrera, if extended to Intervenor-Plaintiffs, would remedy at least part of their injuries, creating standing. And the complaint alleges exactly how the broader relief would work. The Hospital Unit is a secure medical area distinct from the SHU. It has its own recreation area, commissary access, on-unit laundry, and capacity for long-term housing. FAC ¶ 103. The Complaint alleges that male inmates "could be safely and humanely housed" there, or in an equivalent segregated setting, "without access to

13

female housing units and privacy spaces." *Id.* ¶ 104. The Complaint further alleges that Warden Rule already has discretion to do this. *Id.* ¶¶ 94, 104.

That is classic redressability. If the Court orders Rule to exercise authority he already has, Intervenor-Plaintiffs' injuries diminish. A court order would redress Intervenor-Plaintiffs' injuries. Article III requires no more.

## V.    **CONCLUSION**

Intervenor-Plaintiffs' First Amended Complaint alleges that they are suffering ongoing injuries at FMC Carswell because Defendants continue to disperse male inmates through the female general population, continue to allow them in female spaces, and refuse to use a workable segregated alternative that Warden Rule has authority to implement. Those injuries are fairly traceable to Defendants. They are redressable by a favorable ruling. And the D.D.C. injunction does not compel the current arrangement.

The motion to dismiss should be denied.

Dated: March 30, 2026

Respectfully submitted,

SCHAERR | JAFFE LLP

*/s/ John Greil*
John Greil
  Texas Bar No. 24110856
jgreil@schaerr-jaffe.com
Brian Field (*pro hac vice*)
bfield@schaerr-jaffe.com
Justin A. Miller
  Texas Bar No. 24116768
jmiller@schaerr-jaffe.com
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060

*Attorneys for Intervenor-Plaintiffs*

14