IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

|  |  |
|---|---|
| RHONDA FLEMING and MIRIAM CRYSTAL HERRERA,<br><br>        Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, et al.,<br><br>        Defendants. | Civil Action No. 4:25-CV-157-D<br>(consolidated with No. 4:25-CV-438-D) |

**<u>GOVERNMENT'S AND OFFICIAL-CAPACITY DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT</u>**

RYAN RAYBOULD
UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants United States
and the Director of the Federal Bureau of
Prisons, the Attorney General, and the
Warden of FMC Carswell (in their
official capacities)

**Table of Contents**

I.      Introduction ................................................................................................. 1

II.     Argument and Authorities ......................................................................... 3

        A.      Plaintiffs' claim for an injunction and declaratory relief under RFRA
                is moot given that Plaintiffs have already obtained a permanent
                injunction addressing the alleged or threatened injury underpinning
                their RFRA claim.  (count three)................................................................ 3

        B.      Plaintiffs lack standing for their APA challenge to 28 C.F.R.
                § 115.42—and this claim is also now moot.  (count four)........................... 7

                1.      Standing is absent because the regulation was not causing
                        Plaintiffs' alleged injuries at the time they filed suit,
                        nor would setting aside the regulation redress Plaintiffs'
                        alleged injuries. ............................................................................... 8

                2.      Plaintiffs' APA challenge is in any event moot in light of
                        the permanent injunction that protects Plaintiffs from male
                        inmates at FMC Carswell, and is not ripe with respect to
                        possible future housing at other BOP facilities............................... 11

        C.      Hererra's claim challenging any future transfer away from FMC
                Carswell is subject to dismissal.  (count six) ............................................ 13

III.    Conclusion................................................................................................. 18

## Table of Authorities

### Cases

*Allen v. Wright*,
468 U.S. 737 (1984) ................................................................................................ 9

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) ................................................................................................ 3

*Armenta v. Pryor*,
377 F. App'x 413 (5th Cir. 2010)......................................................................... 17

*Bumgardner v. Hawkins*,
No. 1:24-CV-153, 2026 WL 315704 (N.D. Miss. Feb. 5, 2026) ..................... 15, 16

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .............................................................................................. 12

*Envtl. Conservation Org. v. City of Dallas*,
529 F.3d 519 (5th Cir. 2008).................................................................................. 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ............................................................................................ 10

*Guerra Quezada v. United States*,
No. 3:24-CV-564-L-BK, 2025 WL 747263 (N.D. Tex. Jan. 29, 2025)................... 7

*Guerra Quezada v. United States*,
No. 3:24-CV-564-L-BK, 2025 WL 496572 (N.D. Tex. Feb. 14, 2025) ................. 7

*Inclusive Cmtys. Proj., Inc. v. Dep't of Treasury*,
946 F.3d 649 (5th Cir. 2019)........................................................................... 10, 11

*Johnson v. Collier*,
854 F. App'x 621 (5th Cir. 2021).......................................................................... 17

*Jones v. Greninger*,
188 F.3d 322 (5th Cir. 1999)................................................................................. 15

*King v. Lott*,
No. 25-785, 2025 WL 2525037 (E.D. La. July 23, 2025)............................... 15, 17

*King v. Slidell City*,
No. 25-785, 2025 WL 2522209 (E.D. La. Sept. 2, 2025) .................................... 15

*Louisiana v. U.S. Dep't of Educ.*,
   737 F. Supp. 3d 377 (W.D. La. 2024) ........................................................................ 8

*Marshel v. AFW Fabric Corp.*,
   552 F.2d 471 (2d Cir. 1977) ...................................................................................... 5

*McDonald v. Steward*,
   132 F.3d 225 (5th Cir. 1998) ................................................................................... 15

*Melot v. Bergami*,
   970 F.3d 596 (5th Cir. 2020) ................................................................................... 14

*Missouri v. U.S. Food & Drug Admin.*,
   No. 2:22-CV-233-Z, 2025 WL 2825980 (N.D. Tex. Sept. 30, 2025) ................. 3, 4

*Pluet v. Frasier*,
   355 F.3d 381 (5th Cir. 2004) ..................................................................................... 8

*Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cty.*,
   205 F.3d 265 (5th Cir. 2000) ................................................................................... 12

*Quinones-Cedeno v. Ridenour*,
   No. 3:20-CV-88, 2022 WL 8330287 (N.D.W. Va. June 1, 2022) .......................... 14

