IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

RHONDA FLEMING and MIRIAM
CRYSTAL HERRERA,

     Plaintiffs,

v.

WARDEN T. RULE, et al.,

     Defendants.

Civil Action No. 4:25-CV-157-D
(consolidated with No. 4:25-CV-438-D)

## DEFENDANTS' RESPONSE TO INTERVENOR PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF

RYAN RAYBOULD
UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants United States
and the Attorney General, the Director of
the Federal Bureau of Prisons, and the
Warden of FMC Carswell (in their
official capacities)

**Table of Contents**

I.    Introduction ................................................................................................... 1

II.   Background................................................................................................... 2

    A.    Beginning in early 2025, various courts in other districts enjoin the BOP from implementing the President's Executive Order that calls for housing male inmates separately from female inmates. .......................... 2

    B.    Intervenor Plaintiffs file their complaint in January 2026 seeking to require the BOP to house male inmates in a segregated unit at FMC Carswell. .................................................................................................. 3

    C.    Intervenor Plaintiffs file a motion for injunctive relief. ............................... 6

    D.    The D.C. Circuit vacates the preliminary injunctions requiring certain male inmates to be housed in female facilities but remands for further proceedings. ............................................................................. 7

III.  Legal Standard.............................................................................................. 8

IV.   Argument and Authorities ............................................................................ 8

    A.    Intervenor Plaintiffs lack standing and therefore cannot show a likelihood of success on the merits (or actual success). ............................... 9

    B.    Intervenor Plaintiffs cannot obtain injunctive relief on unpled matters. ................................................................................................... 10

    C.    Given the ongoing legal proceedings in the District of Columbia, this Court should refrain from entering injunctive relief at this time. ............... 12

V.    Conclusion................................................................................................. 15

**Table of Authorities**

Cases

*Allen v. Wright*,
      468 U.S. 737 (1984) ................................................................................. 10

*Amoco Prod. Co. v. Village of Gambell*,
      480 U.S. 531 (1987) ................................................................................... 8

*Canal Auth. v. Callaway*,
      489 F.2d 567 (5th Cir. 1974) ...................................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
      528 U.S. 167 (2000) ................................................................................. 10

*Inclusive Cmtys. Proj., Inc. v. Dep't of Treasury*,
      946 F.3d 649 (5th Cir. 2019) .................................................................... 10

*Livas v. Myers*,
      455 F. Supp. 3d 272 (W.D. La. 2020) ...................................................... 11

*Louisiana v. U.S. Dep't of Educ.*,
      737 F. Supp. 3d 377 (W.D. La. 2024) ........................................................ 9

*Louisiana v. Dep't of Homeland Sec.*,
      726 F. Supp. 3d 653 (E.D. La. 2024) ....................................................... 12

*Marable v. Dep't of Commerce*,
      No. 3:18-cv-3291-N-BN, 2019 WL 7049993 (N.D. Tex. Nov. 19, 2019) ............ 11

*Pluet v. Frasier*,
      355 F.3d 381 (5th Cir. 2004) ...................................................................... 9

*Reno v. Catholic Social Servs., Inc.*,
      509 U.S. 43 (1993) ................................................................................... 12

*Texas v. Yellen*,
      105 F.4th 755 (5th Cir. 2024) ..................................................................... 9

Other Authorities

Exec. Order No. 14168, Defending Women from Gender Ideology Extremism and
      Restoring Biological Truth to the Federal Government,
      90 Fed. Reg. 8615 (Jan. 20, 2025) ............................................................. 2

## I.    Introduction

At issue in this case is the practice of housing male inmates at Federal Medical Center, Carswell ("FMC Carswell") in Fort Worth, Texas.  FMC Carswell is a facility operated by the Federal Bureau of Prisons ("BOP") for female inmates, but since approximately 2013, it has also housed certain male inmates[1] due to their claimed gender identity or other factors.[2]  This response relates to the motion for preliminary and permanent injunctive relief filed on March 30, 2026 by five female inmates at FMC Carswell (Elizabeth Ann Hardin, Brenda Leigh Kirk, Jasmie Meabon, Jessica Clemencio Morais, and Keisha Williams (collectively, "Intervenor Plaintiffs")).  (*See* Doc. 152.)

Defendants previously moved to dismiss Intervenor Plaintiffs' first amended complaint in intervention for lack of standing, primarily due to the fact that it is a series of injunctions entered by other courts (in the District of Columbia) that have caused and continue to cause the housing of male inmates at BOP facilities (including FMC Carswell) at all times relevant to Intervenor Plaintiffs' claims, and therefore Intervenor Plaintiffs cannot show traceability and redressability as necessary to establish standing. (*See* Doc. 147 (motion to dismiss).)  As explained herein, the BOP continues to be subject to such injunctions requiring the housing of male inmates at FMC Carswell, but only two of the five Intervenor Plaintiffs are currently housed on a "mixed" unit (where

---

[1] Consistent with the language used by the Court during these proceedings, "male inmate" as used herein "means a person who is biologically male, regardless of gender identity."  (Doc. 83 at 1.)

[2] *See* Declaration of Jody R. Upton ¶ 48, *Fleming v. United States*, No. 7:17-CV-9-O (N.D. Tex. Aug. 10, 2017) ("Beginning in December 2013, male- to-female transgender inmates have been designated to FMC Carswell . . . .") (Doc. 100 in No. 7:17-CV-9-O, at page App. 199).

**Defendants' Response to Intervenor Plaintiffs' Motion for Injunctive Relief – Page 1**

there is one male inmate (App.[3] 165–66)), and a very recent ruling from the D.C. Circuit

may also soon result in some changes to that status quo, but in a manner that is yet to be

completely determined.  For these and other reasons as discussed below, Intervenor

Plaintiffs fail to show any entitlement to the injunctive relief they seek, and therefore

their motion should be denied.

## II.    Background

**A.    Beginning in early 2025, various courts in other districts enjoin the BOP from implementing the President's Executive Order that calls for housing male inmates separately from female inmates.**

As noted above, male inmates have been housed at FMC Carswell since

approximately 2013.  On January 20, 2025, however, the President issued an Executive

Order confirming that it is the "policy of the United Staes to recognize two sexes, male

and female," and directing the Attorney General to "ensure that males are not detained in

women's prisons or housed in women's detention centers."[4]  "Consistent with the

executive order, BOP informed male trans-identifying inmates who were housed in

women's facilities before January 20 that they would be transferred to men's prisons, and

BOP began to transfer inmates accordingly."  (App. 037.)

That was not the end of the matter, though.  Twenty male inmates housed in

women's prisons, including some at FMC Carswell, filed lawsuits (across several

separate civil actions) to challenge the Executive order and to bar their transfers and any

---

[3] "App. __" citations refer to the materials in the accompanying appendix.

[4] *See* Exec. Order No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615, 8515, 8616 (Jan. 20, 2025).

cessation of their treatment for gender dysphoria. (App. 037.) By February 4, 2025, a district court in the District of Columbia "held a hearing and issued a nationwide TRO barring BOP from transferring any inmates pursuant to" the President's Executive Order. (App. 051.) Numerous similar orders and preliminary injunctions followed, with the effect that the BOP has been precluded from implementing the Executive Order's mandate to cease the housing of male inmates with female inmates. (App. 051–57.) The preliminary injunction entered in the *Doe v. Bondi* (now *Doe v. Blanche*) litigation is emblematic of the type of court order that, through this day, dictates the housing of male inmates in female prisons, by providing that "the defendants shall maintain and continue plaintiffs Jane Doe, Mary Doe, Sara Doe, Emily Doe, Zoe Doe, Oliva Doe, Susan Doe, Lois Doe, Sally Doe, Wendy Doe, Rachel Doe, and Ellen Doe's housing status in women's facilities and shall continue to provide their gender dysphoria treatment as it existed immediately prior to January 20, 2025." (App. 110.) The government appealed the *Doe* injunction and the other similar orders, in a consolidated appeal pending in the U.S. Court of Appeals for the District of Columbia Circuit, now captioned *Doe v. Blanche*, No. 25-5099. (App. 001–23.) Just last Friday, April 17, 2026, the D.C. Circuit issued a decision in that appeal to vacate the relevant preliminary injunctions (as discussed in more detail below), but the mandate has not yet issued. (App. 112, 164.) Thus, as of now, the injunctions remain in effect.

**B.    Intervenor Plaintiffs file their complaint in January 2026 seeking to require the BOP to house male inmates in a segregated unit at FMC Carswell.**

This case was originally filed (in separate actions) by Plaintiffs Rhonda Fleming

and Crystal Herrera to challenge the housing of male inmates at FMC Carswell.  On December 19, 2025, Intervenor Plaintiffs Elizabeth Ann Hardin and Brenda Leigh Kirk filed a complaint in intervention raising similar claims.  (Doc. 112.)  And on January 8, 2026, three additional Intervenor Plaintiffs, Jamine Meabon, Jessica Clemencio Morias, and Keisha Williams, joined the case via the filing of a first amended complaint in intervention (to which the original Intervenor Plaintiffs, Elizabeth Ann Hardin and Brenda Leigh Kirk, are also parties).  (Doc. 125.)  That complaint is thus the live pleading for all Intervenor Plaintiffs.

In their complaint, Intervenor Plaintiffs challenge the housing of male inmates at FMC Carswell under causes of action based on (1) a violation of bodily integrity, (2) cruel and unusual punishment, (3) the Administrative Procedure Act, and (4) *ultra vires* action.  (Doc. 125 at ¶¶ 144–65.)  The operative relief that Intervenor Plaintiffs seek in the first amended complaint is injunctive relief that would bar Defendants from "housing any male inmate (meaning any person who is biologically male, regardless of gender identity) within the general population of any housing unit where biological females are present or will be confined" and "permitting any male inmate to enter or remain in any female-only privacy area (including showers, restrooms, changing areas, or dormitory spaces) to which either Intervenor-Plaintiff has access, so that Intervenor-Plaintiffs are not exposed to male inmates while showering, toileting, dressing, or sleeping."  (Doc. 125 at 40–41 (Relief Requested section).)

Critically, Intervenor Plaintiffs specify that as part of this requested relief they seek a court order that "to comply with the relief provided . . . , Defendants house male

inmates in a secure, segregated area at FMC Carswell (including the Hospital Unit or an equivalent setting) that preserves access to programming and services while preventing access to female-only privacy areas." (Doc. 125 at 41.)  This is different than the relief that was requested by original Plaintiffs Rhonda Fleming and Miriam Herrera, which gave Defendants the option of *either* housing male inmates in a secure, segregated unit *or* simply reassigning male inmates away from Plaintiffs' housing and privacy areas (but still housing them within the general-population female units of FMC Carswell).  (Doc. 61 at 40.)  The government understands the injunctions that have been the subject of the consolidated *Doe v. Blanche* proceeding in the D.C. Circuit to bar them from providing the former category of relief, *i.e.*, moving the male inmates to segregated housing.  In contrast, the government has not been precluded from offering the second category of relief—reassigning male inmates from one general-population housing unit at FMC Carswell to another such unit away from Plaintiffs (*i.e.*, but not to a segregated male-only unit).  For this reason, Defendants were agreeable to the entry of a permanent injunction in favor of Plaintiffs Fleming and Herrera to provide relief with this option for compliance.  (*See* Doc. 137.)

Intervenor Plaintiffs, in contrast, have pointedly not included within their request for relief the second compliance option of reassigning male inmates to different female units at FMC Carswell.  (*See* Doc. 125 at 40–41.)  The *only* option for compliance under Intervenor Plaintiffs' claims, as set forth in their first amended complaint, is to move male inmates to a segregated unit at FMC Carswell.  (Doc. 125 at 41.)  And the government understands that this sort of action would violate the injunctions entered by

courts elsewhere that, for example, require the government to "maintain and continue [the male inmates'] housing status in women's facilities."  (App. 110.)  That "housing status" is housing in a female general-population unit, not a segregated male unit.  Thus, as much as the government would like to move all the male inmates out of FMC Carswell entirely and back to male prisons (which are themselves, of course, a form of segregated housing), it does not believe it has the power to do so at this time, and it has moved to dismiss Intervenor Plaintiffs' first amended complaint for lack of standing because the traceability and redressability elements of standing are not present for Intervenor Plaintiffs.  (*See* Doc. 147 (motion to dismiss).)

**C.      Intervenor Plaintiffs file a motion for injunctive relief.**

After filing the first amended complaint, Intervenor Plaintiffs also filed a motion for preliminary and permanent injunctive relief.  (Doc. 152.)  Through this motion, Intervenor Plaintiffs seek injunctive relief to (1) enjoin Defendants from housing any male inmates within the general population of any housing unit at FMC Carswell where *any* females—not just Intervenor Plaintiffs—are present; (2) enjoin Defendants from allowing any male inmate to enter or remain in *any* space where females are present, including common areas like dining areas, recreation areas, or the mail room; (3) order Defendants to house male inmates in a "secure, segregated area at FMC Carswell" and to "use such separate movement, routing, scheduling, or other measures as necessary to prevent overlap between male inmates and female inmates in housing and shared spaces"; (4) order that Defendants not transfer, isolate, or otherwise burden Intervenor Plaintiffs or other female inmates to comply with the requested relief; and (5) order Defendants not to

retaliate against Intervenor Plaintiffs and to provide 72 hours' written notice to the Court

before any "transfer or materially adverse change" in their conditions of confinement.

(*See* Doc. 152-1.)

**D.      The D.C. Circuit vacates the preliminary injunctions requiring certain male inmates to be housed in female facilities but remands for further proceedings.**

As the parties have previously discussed, there is ongoing litigation in the District

of Columbia (and in the D.C. Circuit) relating to the issue of whether the BOP may

transfer certain male inmates currently housed in female BOP facilities, including FMC

Carswell, to male facilities.  Most recently, on Friday, April 17, 2026, the D.C. Circuit

issued an opinion in *Doe v. Blanche* to vacate the relevant injunctions and remand for

additional proceedings.  (App. 112–42.)  The court of appeals explained that the

preliminary injunctions could not be upheld under a theory that the Eighth Amendment

requires "*every* transgender woman to be housed in a women's prison" (App. 136

(emphasis added)), but directed a "remand to allow the district court to exercise its

judgment whether to make the factual determinations needed to hold, as plaintiffs urge,

that the distinctive characteristics of these individuals in particular render their transfer to

men's facilities unconstitutional under the Eighth Amendment" (App. 138).  The end

result was that the preliminary injunctions currently in effect were ordered vacated, but

with a remand for further proceedings.  (*See* App. 142.)  The D.C. Circuit also

specifically ordered "on the court's own motion," that the mandate be withheld "until

seven days after disposition of any timely petition for rehearing or petition for rehearing

en banc."  (App. 164.)  Thus, although the D.C. Circuit has issued its opinion directing a

**Defendants' Response to Intervenor Plaintiffs' Motion for Injunctive Relief – Page 7**

vacatur of the injunctions and a remand for further proceedings, that result has not yet taken full legal effect in district court because the mandate has not yet issued.

### III.      Legal Standard

The requirements for obtaining preliminary relief are well known to the Court and require showing (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). To obtain a permanent injunction, the requirements are essentially the same except that the plaintiff must show actual success on the merits. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

### IV.      Argument and Authorities

Intervenor Plaintiffs' motion for injunctive relief should be denied.  As an initial matter, Intervenor Plaintiffs cannot show any likelihood of success on the merits (or actual success) because they lack standing for their claims.  Their motion also improperly seeks relief beyond what Intervenor Plaintiffs have sought in their operative pleadings. And finally, given that proceedings remain ongoing in the litigation filed by male inmates in the District of Columbia, this Court should refrain from granting injunctive relief at this time due to the potential conflict with the injunctions that are currently in place in D.C., as well as the uncertainty about what might occur in the further proceedings that are slated to occur there upon remand from the D.C. Circuit.

**Defendants' Response to Intervenor Plaintiffs' Motion for Injunctive Relief – Page 8**

**A.**    **Intervenor Plaintiffs lack standing and therefore cannot show a likelihood of success on the merits (or actual success).**

Defendants previously filed a motion to dismiss which asserts that Intervenor Plaintiffs' first amended complaint in intervention should be dismissed for lack of standing.  (*See* Doc. 147.)  That motion has now been fully briefed, and Defendants refer to and incorporate that full briefing here for a more complete explanation of why Intervenor Plaintiffs lack standing.  (*See* Doc. 147 (motion to dismiss); Doc. 155 (response); Doc. 165 (reply).)  To recap, though, Intervenor Plaintiffs cannot establish essential elements of standing because it is the actions of third parties not before this Court—specifically, courts elsewhere that have entered injunctions prohibiting the BOP from transferring male inmates out of female prisons—that have caused the Intervenor Plaintiffs' claimed injuries as of the relevant time their initial complaints were filed.  And also, because of the existence of these other court orders, Intervenor Plaintiffs likewise cannot show that their alleged injuries can be redressed here.

"To establish Article III standing, an injury must be [1] 'concrete, particularized, and actual or imminent; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling.'"  *Texas v. Yellen*, 105 F.4th 755, 763 (5th Cir. 2024) (brackets added; citation omitted).  A "plaintiff's standing is evaluated at the time of filing of the initial complaint in which they joined."  *Louisiana v. U.S. Dep't of Educ.*, 737 F. Supp. 3d 377, 392 (W.D. La. 2024); *see also Pluet v. Frasier*, 355 F.3d 381, 386 n.3 (5th Cir. 2004) ("A party must have standing at the time the complaint is filed.").

The second prong of standing, traceability, requires Intervenor Plaintiffs to show

that the challenge government action caused their claimed injury. *See Allen v. Wright*, 468 U.S. 737, 757 (1984). But an injury is not fairly traceable if it is "the result of the independent action of some third party not before the court." *Inclusive Cmtys. Proj., Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (internal quotation marks and citation omitted). And that is the situation here, because as of the time Intervenor Plaintiffs filed suit herein, it was the court orders from D.C. that were requiring male inmates to be housed at FMC Carswell.

The third prong to demonstrate standing, redressability, is also absent. Redressability requires a plaintiff to show that that a favorable decision "is *likely*, as opposed to merely *speculative*," to redress its injury. *Inclusive Cmtys. Proj.*, 946 F.3d at 655 (emphasis in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). Because injunctions from the litigation in D.C. are the reason that male inmates are being housed at FMC Carswell, it will be the lifting of those injunctions that will provide redress to Intervenor Plaintiffs, and not anything that might occur in connection with Intervenor Plaintiffs' claims here.[5] And because Intervenor Plaintiffs cannot show standing, they cannot show a likelihood of success (or actual success) on their claims in this action.

**B.    Intervenor Plaintiffs cannot obtain injunctive relief on unpled matters.**

An additional reason that the Court should refrain from granting the injunctive

---

[5] In this regard, Defendants note that Intervenor Plaintiffs have intentionally refrained from pleading for the same type of relief that the government was able to provide to the original Plaintiffs, to simply house them in units at FMC Carswell where there are no male inmates and to otherwise take steps to prevent male inmates from accessing female-only privacy areas elsewhere within common areas.

relief requested by Intervenor Plaintiffs is that the injunction Intervenor Plaintiffs seek goes beyond the claims actually pleaded in their complaint.  *See Marable v. Dep't of Commerce*, No. 3:18-cv-3291-N-BN, 2019 WL 7049993, at *2 (N.D. Tex. Nov. 19, 2019) (explaining that "there can be no substantial likelihood that a plaintiff will prevail on the merits of assertions he has not pled").

Through their motion, Intervenor Plaintiffs seek to enjoin Defendants from retaliating against Intervenor Plaintiffs and they also seek to impose a requirement that Defendants provide 72 hours' written notice to the Court before any "transfer or materially adverse change" in Intervenor Plaintiffs' conditions of confinement.  (Doc. 152-1 at 3.)  But Intervenor Plaintiffs have not pleaded any claim for retaliation.  (*See* Doc. 125, ¶¶ 144–65.)  Nor do they provide any legal support for this request.  (*See* Doc. 152.)  It also appears that by the 72-hour notice proviso, Intervenor Plaintiffs are contemplating that this Court would assume some function as a kind of "de facto 'super' warden" of FMC Carswell by weighing in on any change to Intervenor Plaintiffs' living conditions on a permanent, going-forward basis, which is not the appropriate role of a federal court.  *See Livas v. Myers*, 455 F. Supp. 3d 272, 283 (W.D. La. 2020).

Defendants also note that the proposed injunctive relief sought by Intervenor Plaintiffs' motion differs from the relief requested in the first amended complaint in other material ways.  In that complaint, Intervenor Plaintiffs pleaded for relief that would bar male inmates from female-only privacy areas "so that Intervenor-Plaintiffs are not exposed to male inmates while showering, toileting, dressing, or sleeping."  (Doc. 125 at 41.)  With their motion, though, Intervenor-Plaintiffs have expanded their claim such that

they now seek an order that would bar Defendants from "permitting any male inmate to enter or remain in any space where biological female inmates are present, including but not limited to showers, restrooms, changing areas, *dormitory spaces, elevators, dining areas, recreation areas, medical or hospital areas, the mailroom, and other shared prison spaces*, so that Intervenor-Plaintiffs and other female inmates are not forced to encounter male inmates while showering, toileting, dressing, sleeping, *eating, seeking medical care, recreating, receiving mail, or otherwise navigating daily prison life*." (Doc. 152-1 at 2 (emphasis added).)  This broader relief was not pleaded in the complaint, and it therefore is not the proper subject of injunctive relief.  But it also serves to emphasize that what Intervenor Plaintiffs are truly asking for is the creation of a new "prison within a prison" at FMC Carswell that would be a segregated, male-only facility. And Defendants have previously explained why they do not believe the injunctions issued in D.C. permit them to take such action.

**C.     Given the ongoing legal proceedings in the District of Columbia, this Court should refrain from entering injunctive relief at this time.**

Injunctive remedies are discretionary in nature and are never awarded simply as a matter of right.  *See Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 58 (1993); *Louisiana v. Dep't of Homeland Sec.*, 726 F. Supp. 3d 653, 693 (E.D. La. 2024).  Here, even if the other barriers to relief as discussed above were not present, it is respectfully submitted that it would still be advisable for this Court to stay its hand and decline to issue the relief requested by Intervenor Plaintiffs at this time, given that the issue of whether male inmates must be housed at FMC Carswell and other female prisons

operated by the BOP continues to be the subject of extensive litigation in the District of Columbia.  As discussed above, that litigation remains pending, with the most recent development being the D.C. Circuit's decision to vacate the injunctions currently in effect and remand for further proceedings in district court.  (App. 142.)  Although the D.C. Circuit did order a vacatur of the existing injunctions, it also specified that upon remand that district court may "exercise its judgment whether to make the factual determinations needed to hold, as plaintiffs urge, that the distinctive characteristics of these individuals in particular render their transfer to men's facilities unconstitutional under the Eighth Amendment."  (App. 138.)  It thus remains to be seen whether the district court in D.C. will re-issue any injunctive relief that would require the BOP to continue housing male inmates at FMC Carswell, and if so under exactly what circumstances.  (*See* App. 142.) In addition, the D.C. Circuit withheld issuance of its mandate pending any rehearing petition, so the current situation is that the D.C. injunctions remain in place because the D.C. Circuit's decision has not yet formally taken effect in the district court.  (App. 164.)

As previously discussed in connection with the pending motion to dismiss, the government understands the injunctive relief ordered in D.C. to prohibit it from implementing Intervenor Plaintiffs' proposal to essentially move all male inmates at FMC Carswell to a segregated, male-only "prison within a prison" on the grounds of that institution.  (*See* Doc. 165 at 2–5.)  Under these circumstances, Intervenor Plaintiffs are requesting what would essentially be a competing, contrary injunction as compared to the relief ordered in D.C., and which would place the government in an uncertain and contradictory position in terms of compliance.

**Defendants' Response to Intervenor Plaintiffs' Motion for Injunctive Relief – Page 13**

The government shares the same desire of Intervenor Plaintiffs to have male inmates removed from FMC Carswell, and in fact has facilitated the entry of relief in this action to separate female inmates from male inmates at FMC Carswell to the extent it is within the government's power to do so.  Specifically, in connection with the original Plaintiffs' claims, the government agreed to the entry of a permanent injunction to keep male inmates away from sensitive areas accessed by those Plaintiffs.  (Doc. 137.)  But Intervenor Plaintiffs are seeking a much broader and more categorical form of relief than the original Plaintiffs.  Among other things, Intervenor Plaintiffs seek an injunction barring contact between male inmates and *any* female inmates at FMC Carswell, such that simply moving the two Intervenor Plaintiffs who are currently housed with a male inmate to other housing units (or vice versa) would not, in Intervenor Plaintiffs' view, suffice.  (*See* Doc. 125 at 41.)  Intervenor Plaintiffs' requested relief would instead effectively require the creation of a new, all-male facility within FMC Carswell, and the government does not believe that the D.C. injunctions allow that result.  That may change upon remand from the D.C. Circuit and/or when the vacatur of the current injunctions becomes effective, but in the meantime it is respectfully submitted that entry of the type of relief sought by Intervenor Plaintiffs would create an irreconcilable conflict with the relief ordered in the District of Columbia.

It also bears mentioning that Intervenor Plaintiffs do benefit from at least some protections against male inmates arising from the permanent injunction entered in favor of the original Plaintiffs (Fleming and Herrera).  (Doc. 137.)  Among other things, that injunction provides that male inmates are to be kept out of female-only privacy areas to

**Defendants' Response to Intervenor Plaintiffs' Motion for Injunctive Relief – Page 14**

which the original Plaintiffs have access.  (Doc. 137.)  As part of their implementation of this relief, Defendants have segregated the common-area restroom facilities at FMC Carswell such that the restrooms are now all either single-occupant-only or are restricted to a single sex, in such manner that *all* female inmates—not just the original Plaintiffs— are enjoying the benefit of this relief.  (App. 165.)  (Put another way, Defendants are not permitting male inmates to use common-area female restrooms so long as neither Fleming nor Herrera is in the restroom at that time—instead, the restrooms are permanently sex-segregated regardless of where Fleming or Herrera might be at any given moment.  (*See* App. 165).)  Thus, as a practical matter, Intervenor Plaintiffs are currently being protected from possible contact with male inmates in female-only privacy areas in common areas outside the housing units.  And only two Intervenor Plaintiffs share a housing unit with a single male inmate at this time (*see* App. 165–66 (these Intervenor Plaintiffs are on the same unit but not in the same cell with the male inmate), but Intervenor Plaintiffs have pointedly refrained from requesting the same "lesser" form of relief that original Plaintiffs Fleming and Herrera sought to simply house them (but not every other female inmate at FMC Carswell) on a unit without male inmates.

## V.    Conclusion

For all these reasons, Intervenor Plaintiffs' motion for injunctive relief should be denied.

**Defendants' Response to Intervenor Plaintiffs' Motion for Injunctive Relief – Page 15**

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants United States
and the Attorney General, Director of the
Federal Bureau of Prisons, and Warden
of FMC Carswell (in their official
capacities)

<u>Certificate of Service</u>

On April 20, 2026, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney