N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING and<br>MIRIAM CRYSTAL HERRERA,<br><br>       Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, et al.,<br><br>       Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| ELIZABETH ANN HARDIN,<br>BRENDA LEIGH KIRK, JASMINE<br>MEABON, JESSICA CLEMENCIO<br>MORAIS, and KEISHA WILLIAMS<br><br>       Intervenor-Plaintiffs,<br><br>v.<br><br>WARDEN T. RULE, et al.,<br><br>       Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:25-CV-0157-D<br>(Consolidated with<br>Civil Action No. 4:25-CV-0438-D) |

**INTERVENOR-PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

SCHAERR | JAFFE LLP

John Greil
  Texas Bar No. 24110856
  jgreil@schaerr-jaffe.com
Brian J. Field (*pro hac vice*)
  bfield@schaerr-jaffe.com
Justin A. Miller
  Texas Bar No. 24116768
  jmiller@schaerr-jaffe.com
1717 K Street NW, Suite 900
Washington, DC 20006

*Attorneys for Intervenor-Plaintiffs
Elizabeth Ann Hardin, Brenda Leigh Kirk,
Jasmine Meabon, Jessica Clemencio
Morais, and Keisha Williams*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

ARGUMENT ...................................................................................................................... 1

    I.    Protecting Women's Restrooms Does Not Fully Protect Women from Male Inmates ................................................................................................................ 2

    II.    Intervenors Have Standing Because Defendants' Own Choices Inside FMC Carswell Cause Their Injuries and This Court Can Redress Those Injuries ................. 3

    III.    The D.C. Litigation Does Not Bind Intervenors or Require This Court to Stand Down .......................................................................................................... 4

    IV.    The Requested Relief Is Within the Pleadings and the Record. .................................. 6

    V.    Plaintiff-Specific Shuffling Is Inadequate Relief. ..................................................... 8

    VI.    The Remaining Injunction Factors Continue to Favor Relief. ..................................... 8

    VII.    No Evidentiary Hearing Is Needed; Intervenors Request a Prompt Ruling. ................ 9

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)......................................................................................................... 1

*Doe v. Blanche,*
    -- F.4th --, 2026 WL 1042002 (D.C. Cir. Apr. 17, 2026) ........................................ 6, 9

*Kaepa, Inc. v. Achilles Corp.,*
    76 F.3d 624 (5th Cir. 1996) ..................................................................................... 9

*Martin v. Wilks,*
    490 U.S. 755 (1989)................................................................................................. 5

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ................................................................................... 9

*Taylor v. Sturgell,*
    553 U.S. 880 (2008)................................................................................................. 5

**Rules**

Fed. R. App. P. 40........................................................................................................... 9

Fed. R. App. P. 41........................................................................................................... 10

Fed. R. Civ. P. 65............................................................................................................ 8

D.C. Cir. R. 40 ................................................................................................................ 9

D.C. Cir. R. 41 ................................................................................................................ 10

N.D. Tex. L.R. 7.2 ........................................................................................................... 1

## ARGUMENT

Defendants do not defend the legality of housing biological males in a women's prison. They admit that biological males continue to live in two of the three housing units at FMC Carswell (including a unit where multiple Intervenor-Plaintiffs live).[1]

Instead, Defendants ask this Court to deny relief for three procedural reasons: standing, supposed mismatch between the motion and the pleadings, and deference to related litigation in the District of Columbia. None withstands scrutiny.

As to standing, Defendants say Intervenors' injuries are caused by D.C. court injunctions, not by Defendants. But nothing in the D.C. injunctions stops Defendants from placing male inmates into segregated housing. Defendants' present discretionary choices inside FMC Carswell are harming Intervenors, and this Court can order Defendants to stop implementing those choices.

For the "mismatch," Defendants think anti-retaliation relief and restrictions covering shared spaces are outside Intervenors' operative complaint. But the amended complaint repeatedly alleges injuries in shared spaces and retaliation connected to complaints about male inmates, those allegations are supported by specific facts described in Intervenors' declarations, and the requested injunction is relief necessary to remedy and prevent those pleaded injuries.

Finally, Defendants suggest the D.C. litigation ought to take precedence over this case. No. Intervenors are individuals with constitutional rights, and they have come to this Court to vindicate those rights. This Court has a "virtually unflagging obligation … to exercise the jurisdiction given" it, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (collecting cases), and it can provide meaningful relief today that would not conflict with the D.C. injunctions.

---

[1] **Use of Generative Artificial Intelligence.** This brief was prepared using generative artificial intelligence; all language has been checked for accuracy, using traditional legal databases, by a human being. *See* L.R. 7.2(f).

Intervenors have waited long enough. They respectfully request that the Court grant preliminary relief now. But if the Court concludes that its hands are tied by the D.C. litigation, Intervenors respectfully ask the Court to say so promptly and enter an order denying preliminary relief. Intervenors do not request an evidentiary hearing, and Defendants have not suggested that one is necessary. The issues are fully briefed; the material facts are established by declarations and Defendants' response; and further delay will prolong the Intervenors' injuries.

Intervenors recognize that the procedural posture of this litigation is unusual and challenging. They request a ruling—either an injunction protecting them at FMC Carswell, or a prompt order permitting them to seek appellate review, so they can be protected from the harms they are currently suffering.

## I.      Protecting Women's Restrooms Does Not Fully Protect Women from Male Inmates

Defendants do not meaningfully dispute the sworn facts showing that Intervenors continue to suffer privacy, safety, and retaliation injuries at FMC Carswell. Although Defendants now say male inmates are barred from women's common-area group restrooms, Decl. of Malissa Mark ¶ 3 (ECF 167, App.165), that does not solve the problem because Intervenors' injuries are not limited to showers or restrooms.

Ms. Hardin explained that "[t]he problem at Carswell was not limited to where inmates slept" because women and male inmates still used shared spaces, including elevators, and that Peter Langan's conduct in the shared elevator made her "feel unsafe and uncomfortable." Hardin Decl. ¶¶ 5–6 (ECF 153, App.2). Ms. Kirk likewise declared that she sees male inmates "in the elevator and in food service every day, often several times a day," and that Zack Lawrence's hostile conduct makes her fear "he might snap and hurt someone." Kirk Decl. ¶¶ 3–4 (ECF 153, App.4). Ms. Meabon declared that Defendants still house a male inmate in Two South, that she has seen him use the female restroom, and that after she and Morais were taken to the SHU while other

inmates were not (in retaliation for participating in this lawsuit), Warden Rule threatened to ship her out. Meabon Decl. ¶¶ 2, 12 (ECF 153, App.7–9). Ms. Morais declared that even after being moved to Two South, Gary Boone sought her out, stood directly behind her in recreation, stared at her, and listened to her conversation, making her "scared and very uncomfortable." Morais Decl. ¶ 9 (ECF 153, App.11). And Ms. Williams declared that moving her to the camp did not solve the problem because "male inmates are still present in common areas, including the mail room," where she encounters them. Williams Decl. ¶ 6 (ECF 153, App.14). These unrebutted facts show that Intervenors' injuries are ongoing, concrete, and redressable: the problem will not be solved so long as Defendants keep male inmates intermingled with women throughout the ordinary spaces of prison life.

## II.    Intervenors Have Standing Because Defendants' Own Choices Inside FMC Carswell Cause Their Injuries and This Court Can Redress Those Injuries.

Defendants' standing argument depends on a false premise: that the D.C. injunctions require Defendants to preserve exact conditions inside FMC Carswell. They do not.

Intervenors' injuries are traceable to Defendants' choices. Defendants control internal housing assignments, movement, scheduling, access to shared spaces, staff response to complaints, discipline, SHU placement, medical access, and transfers. Intervenors' Am. Compl. ¶¶ 21, 94, 103–104 (ECF 125). Intervenors specifically allege that FMC Carswell has a Hospital Unit that is "a secure medical area distinct from the SHU," with its own TV, recreation area, commissary access, laundry, and ability to hold inmates long-term. *Id.* ¶ 103. They further allege that male inmates "could be safely and humanely housed" in that unit or an equivalent segregated setting without access to female housing units and privacy spaces. *Id.* ¶ 104. Defendants do not argue that those allegations are *factually* incorrect; they merely argue that they are legally prevented from taking such steps. *See* Resp. 5 (ECF 166) ("The government understands the injunctions that have

3

been the subject of the consolidated *Doe v. Blanche* proceeding in the D.C. Circuit to bar them from providing the former category of relief, *i.e.*, moving the male inmates to segregated housing.").

Defendants say D.C. injunctions—not Defendants—cause Intervenors' injuries. But Defendants quote those injunctions as requiring only that certain inmates' "housing status in women's facilities" be maintained. Resp. 3. As explained in detail in Intervenors' motion, that language does not require Defendants to house male inmates in women's general-population units.

Redressability is equally clear. An order requiring Defendants to house male inmates in a secure, segregated area within FMC Carswell—and to use separate routing, scheduling, and movement protocols—would directly redress some of Intervenors' injuries. It would end the exposure, intimidation, and forced overlap Intervenors describe. It would also stop Defendants from evading relief by moving the burden from one female inmate to another.

The male plaintiffs in the D.C. litigation sued to avoid transfer to men's prisons. The female Intervenors here sue because they are women in a federal women's prison being forced to live, eat, recreate, seek medical care, and receive mail in a system that permits continuing exposure to male inmates. Those are different plaintiffs, different injuries, and different requested relief. Intervenors continue to have standing because this Court continues to have the power to remedy Intervenors' injuries, which are being caused by Defendants.

**III.    The D.C. Litigation Does Not Bind Intervenors or Require This Court to Stand Down.**

Defendants' request that this Court "refrain" from granting relief is abstention by another name. Resp. 8 (this Court should "refrain from granting injunctive relief at this time due to the potential conflict with the injunctions that are currently in place in D.C., as well as the uncertainty about what might occur in the further proceedings that are slated to occur there upon remand from the D.C. Circuit"). That request is ungrounded in prudence or precedent and should be rejected.

4

There is no reason to give preferential treatment to male inmates, located in a women's prison in Texas, who chose to sue 1,000 miles away from their place of confinement, over female inmates, suffering in a women's prison in Texas, who brought their case in Texas.

Intervenors were not parties to the D.C. litigation. Their constitutional rights were not adjudicated there. And the D.C. court did not purport to decide whether women at FMC Carswell may be forced to share intimate and common spaces with male inmates. The Supreme Court has long rejected the notion that nonparties can be made to bear the consequences of litigation in which their interests were not represented. "A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 755, 762 (1989). Likewise, "everyone should have his own day in court," and nonparty preclusion runs against that "deep-rooted historic tradition." *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) (cleaned up).

That principle has special force here. Intervenors are not asking this Court to overrule the D.C. court. They are asking this Court to protect their own rights in a facility within this Court's jurisdiction. They seek relief that can coexist with the D.C. orders: housing male inmates in a secure, segregated area within FMC Carswell, preserving programming and services, and preventing overlap with women in intimate and shared spaces. That relief does not require transfer of the male prisoners to a men's prison.

And nothing in the D.C. Circuit's opinion suggests that relief here would conflict with the D.C. Orders. As Intervenors explained in their PI motion (ECF 152 at 7–8 & n.6, 9–10), the D.C. injunction is about *stopping the Government from moving the D.C. male plaintiffs into men's prisons*. The injunctions are *not* about removing them from women's prisons.

The D.C. Circuit described the injunction theory as based in the male plaintiffs'

5

"characteristics that make them particularly vulnerable to violence, abuse, and psychiatric harm *in men's prisons*." *Doe v. Blanche*, -- F.4th --, 2026 WL 1042002, at \*1 (D.C. Cir. Apr. 17, 2026) (emphasis added). The panel described the cases as "three separate actions challenging their transfers (or impending transfers) *from women's to men's facilities*." *Id.* at \*4 (emphasis added). And the panel described the district court injunction (which will be in effect until the circuit mandate issues) as challenging "defendants' decision to transfer them to men's facilities." *Id.*

The D.C. litigation is a challenge to transferring the male inmates *back to men's prisons*. It's not about where, within women's prisons, the men are housed. And it's not even about whether there could be a "male-only" prison for prisoners who identify as transgender. It's just about whether the male inmates can prevent their transfers back to the currently existing men's prisons.

Nor does the D.C. Circuit's recent decision counsel delay here. Defendants themselves explain that the D.C. Circuit vacated the relevant preliminary injunctions and remanded, while withholding its mandate pending rehearing procedures. Resp. 7–8. If anything, that posture confirms that the D.C. litigation is unsettled. It does not justify leaving Intervenors exposed to ongoing injury while other parties litigate other rights in another court.

Defendants' approach would flip the structure of constitutional adjudication on its head. A preliminary injunction entered in a case in Washington, D.C., brought by male inmates in a women's prison in Fort Worth, Texas, would function as a practical bar to women in that women's prison asserting their own constitutional rights. That result makes no sense, and is not required by any statute or precedent.

## IV.     The Requested Relief Is Within the Pleadings and the Record.

Defendants next argue that Intervenors seek relief beyond their complaint. Resp. 10–12. But Intervenors' Amended Complaint pleads both the shared-space injuries and the retaliation injuries that support the proposed injunction.

The amended complaint does not describe a narrow bunk-assignment problem. It alleges that bathrooms lack locks, guard presence, or basic security. Intervenors' Am. Compl. ¶ 63. It alleges that Boone entered a common area restroom while Meabon was in a stall, looked in, and made a sexually explicit comment. *Id.* ¶ 91. It alleges that Boone peeped at and behaved aggressively toward Williams in common areas. *Id.* ¶ 92. It alleges that moving a male inmate from Two North to One North after this Court's earlier TRO "injure[d] different women." *Id.* ¶¶ 71, 118.

The amended complaint also pleads retaliation and fear of retaliation in detail, and as to each Intervenor. It alleges that female inmates who object have been targeted with intimidation, unwanted contact, false accusations, threats, and warnings that reporting would "make things worse." *Id.* ¶ 85. It alleges that Morais fears retaliation because staff previously retaliated against her for refusing sexual favors. *Id.* ¶¶ 86–87. It alleges that Meabon fears retaliatory SHU placement, locker searches, and aggressive treatment if she complains. *Id.* ¶¶ 88–89, 125–127. It alleges that Williams has seen supposedly confidential complaints relayed back to FMC Carswell staff and has been pressured to stop filing emails and grievances because it "makes us look bad." *Id.* ¶¶ 123–124. It alleges that Defendants' obstruction, intimidation, failure to respond, and refusal to cooperate with the grievance process rendered remedies unavailable. *Id.* ¶ 128.

The declarations confirm those allegations with current facts. Hardin believes her transfer to Minnesota may have been retaliation for joining this lawsuit. Hardin Decl. ¶¶ 7–8 (App.2). Kirk lost her job and training opportunity after case-related harassment. Kirk Decl. ¶¶ 5–8, 12 (App.4–5). Meabon and Morais were taken to the SHU while other inmates were not, and threatened by Warden Rule. Meabon Decl. ¶ 12 (App.9); Morais Decl. ¶ 13 (App.12). Williams states that staff told her to stop filing emails and grievances because it made them look bad and describes

retaliation through medical care and other tactics. Williams Decl. ¶¶ 7, 9–15 (App.14–15).

The requested relief is not a new claim. It is the remedy for the claims pleaded and proved. Rule 65 requires "[e]very [i]njunction" to "state its terms specifically." Fed. R. Civ. P. 65(d)(1)(B). Intervenors have endeavored to articulate their requested relief to conform to that requirement. But no federal rule requires a complaint to recite every operational detail of the eventual injunction.

Finally, unlike Plaintiff Herrera, Intervenors are not asserting unlawful retaliation as an independent cause of action. They are asserting that, to vindicate their Fifth and Eighth Amendment rights, and to implement any court order, Defendants must be enjoined from further retaliating against Intervenors in an attempt to scuttle this lawsuit.

## V.    Plaintiff-Specific Shuffling Is Inadequate Relief.

Defendants repeatedly emphasize that only two Intervenors are currently housed on a mixed unit. Resp. 1–2, 15. Respectfully, no female inmate in America should have to thank the government for housing only one man in her unit at a women's prison. In any event, Defendants' point proves Intervenors' argument, not theirs: the injury is not limited to sleeping assignments, because Intervenors continue to encounter male inmates in elevators, food service, recreation, the mailroom, and other shared spaces. Hardin Decl. ¶ 5 (App.2); Kirk Decl. ¶ 3 (App.4); Meabon Decl. ¶ 6 (App.8); Morais Decl. ¶¶ 9, 11 (App.11–12); Williams Decl. ¶ 6 (App.14). That is why Intervenors seek facility-level separation within FMC Carswell, not plaintiff-specific shuffling. Defendants should not be permitted to protect one woman by injuring another. The Constitution is not a shell game.

## VI.    The Remaining Injunction Factors Continue to Favor Relief.

Defendants' response does not meaningfully contest irreparable harm, the balance of equities, or the public interest. Irreparable harm is established by the ongoing violation of constitutional rights, forced opposite-sex exposure, sexualized intimidation, fear of assault, and

retaliation. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (deprivation of constitutional rights constitutes irreparable injury). The balance of equities is conceded by Defendants, who say the government "shares the same desire" to remove male inmates from FMC Carswell. Resp. 14. And the public interest always favors vindicating constitutional rights.

**VII.    No Evidentiary Hearing Is Needed; Intervenors Request a Prompt Ruling.**

The Court can decide the motion on this record. Intervenors do not request an evidentiary hearing. Nor have Defendants requested one or identified material factual disputes requiring live testimony. Both sides submitted briefs, declarations, and record materials. That is enough. The Fifth Circuit has held that "[i]f no factual dispute is involved ... no oral hearing is required," and the parties need only receive an "ample opportunity to present their respective views of the legal issues involved." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (cleaned up).

That is the situation here. The dispute is legal: whether the D.C. injunctions deprive this Court of power to grant relief, whether Intervenors have standing, and whether the requested injunction is within the pleadings. Defendants' own response supplies the key admissions. The declarations supply the facts. Further delay will only extend the harm.

Intervenors therefore respectfully request a ruling as promptly as the Court is able. If the Court agrees that it can protect Intervenors without conflicting with the D.C. litigation, it should grant preliminary relief. If the Court concludes that the D.C. litigation ties its hands, it should deny preliminary relief promptly so Intervenors may seek appellate review.

For the Court's assistance, Intervenors lay out the relevant dates:

- The D.C. Circuit issued its decision in *Doe v. Blanche* on April 17, 2026.
- Because the United States is a party, any petition for panel rehearing or rehearing en banc is due 45 days after judgment, which makes the rehearing deadline June 1, 2026. *See* Fed. R. App. P. 40(d)(1); D.C. Cir. R. 40(a).

- If no timely rehearing petition is filed, the mandate would issue seven days later, on June 8, 2026. Clerk's Order, *Doe v. Blanche*, No. 25-5099 (D.C. Cir. Apr. 17, 2026), Doc. 2169121; *see also* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1) .

- Accordingly, unless a party obtains expedited issuance, the D.C. Circuit's mandate will issue no earlier than June 8, 2026 if no rehearing petition is filed, and if a timely rehearing petition is filed, the mandate will be withheld until seven days after that petition is disposed of.

Again, Intervenors believe nothing in the D.C. litigation prevents this Court, or the Defendants, from placing the men in Carswell in segregated housing. But that relief, should this Court wait for the D.C. injunction to dissolve, is more than a month away. And should the District Court for the District of Columbia issue a new injunction, it could last indefinitely. Finally, Intervenors cannot assume that this Court would have the time to properly consider all relevant facts and legal authorities after the mandate from the D.C. Circuit issues.

In the D.C. litigation, Plaintiffs filed a motion for a temporary restraining order on February 3, 2025; the court held a motion hearing on February 4, 2025; and the court granted that TRO the same day. *See* Mot. TRO & Prelim. Inj.; Minute Entry; Mem. & Order, *Doe v. McHenry*, No. 1:25-cv-286-RCL (D.D.C. Feb. 3 & 4, 2025), ECF Nos. 13, 23.

A similarly expedited schedule and ruling can fairly be inferred next time around. Intervenors recognize this Court is in a difficult position. But if this Court believes it is unable to issue Intervenors' requested relief due to the D.C. litigation, Intervenors respectfully ask that the preliminary injunction be denied promptly so that they may seek timely appellate relief as needed.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court grant their Motion for Preliminary and Permanent Injunction and enter preliminary relief as articulated in their Motion (ECF No. 152) and Proposed Order (ECF No. 152-1).

Dated: April 27, 2026

Respectfully submitted,

SCHAERR | JAFFE LLP

By: */s/ Brian J. Field*

John Greil
  Texas Bar No. 24110856
  jgreil@schaerr-jaffe.com
Brian J. Field (*pro hac vice*)
  bfield@schaerr-jaffe.com
Justin A. Miller
  Texas Bar No. 24116768
  jmiller@schaerr-jaffe.com
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060

*Attorneys for Intervenor-Plaintiffs Elizabeth Ann Hardin, Brenda Leigh Kirk, Jasmine Meabon, Jessica Clemencio Morais, and Keisha Williams*

11