IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

RHONDA FLEMING and MIRIAM
CRYSTAL HERRERA,

      Plaintiffs,

v.

WARDEN T. RULE, et al.,

      Defendants.

Civil Action No. 4:25-CV-157-D
(consolidated with No. 4:25-CV-438-D)

**REPLY IN SUPPORT OF GOVERNMENT'S AND OFFICIAL-CAPACITY
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
<u>VERIFIED SECOND AMENDED COMPLAINT</u>**

The government and official-capacity defendants (Defendants) have moved to dismiss the remaining claims against them (counts three, four, and six) in Plaintiffs Fleming and Herrera's second amended complaint. As explained herein, that motion should be granted and Plaintiffs' response (Doc. 173) does not show otherwise:

**A.    Plaintiffs' RFRA claim is moot.**

    **1.    The voluntary cessation doctrine does not apply.**

Plaintiffs first argue against the mootness of their RFRA claim on grounds that Defendants have allegedly "conflate[d] the doctrines of mootness and standing." (Doc. 173 at 4.) But Defendants have done no such thing and instead previously cited the Supreme Court's explanation that "[m]ootness has been described as the doctrine of standing set in a time frame." (Doc. 163 at 3 (quoting *Arizonans for Official English v.*

**Reply in Support of Government's and Official-Capacity Defendants'
Motion to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 1**

*Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks and citation omitted)).) Plaintiffs do not contend that the Supreme Court has also conflated or misunderstood these doctrines, and Defendants do not see how they have done so.

Plaintiffs do suggest that a higher burden attaches to a mootness argument as compared to a lack-of-standing defense, which point they use to segue into an argument that the voluntary cessation doctrine precludes a finding of mootness here. (Doc. 173 at 5.) But the voluntary cessation doctrine is inapplicable, for several independent reasons.

*First*, the aim of the voluntary cessation doctrine is to "evaluate[] the risk that a defendant is engaging in 'litigation posturing' to avoid judicial review," with the ultimate goal of guarding against the possibility that, after the litigation concludes, the "defendant, *without court compulsion*, could *legally* return to its former ways." *U.S. Navy SEALs 1– 26 v. Biden*, 72 F.4th 666, 673 (5th Cir. 2023) (emphases added; internal quotation marks and citations omitted). But that possibility does not exist in this case. Even if the RFRA claim is dismissed as moot, Defendants *are* under "court compulsion" by reason of the final judgment and injunction that has now been entered to govern the conditions of Plaintiffs' confinement at FMC Carswell as relevant to the issue of possible exposure to male inmates. And Defendants *cannot* "legally return to [their] former ways" of, e.g., housing male inmates in the same unit as Plaintiffs or otherwise allowing male inmates into privacy areas accessible to Plaintiffs—that would be contrary to the judgment.

Nor does the fact that Defendants agreed to the entry of judgment somehow make it any less compulsive. *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 528 (5th Cir. 2008) ("Far from voluntary, the City's compliance . . . has been compelled by

. . . court-approved consent decree."). The judgment is binding and enforceable in the same manner as any other judgment, and the doctrine of voluntary cessation simply does not apply here. Defendants are not attempting to evade judicial review or to secure their exit from this lawsuit without becoming subject to the compulsive effect of a judgment—instead, judicial review has occurred and that compulsive judgment has already been entered. That is why Plaintiffs' RFRA claim is now moot.

*Second*, Plaintiffs fail in their attempt to distinguish the Fifth Circuit caselaw previously cited by Defendants (the *Environmental Conservation* case cited above and in Defendants' motion), in which the Fifth Circuit found that a plaintiff's claims for injunctive relief were rendered moot by a consent decree that had been entered to control the defendant's relevant conduct. Plaintiffs argue that *Environmental Conservation* is distinguishable because this Court's judgment "does not apply to facilities other than FMC Carswell" and therefore there is "nothing (except for the government's self-imposed policy change) preventing [Plaintiffs] from being subjected to the same housing conditions in other facilities." (Doc. 173 at 11.) But this argument fails because Plaintiffs' relevant allegations in this lawsuit relate only to their conditions of confinement at FMC Carswell. (*See* Doc. 149 at ¶¶ 45–77 (section of the second amended complaint entitled "The Conditions That Support This Lawsuit," which discusses only FMC Carswell).)

Plaintiffs thereby put the cart before the horse by arguing that their RFRA claim is not moot based on speculation that they might be exposed to male inmates at other institutions. Plaintiffs would first need to show that their pleadings actually make out

**Reply in Support of Government's and Official-Capacity Defendants'**
**Motion to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 3**

some RFRA claim in this lawsuit based on the hypothetical and speculative possibility of Plaintiffs' future placement at other institutions.  They have not done so, and in fact the Court already declined Plaintiffs' attempt to broaden the scope of the permanent injunction to facilities beyond FMC Carswell.[1]  Among other things, whether Plaintiffs might be housed with male inmates at other institutions is entirely speculative, and there is also great variety in the layout and conditions at different women's institutions across the BOP, such that there is no guarantee that some other institution to which Plaintiffs might be transferred would even have the same kinds of communal sleeping and living spaces that FMC Carswell has and which, in Plaintiffs' view, render co-housing with male inmates particularly problematic.

*Third*, even if one could disregard that a compulsive judgment already is in place to govern Defendants' relevant actions going forward, the Fifth Circuit has made clear that the "voluntary cessation analysis is somewhat different with respect to a government defendant," and that "[g]overnmental entities bear a 'lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot."  *U.S. Navy SEALs*, 72 F.4th at 673.  There is a presumption that government actors act in good faith, *id.* at 674, and there is no indication that Defendants' actions here (in agreeing to a judgment) were mere "litigation posturing," which "typically involves some sign of bad faith or insincerity," *id.*  Indeed, it is clear that Defendants were not engaged in "litigation posturing" at all, because this is not a situation where Defendants only changed their

---

[1] This was discussed at the injunction hearing.

**Reply in Support of Government's and Official-Capacity Defendants'**
**Motion to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 4**

policy after suit had been filed and then argued that the case should be dismissed as moot without the need for judicial review.  To the contrary, the fundamental policy change to move all male inmates out of female prisons pre-dated the lawsuit (but was then quickly enjoined by courts elsewhere), and Defendants have only argued that some portion of Plaintiffs' case are moot after entry of the Court's judgment.

> **2.**      **Plaintiffs' arguments about alleged possible relief beyond FMC Carswell, or additional relief within it, do not rebut the mootness of their RFRA claim.**

Plaintiffs also argue that their RFRA claim is not moot because they contend that additional relief outside of FMC Carswell, or even within it, could be granted.  (Doc. 173 at 7–10.)  As already discussed above, though, Plaintiffs have not pleaded any facts relevant to a potential claim based on conditions at institutions other than FMC Carswell, and any such (unpleaded) claim would be entirely speculative and hypothetical.  Such contentions do not support the existence of Article III jurisdiction at this time in this particular lawsuit.

Nor can Plaintiffs successfully locate a jurisdictional hook for their RFRA claim through arguments about possible additional relief at FMC Carswell (where only Plaintiff Herrera resides at this time).  (*See* Doc. 173 at 8–9.)  These arguments essentially boil down to a claim that male inmates should not be allowed at FMC Carswell at all, so that Herrerra can avoid a "risk of unwanted exposure" to them while "moving through common areas and performing her work duties."  (Doc. 173 at 9.)  As Plaintiffs note, though, Defendants believe their hands to be tied in this regard due to the injunctive relief issued in the *Doe v. Bondi* (now *Doe v. Blanche*) litigation in the District of Columbia.

Regardless, though, these arguments fail even in the absence of any *Doe v. Blanche* considerations because they amount to a new, never-pleaded claim that for religious reasons Herrera cannot be in *any* common spaces with men (i.e., even in public-type group spaces, as opposed to privacy areas like bathrooms and sleeping spaces). This does not conform to Plaintiffs' second amended complaint, which instead avers that male inmates can be "safely and humanely housed" at FMC Carswell so long as they are "without access to female housing units and privacy spaces" (as the Court's judgment now provides as to Plaintiffs—male inmates are without access to any housing unit and privacy spaces used by Herrera or Fleming at FMC Carswell). (Doc. 149, ¶ 77.) As Plaintiffs explained their RFRA claim in the second amended complaint, "[t]heir faith . . . forbids being seen nude by men and *sharing showers, toilets, changing areas, and sleeping spaces with men*"—not sharing all common, public-type spaces with men during regular everyday activities, as happens every day in government facilities of all types (women required to appear for jury service, for example, may encounter and be seen by men in the courthouse lobby, jury assembly room, cafeteria, deliberation room, etc.). (Doc. 149, ¶ 124 (emphasis added).) In the end, Plaintiffs cannot avoid the mootness of their RFRA claim based on unpleaded theories that go beyond their complaint.

>    3.    **Plaintiffs' arguments about seeking a declaratory judgment or having their injuries "fully ameliorated" do not negate mootness.**

Finally, Plaintiffs offer brief arguments to avoid mootness based on their request for a declaratory judgment and under a vague suggestion that their alleged RFRA injuries have not been "fully ameliorated." (Doc. 173 at 10.) But Plaintiffs cite no authority for

**Reply in Support of Government's and Official-Capacity Defendants'**
**Motion to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 6**

their contention that requesting a declaratory judgment suffices to create or maintain jurisdiction for an otherwise moot claim. Instead, such a judgment would at best be an advisory opinion of the type that Article III forbids. Plaintiffs also do not explain in what way the second amended complaint actually seeks additional relief that would "fully ameliorate[]" their claimed injuries. (*See* Doc. 173 at 10.) As Defendants have demonstrated (Doc. 163 at 4–5), Plaintiffs have already received the common form of relief they were seeking via their then-live group of claims brought under overlapping theories of invasion of bodily privacy, the Eighth Amendment, and RFRA. There is no additional injury that is unique to Plaintiffs' RFRA claim that remains to be addressed, nor is there any concrete form of relief that Plaintiffs can point to as still pending.

**B.      Plaintiffs lack standing for their APA claim, which in any event is also moot (as to any threatened injuries at FMC Carswell) and speculative and unripe (as to any threatened injuries elsewhere).**

With respect to their APA claim, Plaintiffs first respond that their claimed injuries associated with the presence of men at FMC Carswell at the time they filed suit are traceable to the challenged regulation at 28 C.F.R. § 115.42 because the regulation allegedly formed the "framework" by which men were placed at FMC Carswell. (Doc. 173 at 12.) But Plaintiffs are misreading § 115.42, which does not impose substantive requirements for BOP to house transgender inmates in facilities of the opposite sex, or even to evaluate all transgender inmates for such housing. Rather, § 115.42(c) imposes procedural requirements: *if* BOP is "deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates," or "making other housing and programming assignments," it must "consider on a case-by-case basis whether a

placement would ensure the inmate's health and safety" or "present management or security problems." 28 C.F.R. § 115.42(c). Nothing in § 115.42 requires BOP to house male inmates in female facilities, or to even consider doing so. And likewise, Plaintiffs have identified no law, regulation, or other authority that somehow conditioned the placement of transgender inmates in opposite-sex facilities on the existence of § 115.42, such that vacating § 115.42 would somehow revert to a different status quo in that regard. Traceability—and also redressability—therefore have not been shown.

Plaintiffs' argument against the mootness of their APA claim also fails in light of the relief that Plaintiffs have already received governing their exposure to male inmates in housing and privacy areas at FMC Carswell. (*See* Doc. 173 at 16–17.) Plaintiffs do not identify how granting APA relief against the regulation would make any real-world change to their living situation at FMC Carswell. Instead, they argue that vacating the rule under the APA would provide effectual relief because it would "prevent the federal government (including under future administrations) from using or relying on it prospectively to house Plaintiffs alongside biological males." (Doc. 173 at 17.) But this argument clearly cannot apply to Plaintiffs' housing at FMC Carswell, given that the Court's judgment and injunction is now permanently in place—with the time for appeal also having expired—to govern and control Defendants' actions in this regard at FMC Carswell. And as to any assertion of standing for the APA claim based on Plaintiffs' hypothetical future housing at other institutions, this argument is just that—hypothetical (and therefore unripe). Plaintiffs have no current, concrete or even threatened injury associated with their potential housing with male inmates at other institutions that would

**Reply in Support of Government's and Official-Capacity Defendants'**
**Motion to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 8**

support the existence of Article III jurisdiction for their APA claim.  Dismissal of Plaintiffs' APA claim without prejudice is therefore appropriate.

## C.    No claim for retaliation is stated by Herrera.

Defendants identified two independent reasons that Herrera's retaliation claim fails:  (1) it is barred by 18 U.S.C. § 3621(b); and (2) Herrera fails to state a claim so as to make a Rule 12(b)(6) dismissal proper.  Both reasons continue to support dismissal, and Herrera fails to show otherwise.

Herrera first argues that § 3621(b) does not preclude judicial review because the statute "does not purport to bar review of constitutional claims."  (Doc. 173 at 20.)  But Herrera provides no textual support for this argument.  The statute is in fact fairly broad in the language it uses to preclude judicial review, by stating that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."  18 U.S.C. § 3621(b).  Even a constitutional provision like the First Amendment is an "other provision of law," so it is not clear from the text of the statute alone why Herrera's claim would be exempt from the bar on judicial review.

Herrera cites *Webster v. Doe*, 486 U.S. 592 (1988) (along with the D.C. Circuit's recent *Doe v. Bondi* decision that relied on *Webster*) as support for her reading of § 3621.  But the Fifth Circuit appears not to read *Webster* as standing for the kind of clear-statement rule that Herrera invokes, instead explaining that "the foundations of *Doe*'s constitutional doubt have been undermined since it was decided," and that "*Doe* appears to have invoked constitutional avoidance from a concern that Congress would intrude on the judicial power by precluding review of 'colorable constitutional claim[s],'" "[b]ut the

**Reply in Support of Government's and Official-Capacity Defendants'**
**Motion to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 9**

[Supreme] Court has since repudiated that concern." *Zummer v. Sallett*, 37 F.4th 996, 1010 (5th Cir. 2022).  Regardless of how the D.C. Circuit might read *Webster*, the Fifth Circuit has not charted the same course.  And Herrera's reading of § 3621(b) would essentially allow any challenge to a BOP designation decision to proceed into full-blown litigation (including discovery) in federal court so long as the inmate took the trivial step of invoking the Constitution in some way, which would effectively erase § 3621(b) from the U.S. Code entirely.  That cannot be correct.

Aside from the § 3621(b) bar, Herrera also fails to state any claim for retaliation. Defendants previously noted that "[t]he Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive." *Bumgardner v. Hawkins*, No. 1:24-CV-153, 2026 WL 315704, at *9 (W.D. La. Feb. 5, 2026) (discussing Fifth Circuit precedent).  No such allegations have been made here—Herrera's pleadings instead leave unanswered the crucial, yet basic, questions of who took the actions alleged to have been retaliatory, whether and how they would have been aware of Herrera's litigation-related activity, and why they would have had the motive to act in retaliation.  Defendants are not insisting on a heightened pleading standard or summary-judgment-stage level of particularity and proof by merely pointing out that Herrera must allege some facts giving rise to an inference of retaliation before plunging the BOP into discovery on this issue.  No claim for retaliation is stated.

\* \* \* \* \*

The remaining counts against Defendants should be dismissed.

**Reply in Support of Government's and Official-Capacity Defendants'**
**Motion to Dismiss Plaintiffs' Verified Second Amended Complaint – Page 10**

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants United States
and the Director of the Federal Bureau of
Prisons, the Attorney General, and the
Warden of FMC Carswell in their
official capacities

Certificate of Service

On May 14, 2026, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney