IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | |
|---|---|
| RHONDA FLEMING and MIRIAM CRYSTAL HERRERA, <br><br>    Plaintiffs, <br><br> v. <br><br> WARDEN T. RULE, et al., <br><br>    Defendants. | Civil Action No. 4:25-CV-157-D (consolidated with No. 4:25-CV-438-D) |

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO
<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**


BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL

RYAN RAYBOULD
UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants United States
and the Attorney General, the Director of
the Federal Bureau of Prisons, and the
Warden of FMC Carswell (in their
official capacities)

**Table of Contents**

I.      Summary.................................................................................................... 1

II.     Background................................................................................................. 2

III.    Legal Standard.......................................................................................... 4

IV.     Argument and Authorities ....................................................................... 4

      A.      Plaintiffs' arguments against the lawfulness of § 115.42 are based on
           a misconception of what the regulation actually does. ................................ 5

      B.      Alternately, the relief sought by Plaintiffs is overbroad and the Court
           should at most grant relief that is specific to Plaintiffs. ............................. 8

V.      Conclusion................................................................................................. 14

## Table of Authorities

Cases

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) .................................................................. 12, 14

*Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*,
878 F. Supp. 943 (N.D. Tex. 1995) ........................................................ 4

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ............................................................................... 14

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) .................................................................. 8

*California v. Texas*,
593 U.S. 659 (2021) ............................................................................... 13

*Carolina Cas. Ins. Co. v. Sowell*,
603 F. Supp. 2d 914 (N.D. Tex. 2009) ................................................... 4

*Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*,
No. 3:04-CV-1866-D, 2007 WL 2403656 (N.D. Tex. Aug. 23, 2007) .................... 4

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
45 F.4th 846 (5th Cir. 2022) .................................................................. 8

*Fontenot v. Upjohn Co.*,
780 F.2d 1190 (5th Cir. 1986) ............................................................... 4

*Garland v. Cargill*,
602 U.S. 406 (2024) ............................................................................... 9

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944) ............................................................................... 13

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994) ............................................................................... 13

*Martin v. Alamo Cmty. Coll. Dist.*,
353 F.3d 409 (5th Cir. 2003) ................................................................. 4

*Massachusetts v. Mellon*,
262 U.S. 447 (1923) ............................................................................... 12

*Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs*,
    435 F.3d 326 (D.C. Cir. 2006). ................................................................... 13

*Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*,
    120 F.4th 494 (5th Cir. 2024) ..................................................................... 9

*Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*,
    138 F.4th 961 (5th Cir. 2025) (en banc) ..................................................... 9

*United States v. Texas*,
    599 U.S. 670 (2023) ...................................................................... 11, 12, 13

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ................................................................................. 13

Statutes, Regulations, and Other Authorities

5 U.S.C. § 703 ................................................................................... 11, 12

5 U.S.C. § 706(2) .................................................................................... 8

18 U.S.C. § 3621(b) ................................................................................. 7

18 U.S.C. § 3625 ..................................................................................... 8

18 U.S.C. § 3626(a)(1)(A) ....................................................................... 9

28 C.F.R. § 115.42(c) ........................................................................... 6, 7

Administrative Procedure Act,
    S. Doc. No. 248, 79th Cong., 2d Sess. (1946) ....................................... 11

Exec. Order No. 14168, Defending Women from Gender Ideology Extremism and
    Restoring Biological Truth to the Federal Government,
    90 Fed. Reg. 8615 (Jan. 20, 2025) ......................................................... 2

S. Rep. No. 752, 79th Cong., 1st Sess. (1945) ......................................... 11

U.S. Dep't of Justice,
    Attorney General's Manual on the Administrative Procedure Act (1947) ............ 11

## I.    Summary

Plaintiffs Rhonda Fleming and Crystal Herrera seek summary judgment on their challenge to 28 C.F.R. § 115.42(c)–(g) under the Administrative Procedure Act (APA). Plaintiffs argue that this regulation—which is entitled "Use of Screening Information" and as relevant here sets out procedures and considerations for the Federal Bureau of Prisons (BOP) to follow when making decisions about assignments of transgender inmates—exceeds and contradicts the statute under which it was promulgated, the Prison Rape Elimination Act (PREA), and is otherwise unlawful.  Plaintiffs therefore seek to have the challenged portions of the regulation vacated.  Defendants,[1] who as part of this litigation have already agreed to the entry of a permanent injunction in Plaintiffs' favor that protects them from any male inmates in housing units and female-only privacy areas at FMC Carswell, now respond and request that the Court deny Plaintiffs' motion.

Defendants do not take this position out of some desire for Plaintiffs to be exposed to male inmates at FMC Carswell.  In fact, Defendants want the opposite, and tried to move all male inmates out of FMC Carswell almost a year-and-a-half ago but have been prevented from doing so by court orders entered elsewhere.  But the relief now requested by Plaintiffs through their summary judgment motion is unnecessary[2] and based on a

---

[1] Defendants for purposes of this response are the United States and the three government officials sued in their official capacities—the Director of the Federal Bureau of Prisons, the Attorney General, and the Warden of FMC Carswell.  T. Rule, the current Warden of FMC Carswell, has also been sued in his individual capacity, but has not yet responded and is not a party to the APA claim.

[2] Defendants previously argued that Plaintiffs' APA claim is moot and that Plaintiffs also lack standing for this claim, but Defendants recognize that the Court has now rejected this argument and found that Plaintiffs have established subject-matter jurisdiction for their APA claim.  (Doc. 200 at 5.)

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 1**

misconception of how the regulation operates and what effect (or non-effect) it has on Plaintiffs. Plaintiffs will continue to be protected by the permanent injunction that has already been entered in their favor, but this particular additional motion of theirs should be denied.

## II. Background

This case involves claims by Plaintiffs challenging the practice of housing male inmates at FMC Carswell in Fort Worth, Texas. FMC Carswell is a facility operated by BOP for female inmates, but since approximately 2013, it has also housed certain male inmates[3] due to their claimed gender identity or other factors.[4]

As previously noted in other filings in this case, the government does not want to continue housing male inmates at FMC Carswell (or at any other prison facility designated for females) and wants to ensure that males do not enter intimate spaces designated for women, as explained in Executive Order No. 14168 issued on January 20, 2025. In the Executive Order, the President confirmed that it is the "policy of the United Staes to recognize two sexes, male and female," and directed the Attorney General to "ensure that males are not detained in women's prisons or housed in women's detention centers."[5] The government has not yet been able to fully carry out this mandate,

---

[3] Consistent with the language used by the Court, "male inmate" as used herein "means a person who is biologically male, regardless of gender identity." (Doc. 83 at 1.)

[4] *See* Declaration of Jody R. Upton ¶ 48, *Fleming v. United States*, No. 7:17-CV-9-O (N.D. Tex. Aug. 10, 2017) ("Beginning in December 2013, male- to-female transgender inmates have been designated to FMC Carswell . . . .") (Doc. 100 in No. 7:17-CV-9-O, at page App. 199).

[5] *See* Exec. Order No. 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615, 8515, 8616 (Jan. 20, 2025).

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 2**

however, because of court orders entered in litigation elsewhere in the aftermath of the Executive Order[6]—including certain litigation in the U.S. District Court for the District of Columbia and, on appeal, in the U.S. Court of Appeals for the District of Columbia Circuit, in which the government sought to lift existing injunctions on its ability to transfer male inmates out of female facilities and is seeking to defeat attempts by male inmates to win additional such injunctions.

In this case, Defendants previously agreed to a permanent injunction in favor of Plaintiffs to ensure that they are not housed with male inmates at FMC Carswell, resulting in the Stipulated Order of Permanent Injunction and Final Judgment entered in this action on February 2, 2026 as a final judgment under Rule 54(b).  (Doc. 137.) Plaintiffs agree that this permanent injunction resolved their claims for alleged violations of bodily privacy and the Eighth Amendment (*see* Doc. 149, ¶¶ 114–22), which means that the remaining claims Plaintiffs are seeking to prosecute against Defendants as set forth in Plaintiffs' Verified Second Amended Complaint are count three (for injunctive and declaratory relief under the Religious Freedom Restoration Act (RFRA)), count five (the APA challenge to 28 C.F.R. § 115.42), and count six (Plaintiff Herrera's challenge to

---

[6] *See* Order at 11, *Doe v. McHenry*, No. 1:25-CV-286-RCL (D.D.C. Feb. 4, 2025) (requiring the government to "maintain and continue the [male inmates'] housing status and medical care as they existed immediately prior to January 20, 2025"); Order Granting Preliminary Injunction at 2, *Doe v. Bondi*, No. 1:25-CV-286-RCL (D.D.C. Nov. 17, 2025) (granting the same relief to an expanded group of plaintiffs, to require the government to "maintain and continue the plaintiffs['] . . . housing status in women's facilities"); Order for Preliminary Injunction, *Doe v. Blanche*, No. 1:25-CV-286-RCL (D.D.C. May 19, 2026) (renewing preliminary injunction).

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 3**

any future transfer out of FMC Carswell under a retaliation claim)[7] (*see* Doc. 149, ¶ 114). Plaintiffs have now filed a motion for summary judgment on the APA claim in count five, to which Defendants now respond.

### III.    Legal Standard

When, as here, the summary judgment movant will have the burden of proof on a claim, the movant "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923–24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

### IV.    Argument and Authorities

The Court should deny Plaintiffs' motion for summary judgment on their APA challenge to 28 C.F.R. § 115.42(c)–(g).  Plaintiffs are seeking summary judgment as to a regulation promulgated pursuant to a notice-and-comment rulemaking conducted under a

---

[7] Count four is a claim for damages under RFRA and is asserted only against Warden Rule in his individual capacity.

statute enacted by Congress, yet at this stage of the case Defendants have not even answered, and there is no administrative record on file.  Plaintiffs have not met their heavy burden to show, "beyond peradventure," that summary judgment is appropriate at this time.  And as explained below, it is not.  For one thing, Plaintiffs lack standing for their APA claim, and even if Plaintiffs are assumed to have had standing at some point previously, their claim is now moot—although Defendants recognize that the Court has recently rejected this argument in ruling on Defendants' motion to dismiss.[8]  Plaintiffs' summary judgment motion in any event should be denied because it is based on a misconception about what the challenged regulation does and does not do, as discussed below.  And additionally, Defendants argue in the alternative that even if the Court is inclined to grant some relief to Plaintiffs on their APA claim, the across-the-board vacatur relief that they seek is inappropriate and only more narrowly-drawn, plaintiff-specific relief would be warranted.

A.    **Plaintiffs' arguments against the lawfulness of § 115.42 are based on a misconception of what the regulation actually does.**

Plaintiffs suggest that § 115.42 is unlawful because, in their view, it "permits the placement of biological male inmates . . . in facilities designed for female offenders based

---

[8] In connection with Defendants' motion to dismiss (Doc. 163), the parties extensively briefed the issues of whether Plaintiffs lack standing for their APA challenge to § 115.42 and whether any such claim is now moot.  The Court also heard oral argument on this issue on May 20, 2026, and has since issued an order denying the motion to dismiss and finding that Plaintiffs "have established that the court has subject matter jurisdiction over their . . . APA claim[]." (Doc. 200 at 5.)  Defendants acknowledge the Court's ruling on this issue, but for the avoidance of doubt and to make clear that they are not waiving or forfeiting these issues, Defendants reiterate here that they believe standing and mootness are bars to Plaintiffs' APA claim for all the reasons previously explained in connection with the motion to dismiss.  Because the APA claim should be dismissed for the reasons set forth in the motion to dismiss, Plaintiffs also are not entitled to summary judgment on that claim.

on self-reported gender identity," and "presumably in at least some cases *requires* the federal government to place male inmates in female facilities." (Doc. 175 at 9, 23.) Plaintiffs contend that the regulation thereby exceeds and is contradictory to the statutory authority granted by PREA (which Plaintiffs contend does not authorize cross-sex housing), violates the major questions doctrine, and is contrary to law and the Constitution. (Doc. 175 at 22–38.)

But Plaintiffs are misreading § 115.42, which does not impose substantive requirements for BOP to house transgender inmates in facilities of the opposite sex, or even to evaluate all transgender inmates for such housing. Rather, § 115.42(c) imposes procedural requirements: *if* BOP is "deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates," or "making other housing and programming assignments," it must "consider on a case-by-case basis whether a placement would ensure the inmate's health and safety" or "present management or security problems." 28 C.F.R. § 115.42(c). Nothing in § 115.42 requires BOP to house male inmates in female facilities, or to even consider doing so. And likewise, Plaintiffs have identified no law, regulation, or other authority that somehow conditioned the placement of transgender inmates in opposite-sex facilities on the existence of § 115.42, such that vacating the challenged portions of § 115.42 would somehow revert to a different status quo in that regard.

Section 115.42 also does not exist in a vacuum. BOP has longstanding authority under 18 U.S.C. § 3621(b) to designate the place of an inmate's imprisonment, and that statute specifically calls for BOP to consider things like inmates' mental and medical

health needs, faith-based needs, and security concerns.  For this reason, Plaintiffs'

invocation of the major questions doctrine as relevant to the question of whether *PREA*

grants authority to house male inmates in female facilities is misplaced.  (*See* Doc. 175 at

26–35.)  Again, as discussed above, the challenged regulation—and, derivatively, PREA

itself—is not the source of any requirement, mandate, or even authorization for cross-sex

housing.  Thus, the major questions doctrine is not implicated.

Plaintiffs also overlook that the regulation itself does not solely focus on the

interests of transgender inmates, but rather calls for BOP to consider whether the

placement of any given inmate in a particular facility would "present management or

security problems," which naturally would entail an analysis of the inmate's effect on

other inmates.  28 C.F.R. § 115.42(c).  Plaintiffs' claim of a conflict between the

regulation and BOP's "affirmative duty . . . to ensure the safekeeping and protection of

federal inmates," including with respect to things like the right of bodily privacy and

Eighth Amendment protections, therefore evaporates upon closer inspection.  (Doc. 175

at 36.)  In the end, Plaintiffs may take issue with prior decisions that were made to house

male inmates at FMC Carswell, but that is not the "fault" of the regulation.  If anything,

Plaintiffs seem to be suggesting that the BOP did not adequately take into account the

kinds of "management and security problems" that Plaintiffs describe as being caused by

the presence of male inmates at FMC Carswell when BOP officials were making

individual placement decisions for those male inmates.  But such decisions cannot be

challenged under the APA.  *See* 18 U.S.C. § 3621(b) ("Notwithstanding any other

provision of law, a designation of a place of imprisonment under this subsection is not

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 7**

reviewable by any court."); *id.* § 3625 ("The provisions of sections 554 and 555 and 701

through 706 of title 5, United States Code, do not apply to the making of any

determination, decision, or order under this subchapter.").  In any event, this issue has

already been addressed and remedied as to Plaintiffs, by entry of the permanent

injunction in their favor that is designed to ensure that Plaintiffs do not encounter any

male inmates in their housing units and female-only privacy spaces at FMC Carswell.  It

does not constitute a claim against the regulation itself.

**B.      Alternately, the relief sought by Plaintiffs is overbroad and the Court should at most grant relief that is specific to Plaintiffs.**

Should the Court disagree with the above and find that the challenged portions of

§ 115.42 are unlawful and subject to being "set aside" under the APA, *see* 5 U.S.C.

§ 706(2), the question becomes what remedy to craft.  Plaintiffs argue that universal

vacatur "on the regulation itself, not merely on its application to the parties before the

Court," is the default remedy.  (Doc. 175 at 40.)  And Plaintiffs are correct that in the

*Data Marketing Partnership* case, the Fifth Circuit did say that "[t]he default rule is that

vacatur is the appropriate remedy." *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45

F.4th 846, 859 (5th Cir. 2022).  Other Fifth Circuit decisions make clear, however, that a

district court is not required to vacate an agency action on a universal basis.  *See Cargill

v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc) (plurality opinion) (concluding,

without contradiction from any other member of the Court, that the district court could

consider on remand "a more limited remedy" than universal vacatur of the rule, and

instructing the district court to "determine what remedy—injunctive, declarative, or

otherwise—is appropriate to effectuate" the judgment), *aff'd*, 602 U.S. 406 (2024). Rather, the Fifth Circuit has acknowledged that party-specific vacatur in lieu of universal vacatur can be appropriate in certain circumstances. *See Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 120 F.4th 494, 510 (5th Cir. 2024) ("party-specific vacatur is definitely appropriate in other situations"), *reh'g en banc granted, panel opinion vacated per curiam*, 138 F.4th 961 (5th Cir. 2025). And here, there are good reasons that the "default" rule should not apply, and therefore Defendants would urge the Court to limit any relief to Plaintiffs themselves, by at most setting aside the regulation as to them but not on a universal basis.

*First*, although the Fifth Circuit did describe vacatur as the default remedy in the *Data Marketing Partnership* case, that was not a suit filed by inmates, nor did it have anything to do with prison conditions. And that is important because a law that was not relevant in *Data Marketing Partnership* or in other APA cases not involving prisons is applicable to this case: the Prison Litigation Reform Act (PLRA). In the PLRA, Congress has specified that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," and has further provided that the "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Here, the vacatur relief that Plaintiffs seek is prospective in nature—Plaintiffs

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 9**

want the challenged portions of the regulation to no longer have binding effect in the future, and Plaintiffs have even forthrightly noted the intended future and prospective effect of their request for vacatur—they want the regulation vacated in order to "prevent the federal government (including under *future* administrations) from using or relying on it *prospectively* to house Plaintiffs alongside biological males." (Doc. 173 at 17 (emphasis added).)  In this situation, § 3626(a)(1)(A)'s limitation on prospective relief in a prison case is directly applicable, and requires that any relief be narrowly tailored to these particular Plaintiffs and be the least intrusive means necessary to correct the claimed violation (which here relates to the presence of male inmates at FMC Carswell), as opposed to extending to all inmates and BOP institutions writ large.  Because the PLRA requires that any relief be limited to Plaintiffs, and nothing in *Data Marketing Partnership* or any other case purports to override this rule, the Court should limit any relief to the Plaintiffs under the PLRA rule and need not even consider the other arguments discussed below.

*Second*, even if the PLRA rule discussed above did not exist, the government's view continues to be—while recognizing and acknowledging what the Fifth Circuit has said about vacatur in cases like *Data Marketing Partnership*—that the APA does not authorize a court to "vacate" an agency rule in the sense requested by Plaintiffs at all, and that even if vacatur is an available remedy, then like all equitable remedies it must be subject to traditional equitable limitations, including the principle of party-specific relief.

As an initial matter, although some courts—including the Fifth Circuit—have described vacatur as the default remedy for errors in agency rules, that practice has no

textual basis in the APA.  Indeed, the APA "does not say anything about 'vacating' agency action ('wholesale' or otherwise)." *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring in the judgment).  Rather, the APA addresses judicial remedies in 5 U.S.C. § 703, which specifies that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction."

Thus, absent a special statutory review proceeding (which is not applicable here), § 703 specifies that a plaintiff may proceed by "any applicable form of legal action including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction."  *Id.*  As this formulation makes clear, the APA does not itself create new remedies, but instead looks to pre-existing remedies available in the "form[s] of legal action" known at the time of the APA's enactment.  *See, e.g.*, Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d Sess., at 36–37 (1946); 92 Cong. Rec. 2159 (1946) (referring to § 703 as governing remedies); S. Rep. No. 752, 79th Cong., 1st Sess., at 229 (1945) (explaining that the APA "declares the existing law concerning the scope of judicial review"); U.S. Dep't of Justice, Attorney General's Manual on the Administrative Procedure Act, at 93 (1947) (explaining that the APA "constitute[s] a general restatement of the principles of judicial review embodied in many statutes and judicial decisions").  These remedies generally did not include a universal "vacatur" remedy.

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 11**

Nor should the APA's reference to "set[ting] aside" agency action, in 5 U.S.C. § 706(2), properly be understood to authorize such vacatur. Section 706 ("Scope of Review") is not a remedy provision at all, but rather a direction to a court concerning the proper ambit of its review. In this context, the APA's direction to a reviewing court to "set aside" unlawful agency action means to disregard it—to set it to the side—in resolving the case before the court, in the same way a court would set aside and disregard an unconstitutional statute. It is well settled that courts "have no power per se to review and annul acts of Congress on the ground that they are unconstitutional." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). Instead, judicial review "amounts to little more than the negative power to disregard an unconstitutional enactment." *Id.* Judicial review of agency rules under § 706 functions the same way. *See Texas*, 599 U.S. at 695–96 (Gorsuch, J., concurring in the judgment); *Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring).

This usage also makes sense of the phrase "set aside" in all settings where § 706(2) applies. The APA expressly permits, for example, challenges to agency action to be raised in "actions for declaratory judgment" or "habeas corpus" actions, 5 U.S.C. 703, but "no one thinks a court adjudicating a declaratory action or a habeas petition 'vacates' agency action along the way." *Texas*, 599 U.S. at 699 (Gorsuch, J., concurring in the judgment). Instead, courts simply ignore—set aside—the regulation in determining whether to grant habeas relief or judicial enforcement. The same principle holds in judicial review of agency adjudications, which are party-specific actions that may rely on an agency rule, but that would not provide any occasion for a reviewing

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 12**

court to vacate the underlying rule.  *See Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs*, 435 F.3d 326, 330 (D.C. Cir. 2006).  And the same point holds true for the APA's instruction that a court should disregard unfounded "findings" or "conclusions"; it makes little sense to say that a court "vacates" those as opposed to simply disregarding them for purposes of resolving the case before it.  *Texas*, 699 U.S. at 697–98 (Gorsuch, J., concurring in the judgment).

Further, even if vacatur were an available remedy, it is still subject to traditional equitable principles, which do not require that it function universally as opposed to on a party-specific basis.  Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice."  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).  Courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht Co.*, 321 U.S. at 329.  The "set aside" language of § 706(2) does not meet this standard.  It neither refers to vacatur nor specifies as to whom the agency action should be set aside.

Remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract.'"  *California v. Texas*, 593 U.S. 659, 672 (2021) (citation omitted).  Equitable remedies are no exception:  the "general rule" is that equitable relief "'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'"  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 13**

(quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also Arizona*, 40 F.4th at 397 (Sutton, C.J., concurring).  The text of the APA does not demonstrate the clear intent by Congress that would be required to "upset the bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring).  Thus, even if a court wishes to issue an order styled as a "vacatur," that order should be tailored to the parties before the court, in accordance with traditional equitable principles.

To sum up, under both the PLRA and traditional equitable principles that continue to apply to the APA, any relief granted to Plaintiffs on their APA claim should be party-specific as to Plaintiffs and should not be universal in nature.

## V.   Conclusion

Plaintiffs' motion for summary judgment should be denied, or in the alternative any relief granted should be party-specific and limited in scope to Plaintiffs.

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 14**

Respectfully submitted,

BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants United States
and the Attorney General, Director of the
Federal Bureau of Prisons, and Warden
of FMC Carswell (in their official
capacities)

<u>Certificate of Service</u>

On June 4, 2026, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court.  I hereby certify that I have served all parties electronically or

by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

**Brief in Support of Defendants' Response to Plaintiffs' Motion for Summary Judgment – Page 15**