*Quinones-Cedeno v. Ridenour*,
   No. 3:20-CV-88, 2022 WL 4103843 (N.D.W. Va. Sept. 8, 2022) ................... 14–15

*Quinones-Cedeno v. Ridenour*,
   No. 22-7119, 2023 WL 2160041 (4th Cir. Feb. 22, 2023)...................................... 15

*Salamah v. UT Sw. Med. Ctr.*,
   No. 3:24-CV-477-D, 2025 WL 1211124 (N.D. Tex. Apr. 25, 2025) ..................... 12

*Texas v. Yellen*,
   105 F.4th 755 (5th Cir. 2024)..................................................................................... 8

*Trump v. New York*,
   592 U.S. 125 (2020) ................................................................................................. 12

*TTEA v. Ysleta del Sur Pueblo*,
   181 F.3d 676 (5th Cir. 1999)...................................................................................... 7

*Whittington v. Lynaugh*,
   842 F.2d 818 (5th Cir. 1988)............................................................................... 15, 16

iii

Statutes, Rules, and Other Authorities

18 U.S.C. § 3621(b)................................................................................................ 14

28 C.F.R. § 115.42(c) ......................................................................................... 7, 8

Exec. Order No. 14168, Defending Women from Gender Ideology Extremism and
    Restoring Biological Truth to the Federal Government,
    90 Fed. Reg. 8615 (Jan. 20, 2025)....................................................... 1, 9

iv

## I.    Introduction

This case involves claims by Plaintiffs Rhonda Fleming and Crystal Herrera ("Plaintiffs") challenging the practice of housing male inmates at Federal Medical Center, Carswell ("FMC Carswell") in Fort Worth, Texas.  FMC Carswell is a facility operated by the Federal Bureau of Prisons for female inmates, but since approximately 2013, it has also housed certain male inmates[1] due to their claimed gender identity or other factors.[2]

As previously noted in other filings in this case, the government does not want to continue housing male inmates at FMC Carswell (or at any other prison facility designated for females) and wants to ensure that males do not enter intimate spaces designated for women, as explained in Executive Order No. 14168 issued on January 20, 2025.  In the Executive Order, the President confirmed that it is the "policy of the United Staes to recognize two sexes, male and female," and directed the Attorney General to "ensure that males are not detained in women's prisons or housed in women's detention centers."[3]  The government has not yet been able to fully carry out this mandate, however, because of court orders entered in litigation elsewhere in the aftermath of the Executive Order[4]—including certain litigation that is currently on appeal to the U.S.

---

[1] Consistent with prior usage in this litigation, "male inmate" as used herein "means a person who is biologically male, regardless of gender identity."  (Doc. 83 at 1.)

[2] *See* Declaration of Jody R. Upton ¶ 48, *Fleming v. United States*, No. 7:17-CV-9-O (N.D. Tex. Aug. 10, 2017) ("Beginning in December 2013, male- to-female transgender inmates have been designated to FMC Carswell . . . .") (Doc. 100 in No. 7:17-CV-9-O, at page App. 199).

[3] *See* Exec. Order No. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615, 8615, 8616 (Jan. 20, 2025).

[4] *See* Order at 11, *Doe v. McHenry*, No. 1:25-CV-286-RCL (D.D.C. Feb. 4, 2025) (requiring the government to "maintain and continue the [male inmates'] housing status and medical care as they existed

**Government's and Official-Capacity Defendants' Motion**
**to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 1**

Court of Appeals for the District of Columbia Circuit, in which the government is seeking to lift any injunction or prohibition on its ability to transfer male inmates out of female facilities.

In this case, Defendants[5] previously agreed to a permanent injunction in favor of Plaintiffs to ensure that they are not housed with male inmates at FMC Carswell, resulting in the Stipulated Order of Permanent Injunction and Final Judgment entered in this action on February 2, 2026 as a final judgment under Rule 54(b).  (Doc. 137.) Plaintiffs agree that this permanent injunction resolved their claims for alleged violations of their right to bodily privacy and the Eighth Amendment.  (Doc. 149, ¶ 114.)  The remaining claims Plaintiffs are seeking to prosecute against Defendants as set forth in Plaintiffs' Verified Second Amended Complaint are thus count three (for injunctive and declaratory relief under the Religious Freedom Restoration Act ("RFRA")), count five (an Administrative Procedure Act challenge to 28 C.F.R. § 115.42), and count six (Herrera's challenge to any future transfer out of FMC Carswell under a retaliation claim).[6]  (Doc. 149, ¶¶ 123–32, 138–54.)  Defendants now move to dismiss these claims under Rule 12(b)(1) and (6).

---

immediately prior to January 20, 2025"); Order Granting Preliminary Injunction at 2, *Doe v. Bondi*, No. 1:25-CV-286-CRL (D.D.C. Nov. 17, 2025) (granting the same relief to an expanded group of plaintiffs).

[5] Defendants as used herein refer to the United States and, in their official capacities, the Director of the Federal Bureau of Prisons, the Attorney General, and the Warden of FMC Carswell.  The current Warden, T. Rule, has also been newly sued in his individual capacity, but Warden Rule's deadline to respond to Plaintiffs' Verified Second Amended Complaint in his individual capacity has not yet arrived, and this motion is filed only on behalf of the government and official-capacity defendants.

[6] Count four is a claim for damages under RFRA and is asserted only against Warden Rule in his individual capacity; thus, it is not the subject of this motion.

**Government's and Official-Capacity Defendants' Motion**
**to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 2**

## II.      Argument and Authorities

**A.      Plaintiffs' claim for an injunction and declaratory relief under RFRA is moot given that Plaintiffs have already obtained a permanent injunction addressing the alleged or threatened injury underpinning their RFRA claim. (count three)**

The permanent injunction previously entered as a final judgment of this Court enjoins Defendants from housing any male inmate within the general female population at FMC Carswell in any unit in which either Plaintiff may be housed, and also enjoins Defendants from permitting any male inmate to enter or remain in any privacy area (including showers, restrooms, changing areas, and dormitory spaces) to which either Plaintiff has access. (Doc. 137.) Plaintiffs acknowledge the existence of this permanent injunction and agree that it resolves their claims in counts one and two. (Doc. 149 at pp.4–5 & ¶ 114.) Plaintiffs nonetheless continue to seek injunctive relief (and related declaratory relief) in connection with their RFRA claim in count three. (Doc. 149, ¶¶ 123–32.) But because Plaintiffs' alleged or threatened injury underlying this claim— arising from being housed with male inmates—has already been addressed and remedied by the permanent injunction, Plaintiffs' RFRA claim is moot.

"Mootness has been described as the doctrine of standing set in a time frame . . . ." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks and citation omitted). The key point is that "the injury underpinning standing must generally 'continue throughout [the litigation's] existence.'" *Missouri v. U.S. Food & Drug Admin.*, No. 2:22-CV-233-Z, 2025 WL 2825980, at *6 (N.D. Tex. Sept. 30, 2025) (quoting *Arizonans*, 522 U.S. at 68 n.22). "Otherwise, the case or

controversy is moot." *Id.*

Plaintiffs' claims in each of counts one, two, and three were all premised on the same underlying alleged injury (or threatened injury), arising from the fact that male inmates were being housed together with Plaintiffs at FMC Carswell.  Specifically, per Plaintiffs' allegations, this living arrangement required Plaintiffs to potentially share intimate spaces with men and created risks that Plaintiffs might be seen nude by men (or vice versa) and be required to share showers, toilets, changing areas, and sleeping spaces with men.  (*See* Doc. 149, ¶¶ 45–75, 115–32.)  Plaintiffs asserted that this state of affairs violated their rights to bodily privacy (count one), constituted cruel and unusual punishment in violation of the Eighth Amendment (count two), and violated RFRA (count three).  (Doc. 149, ¶¶ 115–32.)

Notably, though, while Plaintiffs pleaded these three separate claims or legal theories, they did not contend that three separate forms of injunctive relief were required, i.e., one type of injunction for the bodily privacy claim, a different injunction for the Eighth Amendment claim, and yet another injunction for the RFRA claim.  Instead, Plaintiffs sought a single permanent injunction (as well as similar temporary and preliminary relief) that encompassed all three claims to address the alleged injury common to those claims.  (*See* Doc. 61 at pp.39–40 ("Relief Requested" section of prior complaint when all three claims were still live); *see also Doc*. 58-1 (single proposed order submitted in connection with a request for injunctive relief based on all three then-live claims).)  This common grounding of Plaintiffs' legal claims or theories in that same alleged injury—i.e., being housed with men—is also evidenced by the overlapping nature

**Government's and Official-Capacity Defendants' Motion**
**to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 4**

of Plaintiffs' allegations, for example as seen in Plaintiffs' reliance on the claimed violations of their bodily privacy and religious rights to also show an Eighth Amendment violation.  (Doc. 149, ¶ 119.)

Here, Plaintiffs' RFRA claim is moot because the final judgment and permanent injunction that Plaintiffs have already received has provided Plaintiffs with relief against the actual and/or threatened injury underpinning their RFRA claim.  Caselaw—including Fifth Circuit precedent—makes clear that now that Plaintiffs have obtained that injunctive relief in the form of a final judgment, there is no continuing live case or controversy to support jurisdiction for Plaintiffs to seek another similar injunction.  *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527–30 (5th Cir. 2008) (explaining that a plaintiff's claims for injunctive relief were moot in light of the entry of a consent decree elsewhere that controlled the defendant's behavior as relevant to the issues raised by the plaintiff); *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (explaining that one request for an injunction against a challenged "going-private" transaction was mooted when a separate permanent injunction was issued to prohibit the transaction).

The "Relief Requested" section of Plaintiffs' live complaint also confirms that whatever injunctive relief is currently being requested on Plaintiffs' RFRA claim is duplicative of the permanent injunction that Plaintiffs already have.  In their most recent amendment, Plaintiffs have deleted the prior language requesting injunctive relief (which language was essentially incorporated into the permanent injunction) and in its place have included a more generic request for "relief prohibiting Defendants from substantially

**Government's and Official-Capacity Defendants' Motion**
**to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 5**

burdening Plaintiffs' religious exercise through the housing and supervision practices challenged in this action." (Doc. 149 at p.39; *see also* Doc. 149-1 at p.43 (redline version).) But Plaintiffs' underlying allegations about the "housing and supervision practices challenged in this action" are substantively unchanged from Plaintiffs' prior pleadings. (*See* Doc. 149-1 at pp.8–31 (redline version of the factual background section of the complaint, with essentially no changes).) And as discussed above, Plaintiffs have obtained a permanent injunction that controls Defendants' actions with respect to those "housing and supervision practices"—Defendants are permanently enjoined from housing any male inmate within the general female population at FMC Carswell in any unit in which either Plaintiff may be housed, and also from permitting any male inmate to enter or remain in any privacy area (including showers, restrooms, changing areas, and dormitory spaces) to which either Plaintiff has access. (Doc. 137.) As for Plaintiffs, then, the injunction that is now being requested to "prohibit[] . . . the housing and supervision practices challenged in this action" would merely duplicate relief that Plaintiffs have already obtained via the permanent injunction. This issue is moot.

This is further confirmed by an allegation in Plaintiffs' earlier pleadings (pre-permanent injunction) that continues to appear in their live complaint. Plaintiffs explained then—and continue to assert—that "[m]ale inmates could be safely and humanely housed" elsewhere within FMC Carswell if in a "distinct, secure area without access to female housing units and privacy spaces." (Doc. 149, ¶ 77; *see also* Doc. 61, ¶ 87 (same language in the prior complaint).) But that is now precisely the situation for Plaintiffs vis-à-vis any male inmates at FMC Carswell, given that the permanent

**Government's and Official-Capacity Defendants' Motion**
**to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 6**

injunction mandates that male inmates not be housed in any unit with Plaintiffs or be allowed access to any privacy spaces that Plaintiffs have access to.  (Doc. 137.)  There is thus no longer any live case or controversy to support injunctive relief (or accompanying declaratory relief[7]) as to these matters, and Plaintiffs' RFRA claim in count three is moot.

## B.       Plaintiffs lack standing for their APA challenge to 28 C.F.R. § 115.42—and this claim is also now moot.  (count four)

Plaintiffs also bring an APA challenge to 28 C.F.R. § 115.42, which provides that "[i]n deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates . . . the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems."  28 C.F.R. § 115.42(c) (cited at Doc. 149, ¶ 30). Plaintiffs argue that this regulation has "subjected [them] to an ongoing risk of being housed with a male inmate" (Doc. 149, ¶ 120) and was promulgated in violation of the APA's standards (Doc. 149, ¶¶ 138–48).  For relief, they ask the Court to set aside the regulation and to "prohibit[] Defendants from housing biological male inmates at FMC Carswell."  (Doc. 149, at p.39.)  But as explained below, Plaintiffs lack standing for this claim, and even if it were assumed that they had standing at one point, their claim is now

---

[7] Plaintiffs also briefly request unspecified declaratory relief in connection with their RFRA claim, but in the absence of a jurisdictionally cognizable claim, a request for declaratory relief will not support further litigation.  *See TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999) (explaining that the "declaratory judgment statute . . . offers no independent ground for jurisdiction," but "[r]ather, . . . permits the award of declaratory relief only when other bases for jurisdiction are present"); *Guerra Quezada v. United States*, No. 3:24-CV-564-L-BK, 2025 WL 747263, at *6 (N.D. Tex. Jan. 29, 2025) (explaining that "claims for . . . declaratory relief are not standalone claims, but seek relief contingent upon the assertion of a valid substantive cause of action"), *rec. accepted*, 2025 WL 496572 (N.D. Tex. Feb. 14, 2025).

moot and non-justiciable given the permanent injunction that is in place and their current housing status.

       **1.**       **Standing is absent because the regulation was not causing Plaintiffs' alleged injuries at the time they filed suit, nor would setting aside the regulation redress Plaintiffs' alleged injuries.**

"To establish Article III standing, an injury must be [1] 'concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling.'" *Texas v. Yellen*, 105 F.4th 755, 763 (5th Cir. 2024) (bracketed numbers added; citation omitted). A "plaintiff's standing is evaluated at the time of filing of the initial complaint in which they joined." *Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377, 392 (W.D. La. 2024); *see also Pluet v. Frasier*, 355 F.3d 381, 386 n.3 (5th Cir. 2004) ("A party must have standing at the time the complaint is filed.").

Here, the relevant dates for assessing standing are February 19, 2025 (when Fleming's initial complaint was filed), and April 22, 2025 (when Herrera's initial complaint was filed). And as explained below, even if it were assumed that § 115.42 somehow caused Plaintiffs to be housed with male inmates at FMC Carswell at some point in the past,[8] that was not the case when Plaintiffs filed suit—and therefore Plaintiffs' lack standing in this lawsuit for any challenge to that regulation.

Specifically, on January 20, 2025, the President issued an Executive Order

---

[8] The regulation merely recites that in making the discretionary decision about where to house a transgender inmate, "the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." 28 C.F.R. § 115.42(c). The regulation does not dictate the placement of any particular inmate in any particular prison, nor does it even require that male inmates be housed in female prisons. It is thus far from clear that the regulation caused male inmates to be housed with Plaintiffs at FMC Carswell, but in any event even if that were assumed, Plaintiffs lack standing for the reasons discussed herein.

confirming that it is the "policy of the United Staes to recognize two sexes, male and female," and directing the Attorney General to "ensure that males are not detained in women's prisons or housed in women's detention centers."[9]  "Consistent with the executive order, BOP informed male trans-identifying inmates who were housed in women's facilities before January 20 that they would be transferred to men's prisons, and BOP began to transfer inmates accordingly."  (App. 035.)

That was not the end of the matter, though.  Twenty male inmates housed in women's prisons, including some at FMC Carswell, filed lawsuits (across several separate civil actions) to challenge the Executive Order and to bar their transfers and any cessation of their treatment for gender dysphoria.  (App. 035.)  By February 4, 2025, a district court in the District of Columbia "held a hearing and issued a nationwide TRO barring BOP from transferring any inmates pursuant to" the President's Executive Order.  (App. 049.)  Various other similar orders and injunctions followed, and there is now a consolidated appeal pending in the D.C. Circuit, captioned *Doe v. Bondi*, No. 25-5099, in which the government is attempting to vacate or reverse these rulings so that it can promptly implement the President's Executive Order.  (App. 001–21.)

Under these circumstances, Plaintiffs fail to satisfy the second and third elements of standing—traceability and redressability.  First, showing traceability requires Plaintiffs to show that the challenge government action caused their claimed injury.  *See Allen v. Wright*, 468 U.S. 737, 757 (1984).  But an injury is not fairly traceable if it is "the result

---

[9] *See* 90 Fed. Reg. at 8615, 8616.

of the independent action of some third party not before the court." *Inclusive Cmtys. Proj., Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (internal quotation marks and citation omitted).

That is the situation here.  As discussed above, by the time Plaintiffs filed their initial complaints, it was not any actions of Defendants that were causing Plaintiffs' alleged injury arising from the housing of male inmates at FMC Carswell.  Instead, it was the actions of the various courts, in civil actions filed elsewhere by male inmates (now consolidated in the *Doe v. Bondi* appeal), that were and are the cause of male inmates' presence at FMC Carswell.  Those injunctions have been entered by third parties that are not before this Court (and in fact are other courts), and were entered over the government's objections and are currently the subject of an appeal being prosecuted by the government.  (*See* App. 022.)  As of when Plaintiffs filed their complaints, then, it was the court orders from elsewhere, and not anything Defendants were doing, that formed the basis for Plaintiffs' alleged injuries.  Therefore, traceability is absent.

Second, redressability is likewise absent.  This element of standing requires a plaintiff to show that that a favorable decision "is *likely*, as opposed to merely *speculative*," to redress its injury.  *Inclusive Cmtys. Proj.*, 946 F.3d at 655 (emphasis in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Redressability cannot be shown here for essentially the same reasons discussed above that traceability does not exist—it is court orders from elsewhere that dictated the housing of male inmates at FMC Carswell when Plaintiffs filed suit (and that continue to

**Government's and Official-Capacity Defendants' Motion**
**to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 10**

do so).  The existence of an adverse court order entered against a party is, of course, not inherently unredressable.  But, the proper way to redress such an order is through an appeal—which the government is pursuing in the D.C. Circuit.  It is the D.C. Circuit that has jurisdiction over the injunctions at issue and has the power to overturn them, if it believes that to be the legally appropriate outcome (which is what the government is advocating for on appeal).

Plaintiffs instead seek to set aside § 115.42 in this Court and to obtain an accompanying order barring the housing of any male inmates at FMC Carswell (even, apparently, in other housing units away from Plaintiffs, where there would be no potential sharing of common privacy spaces with Plaintiffs).  But for the reasons discussed above, Plaintiffs cannot show that it is "likely" they can obtain redress of their relevant alleged injury by having the regulation set aside.  *Inclusive Cmtys. Proj.*, 946 F.3d at 655.  Whether or not the regulation remains in place does not impact whether the injunctions that currently require male inmates to be housed at FMC Carswell will remain in place—that question is in the D.C. Circuit's hands.  Hence, Plaintiffs lack standing for their APA claim.

> **2.      Plaintiffs' APA challenge is in any event moot in light of the permanent injunction that protects Plaintiffs from male inmates at FMC Carswell, and is not ripe with respect to possible future housing at other BOP facilities.**

Apart from the standing issue noted above arising from the court orders entered elsewhere that are now on appeal in the D.C. Circuit, there are additional, independent reasons that jurisdiction is lacking for Plaintiffs' APA challenge.  For one, to the extent

**Government's and Official-Capacity Defendants' Motion**
**to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 11**

Plaintiffs are relying on an alleged or threatened injury in connection with potentially being housed in immediate proximity with male inmates at FMC Carswell, that injury has now been addressed via the permanent injunction. Thus, for the same reasons of mootness discussed above in connection with Plaintiffs' RFRA claim, Plaintiffs' APA claim is also moot in this regard—Plaintiffs are now permanently protected from being housed with male inmates at FMC Carswell even if the challenged regulation remains on the books forever, and thus there is no live case or controversy relating to the regulation's potential effect on Plaintiffs' housing conditions at FMC Carswell.

Second, to the extent Plaintiffs might suggest that they have a presently cognizable legal interest in challenging the regulation under a theory that they may in the future be housed with male inmates at different prisons other than FMC Carswell, they have no standing for any such claim at this time because the threatened injury is speculative and hypothetical, and is not yet ripe.[10] *See Salamah v. UT Sw. Med. Ctr.*, No. 3:24-CV-477-D, 2025 WL 1211124, at *5 (N.D. Tex. Apr. 25, 2025) ("A plaintiff's standing to pursue injunctive relief that is calculated to redress a future injury depends on whether that future injury is imminent, as opposed to merely conjectural." (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983))).

Specifically, Herrera is currently housed at FMC Carswell, where she enjoys the protection of the permanent injunction. She therefore has no actual or imminent injury

---

[10] Ripeness is often intertwined with standing, as both doctrines require consideration of "whether a plaintiff has suffered an adequate harm." *Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cty.*, 205 F.3d 265, 268 n.7 (5th Cir. 2000). If a case is "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all," it is not ripe. *Trump v. New York*, 592 U.S. 125, 131 (2020) (internal quotation marks and citation omitted).

**Government's and Official-Capacity Defendants' Motion**
**to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 12**

arising from possibly being housed with male inmates at other institutions at some later time.  As of today, it is no more than speculation to consider whether male inmates would even be present at another institution Herrera might be transferred to in the future, or— even more importantly—whether the specific layout and living arrangements of such hypothetical institution with hypothetical male inmates would lead to the same conditions Herrera has complained about at FMC Carswell (where Plaintiffs explain that the layout is such that there are group living areas and women might encounter men in shared privacy spaces).[11]

Fleming similarly has no current, ongoing injury relating to male inmates, because she is currently housed at a camp facility in another state where there are no male inmates at all.  (App. 110.)  And, as with Herrera, it is similarly hypothetical and speculative to guess whether Fleming might in the future be transferred to a facility with male inmates, and if so what the living conditions would be at such institution.  Finally, if Fleming is ever returned to FMC Carswell (where there are group living arrangements), she has the protection of the permanent injunction.  For both Herrera and Fleming, then, there is no live case or controversy to support APA litigation over the challenged regulation at this time.

**C.      Hererra's claim challenging any future transfer away from FMC Carswell is subject to dismissal.  (count six)**

Herrera also brings a claim by which she alleges that after filing this lawsuit,

---

[11] Not all institutions have group living units and bathrooms similar to the set-up at FMC Carswell, for example.

"BOP officials threatened to transfer [her] to FCI Aliceville, Alabama," which she says would constitute unlawful retaliation in violation of the First Amendment. (Doc. 149, ¶ 150.) Herrera explains that this occurred in October 2025 and that "[u]pon information and belief, Defendants selected [her] for transfer to attempt to undermine and moot this litigation." (Doc. 149, ¶¶ 90, 92.)

But Herrera's challenge to any anticipated transfer out of FMC Carswell fails to state a claim upon which relief can be granted, for several reasons.[12] First, Congress has given the Federal Bureau of Prisons discretion to "designate the place of the prisoner's imprisonment," 18 U.S.C. § 3621(b), and that discretion is "exclusive," *Melot v. Bergami*, 970 F.3d 596, 598 (5th Cir. 2020). Moreover, the relevant statute states that the agency's "designation of a place of imprisonment . . . is not reviewable by any court." 18 U.S.C. § 3621(b). Thus, to the extent Herrera seeks to have this Court review any administrative decision to transfer her to a different prison, § 3621(b) bars her claim. *See Quinones-Cedeno v. Ridenour*, No. 3:20-CV-88, 2022 WL 8330287, at *8–*9 (N.D.W. Va. June 1, 2022) ("Plaintiff . . . seeks relief from the Court to prevent his 'retaliatory transfer'. However, pursuant to 18 U.S.C. § 3621(b), the Bureau of Prisons, rather than the Courts, has the responsibility to designate where federal inmates will be incarcerated. . . . Accordingly, this court is without authority to designate where Plaintiff may be placed or transferred, and this request for relief must be denied."), *rec. adopted*, 2022 WL

---

[12] Defendants also are not abandoning other possible defenses to Herrera's retaliation claim, including the defense of failure to exhaust administrative remedies. However, that defense would require consideration of materials outside the pleadings and is not evidenced on the face of the complaint and any attachments, so it is not raised here.

4103843 (N.D.W. Va. Sept. 8, 2022), *aff'd*, No. 22-7119, 2023 WL 2160041 (4th Cir. Feb. 22, 2023).

Nor has Herrera alleged any factual basis for a retaliatory transfer claim. "To prevail on a claim of retaliation" (even assuming one were theoretically possible here[13]), "a prisoner must establish (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred." *King v. Lott*, No. 25-785, 2025 WL 2525037, at *6 (E.D. La. July 23, 2025) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)), *rec. adopted*, *King v. Slidell City*, No. 25-785, 2025 WL 2522209 (E.D. La. Sept. 2, 2025). "Mere conclusionary allegations of retaliation will not be enough," and an "inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

"The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive." *Bumgardner v. Hawkins*, No. 1:24-CV-153, 2026 WL 315704, at *9 (N.D. Miss. Feb. 5, 2026). As another court recently explained, "in *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system." *Bumgardner*, 2026 WL 315704, at *10. "The defendants then denied Johnson's request to have his

---

[13] Claims for allegedly retaliatory transfers often arise in the context of state prisons, and given that § 3621(b)'s bar only applies to designations within the federal prison system, there is a body of caselaw that has developed around such claims, including the cases cited herein.

custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits." *Id.* "The Fifth Circuit rejected Johnson's claim—and explained why courts must insist upon specific factual allegations to support an inference of retaliation," *id.*, as follows:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Id.* (quoting *Whittington*, 842 F.3d at 819).

Here, Herrera fails to plead anything beyond conclusory assertions and speculation about a possible transfer. She simply states that in October 2025, she was "threatened" with a transfer to FCI Aliceville, and then she goes on to lodge, in the next sentence, a conclusory assertion that "[t]his proposed transfer is in retaliation for Ms. Herrera's exercise of her constitutionally protected right to petition the government for redress of grievances through this lawsuit, as well as Ms. Herrera raising safety and privacy complaints with prison officials." (Doc. 149, ¶ 90.) These allegations "fall short of anything more than barebone conclusory statements from which a plausible inference of

retaliation *cannot* be made." *King*, 2025 WL 2525037, at \*7.  Moreover, Herrera

recounts that the allegedly retaliatory transfer was floated in October 2025, but the record

reflects that she had filed her lawsuit some six months earlier, on April 22, 2025.[14]  This

timing does not support any causal nexus between Herrera's protected litigation or

expressive activities and the allegedly retaliatory transfer proposal.[15]  *See Armenta v.*

*Pryor*, 377 F. App'x 413, 416 (5th Cir. 2010) (finding no chronology of events where the

plaintiff's "grievances were filed months before the alleged retaliatory act").

Herrera also fails to allege who was supposedly behind the retaliatory nature of the

proposed transfer and why that person or persons would have harbored retaliatory animus

against her, specifically, based on her filing of a lawsuit relating to the broad, much-

litigated issue of whether male inmates should be housed in female prisons.  Even

assuming that the existence of Herrera's lawsuit or related complaints were known to the

relevant decisionmaker, Hererra "identifies no reason why [her] suit might have stood out

from the mass of litigation so as to possibly draw the ire of [the decisionmaker]." *See*

*Johnson v. Collier*, 854 F. App'x 621, 622 (5th Cir. 2021).  Hererra also makes no

allegation that the (nationwide) issue of whether to house male inmates at female

facilities was somehow within the control of the same prison administrator or

administrators who were responsible for the mundane, everyday work of transferring

---

[14] *See Herrera v. Rule*, No. 4:25-CV-438-D (N.D. Tex.) (later consolidated into No. 4:25-CV-157-D).

[15] Herrera's allegation that a transfer was proposed in an "attempt to undermine and moot this litigation" also fails to support any claim.  (Doc. 149, ¶ 92.)  Herrera's co-plaintiff, Fleming, was in fact transferred out of FMC Carswell some time ago, but Defendants have not argued that this transfer mooted the entire case as to Fleming—instead, Defendants agreed to entry of a permanent injunction in Fleming's (and Herrera's) favor.

inmates to or from FMC Carswell.

Indeed, the issue of whether male inmates should be housed with female inmates is clearly the subject of high-level policymaking judgments made by incumbent Presidents or other senior political appointees over the years, and likewise it has been the subject of litigation for years.  It is not plausible to think, given these considerations, that Herrera's suit would cause unidentified prison-transfer personnel to suddenly begin to harbor a retaliatory animus against her.  Put another way, this is not a situation like some other cases in which a retaliation claim might clear the bar of plausibility—for example, when an inmate files a grievance accusing a specific guard of concrete, personalized wrongdoing or misconduct, and then the guard allegedly retaliates against the inmate for filing that grievance, which amounts to a personal attack on the guard's integrity and may result in disciplinary or other employment consequences.  No rational prison administrative official in charge of routine transfers and population-balancing measures would similarly perceive a systemic lawsuit of the type filed by Herrera to constitute a personal attack along these lines that might plausibly give rise to an individualized, specific animus against the plaintiff.  No facts plausibly establishing a claim for retaliation have been pleaded.

### III.    Conclusion

For all these reasons, counts three, five and six of Plaintiffs' Verified Second Amended Complaint should be dismissed.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants United States
and the Director of the Federal Bureau of
Prisons, the Attorney General, and the
Warden of FMC Carswell (in their
official capacities)

## Certificate of Service

On April 10, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney