IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

RHONDA FLEMING and MIRIAM
CRYSTAL HERRERA,

      Plaintiffs,

v.

WARDEN T. RULE, et al.,

      Defendants.

Civil Action No. 4:25-CV-157-D
(consolidated with No. 4:25-CV-438-D)

**MOTION TO DISMISS ON BEHALF OF DEFENDANT
<u>WARDEN T. RULE IN HIS INDIVIDUAL CAPACITY</u>**

RYAN RAYBOULD
UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Warden T. Rule,
in his Individual Capacity

**Table of Contents**

I.    Introduction ...................................................................................................... 1

II.   Background....................................................................................................... 1

III.  Legal Standards ...............................................................................................2

      A.    Qualified Immunity ...............................................................................2

      B.    Rule 12(b)(6) ........................................................................................3

IV.   Argument and Authorities ...............................................................................3

      A.    Warden Rule is entitled to qualified immunity. ............................................3

            1.    No clearly established law supports Plaintiffs' claim. ......................4

            2.    Plaintiffs fail to allege any violation of a statutory right
                  by Warden Rule.................................................................................. 12

      B.    The Prison Litigation Reform Act bars Plaintiffs' RFRA claim
            because Plaintiffs fail to make any showing of a physical injury or
            statutorily defined sexual act as a result of the challenged conduct. .......... 17

V.    Conclusion...................................................................................................... 19

## Table of Authorities

Cases

*Ali v. ICE*,
No. 1:16-CV-037-BL, 2017 WL 4325785 (N.D. Tex. Aug. 29, 2017) ................. 19

*Ali v. ICE*,
No. 1:16-CV-037-BL, 2017 WL 4296756 (N.D. Tex. Sept. 16, 2017) ................. 19

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ...................................................................................... 3, 5, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009). ........................................................................................ 3, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 3

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ................................................................................................ 5

*Bustillos v. El Paso Cty. Hosp. Dist.*,
891 F.3d 214 (5th Cir. 2018) .................................................................................. 5

*Cain v. Virginia*,
982 F. Supp. 1132 (E.D. Va. 1997) ...................................................................... 18

*City & Cty. of San Francisco v. Sheehan*,
575 U.S. 600 (2015) ................................................................................................ 5

*Collier v. Montgomery*,
569 F.3d 214 (5th Cir. 2009) .................................................................................. 3

*Doe v. Blanche*,
172 F.4th 901 (D.C. Cir. 2026) .......................................................................... 7, 8

*Doe v. McHenry*,
763 F. Supp. 3d 81 (D.D.C. Feb. 4, 2025) ............................................................ 7

*Figueroa v. Wright*,
No. 9:07-CV-1223, 2009 WL 674262 (N.D.N.Y. Mar. 11, 2009)......................... 18

*Fleming v. Strong*,
No. 4:21-CV-325-MW-MJF, 2023 WL 2142670 (N.D. Fla. Jan. 25, 2023) ......... 11

*Fleming v. Strong*,
No. 4:21-CV-325-MW-MJF, 2023 WL 2145978 (N.D. Fla. Feb. 21, 2023) ........ 11

*Geiger v. Jowers*,
404 F.3d 371 (5th Cir. 2005) .................................................................................. 18

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ........................................................................................... 2, 3

*Ingle v. Butler*,
No. 2:24-CV-140-Z-BR, 2025 WL 1184657 (N.D. Tex. Apr. 1, 2025) .......... 12, 14

*Ingle v. Butler*,
No. 2:24-CV-140-Z-BR, 2025 WL 1182088 (N.D. Tex. Apr. 23, 2025) .............. 12

*Knight v. Shults*,
No. 3:18-CV-34, 2020 WL 1283116 (S.D. Miss. Feb. 7, 2020) ........................... 19

*Knight v. Shults*,
No. 3:18-CV-34, 2020 WL 1277211 (S.D. Miss. Mar. 16, 2020) ........................ 19

*Kovacic v. Villarreal*,
628 F.3d 209 (5th Cir. 2010) ................................................................................... 2

*Massingill v. Livingston*,
277 F. App'x 491 (5th Cir. 2008) .......................................................................... 19

*Mendenhall v. Riser*,
213 F.3d 226 (5th Cir. 2000) ................................................................................... 6

*Morgan v. Swanson*,
659 F.3d 359 (5th Cir. 2011) (en banc) .................................................................. 4

*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2019) ............................................................................... 4, 5

*Mullenix v. Luna*,
577 U.S. 7 (2015) .................................................................................................... 5

*Patel v. Bureau of Prisons*,
125 F. Supp. 3d 44 (D.D.C. 2015) ......................................................................... 14

*Pearson v. Callahan*,
555 U.S. 223 (2009) ................................................................................................ 4

*Shelby v. Petrucci*,
No. 19-CV-2020, 2022 WL 16575766 (S.D.N.Y. Nov. 1, 2022) ........................... 7

*Vann v. City of Southaven*,
884 F.3d 307 (5th Cir. 2018) .................................................................... 5

*Wooley v. City of Baton Rouge*,
211 F.3d 913 (5th Cir. 2000) .................................................................... 4

*Wyatt v. Fletcher*,
718 F.3d 496 (5th Cir. 2013) .................................................................... 4

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ............................................................................... 7

## Statutes

18 U.S.C. § 2246(2)................................................................................. 18

42 U.S.C. § 1997e(e) .......................................................................... 1, 17

## I.    Introduction

Plaintiffs Rhonda Fleming and Miriam Crystal Herrea have sued Warden T. Rule in his individual capacity on a claim that Warden Rule violated Plaintiffs' rights under the Religious Freedom Restoration Act (RFRA) in connection with the housing of male inmates at FMC Carswell at a time when Plaintiffs were also housed there.  (*See* Doc. 149, ¶¶ 133–37 ("Fourth Cause of Action" in Plaintiffs' second amended complaint).)  As explained herein, though, the claim against Warden Rule should be dismissed for either of two independent reasons.

First, Warden Rule is entitled to qualified immunity because there was no clearly established law in place at the relevant time (or even now) holding conduct of the type identified by Plaintiffs to violate RFRA, and Plaintiffs also fail to plead facts showing any violation, by Warden Rule personally, of any of their rights under RFRA.

And second, Plaintiffs' claim is separately barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), because Plaintiffs cannot maintain their damages claim against Warden Rule without first showing a qualifying physical injury or the commission of a statutorily defined sexual act resulting from his alleged conduct, and they have not done so.

For these reasons, and as further discussed herein, Plaintiffs' RFRA claim against Warden Rule in his individual capacity should be dismissed under Rule 12(b)(6) and 42 U.S.C. § 1997e(e).

## II.    Background

The Court is by now well acquainted with the underlying issues in this lawsuit,

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 1**

which relates to the housing of biologically male inmates who identify as transgender at FMC Carswell, a Federal Bureau of Prisons (BOP) facility for female inmates in Fort Worth.  As relevant to this motion, Plaintiffs allege that their religious exercise was substantially burdened by Warden Rule, in violation of RFRA, by reason of Warden Rule's alleged actions in "subjecting Plaintiffs to policies and practices that forced them to share showers, toilets, changing areas, and sleeping spaces with biological males and to endure threatened punishment or adverse treatment if they objected" (Doc. 149, ¶ 134), while also allegedly being "personally responsible for creating, implementing, enforcing, approving, continuing, or knowingly failing to correct the policies and practices that substantially burdened Plaintiffs' religious exercise" (Doc. 149, ¶ 133).  Plaintiffs seek "[c]ompensatory damages under RFRA" from Warden Rule in his individual capacity. (Doc. 149 at p. 39.)  Warden Rule now asserts an entitlement to qualified immunity and moves to dismiss Plaintiffs' RFRA claim against him in his individual capacity.

### III.    Legal Standards

#### A.    Qualified Immunity

Qualified immunity insulates a government official from civil liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a defendant relies on qualified immunity, the burden is on the plaintiff to negate this defense.  *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 2**

established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818).

**B.      Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### IV.      Argument and Authorities

Plaintiffs' RFRA claim against Warden Rule in his individual capacity should be dismissed for either of two independent reasons. First, Plaintiffs fail to overcome Warden Rule's entitlement to qualified immunity because no clearly established law supports their claim and, in any event, they fail to state any claim for relief against him. And second, the Prison Litigation Reform Act's physical injury requirement separately bars Plaintiffs' claim because Plaintiffs have failed to make a showing of any qualifying physical injury or sexual act as a result of Warden Rule's alleged conduct.

**A.      Warden Rule is entitled to qualified immunity.**

A "plaintiff has the burden to negate the assertion of qualified immunity" once that defense has been raised. *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). To establish that qualified immunity does not apply, a plaintiff must show that (1) the

defendant "violated a statutory or constitutional right" of the plaintiff's and that (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). The analysis may begin at either step—and can also end at either step, if the plaintiff fails to carry her burden. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). That is the case here no matter where the analysis begins. The "clearly established law" step is addressed first below, and Warden Rule is entitled to qualified immunity on that basis alone without the need for any further inquiry because Plaintiffs fail to allege with the necessary specificity the violation of any clearly established statutory right. To the contrary, Plaintiffs have elsewhere admitted that this litigation involves an "area of law rife with nuance and complexity" (Doc. 177 at 18), which is exactly the scenario in which qualified immunity protects individual-capacity defendants from the threat of personal damages liability. Plaintiffs also fail to meet their burden at the first step, because their allegations show no violation of their statutory rights by Warden Rule personally. Either way, and at both steps, Warden Rule is entitled to qualified immunity.

> 1.    **No clearly established law supports Plaintiffs' claim.**

Identifying clearly established law sufficient to negate a defendant's qualified immunity requires an "extraordinary showing" from a plaintiff. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). "A right is clearly established only if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) (quoting *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000)). "This inquiry 'must

be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."  *al-Kidd*, 563 U.S. at 742. The plaintiff must identify some case giving notice that certain actions were required or forbidden "in the situation presented," *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018), by pointing to a "controlling precedent that squarely governs the specific facts at issue," *Morrow*, 917 F.3d at 876 (cleaned up).

Given these principles, the Fifth Circuit has stressed that the qualified immunity analysis requires framing the relevant question "with specificity and granularity." *Morrow*, 917 F.3d at 874–75.  Accordingly, just as a plaintiff cannot overcome qualified immunity on a Fourth Amendment claim by defining the relevant right as "the right to be free from unreasonable searches and seizures," *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015), it will not suffice for Plaintiffs in this case to point to generalized concepts such as the right to not have their religious exercise substantially burdened.

Qualified immunity shields Warden Rule here because Plaintiffs have not identified, and cannot identify, any precedent from the Fifth Circuit or the Supreme Court placing Warden Rule on notice that his alleged actions were in violation of RFRA. Again, the burden is on the plaintiff to identify some clearly established law arising from sufficiently similar factual circumstances.  *See, e.g.*, *Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (explaining that the defendants were entitled to

qualified immunity because the plaintiff had "not carried her burden of pointing this panel to any case that shows, *in light of the specific context of this case*, that the [defendants'] conduct violated clearly established law" (emphasis added)).  That would require showing that either the Fifth Circuit or the Supreme Court has squarely held that RFRA forbids housing male and female inmates together in the manner alleged by Plaintiffs or engaging in any other conduct of the type Plaintiffs identify as the alleged basis for their claim.  But no such showing can be made.

To the contrary, Plaintiffs have elsewhere explained that this case involves "an area of law rife with nuance and complexity, on a novel issue of law"—so much so that this Court's entry of a permanent injunction a few months ago to separate the male inmates from Plaintiffs at FMC Carswell represented a "'landmark ruling,'" according to one of Plaintiffs' recent filings.[1]  (Doc. 177 at 12 (citation omitted).)  But this very novelty, as well as the "landmark" nature of the Court's injunction, confirms that qualified immunity applies and requires dismissal of any claim against Warden Rule in his individual capacity.  "Qualified immunity protects against novel theories of statutory or Constitutional injury," the Fifth Circuit holds.  *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).  And individual-capacity defendants like Warden Rule "'should never be

---

[1] This permanent injunction was entered on Plaintiffs' claims for violation of bodily integrity and under the Eighth Amendment, but these claims related to the same kind of alleged harms and risks presented by male inmates that Plaintiffs rely on for their RFRA claims (including their still-pending RFRA claim for injunctive relief), and Plaintiffs expressly tied their Eighth Amendment claim to the issue of their religious exercise.  (*See* Doc. 163 at 4–5 (explaining the overlapping and interconnected relationship of Plaintiffs' claims); *see also* Doc. 149, ¶ 119 (Plaintiffs' allegation that the Eighth Amendment was violated by reason of the alleged violation of Plaintiffs' religious exercise).)

subject to damages liability for failing to anticipate novel developments in constitutional law'"—or, as here, in statutory law. *See Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *8 (5th Cir. June 10, 2024) (citation omitted). Even if subsequent court decisions eventually bring clarity to the legal issues in question, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" in the present. *al-Kidd*, 563 U.S. at 743. "To subject officers to any broader liability would be to disrupt the balance that [the Supreme Court's] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." *Ziglar v. Abbasi*, 582 U.S. 120, 151–52 (2017) (internal quotation marks and citation omitted).

Indeed, the uncertain nature of the legal landscape that was confronting prison officials like Warden Rule at the time period relevant to Plaintiffs' claim is further confirmed by the fact that even within the last year and a half, several courts have issued decisions suggesting that the Constitution may actually *require* certain male inmates who identify as transgender to be housed in female prison facilities. *See, e.g.*, *Doe v. Blanche*, 172 F.4th 901, 908–10 (D.C. Cir. 2026) (discussing the history of such litigation in federal court in the District of Columbia, in cases filed by male inmates); *Doe v. McHenry*, 763 F. Supp. 3d 81, 84 (D.D.C. Feb. 4, 2025) (now-vacated injunction against transfer of male inmates out of female prisons); *see also Shelby v. Petrucci*, No. 19-CV-2020, 2022 WL 16575766, at *1 (S.D.N.Y. Nov. 1, 2022) (requiring the government to transfer July Justine Shelby—one of the male inmates at FMC Carswell who is discussed in Plaintiffs' pleadings (*see* Doc. 149, ¶ 51)—to a "female facility").

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 7**

The legal landscape formed by this male inmate-driven litigation continues to be unsettled and evolving.  For example, in the very recent *Doe v. Blanche* decision issued in a consolidated appeal in which several of the plaintiffs are male inmates at FMC Carswell, the D.C. Circuit vacated various injunctions that had been entered in favor of the male inmates, but based only on a determination that it "[could not] sustain the district court's preliminary injunctions on the ground that *every* transgender woman (or every transgender woman diagnosed with gender dysphoria) in BOP custody has an Eighth Amendment entitlement to not be housed in men's facilities." *Doe*, 172 F.4th at 916 (emphasis added).  The court of appeals then seemingly left the door open for the district court to award (or re-award) similar relief to individual male inmates in the future (as opposed to awarding it to "every" transgender male inmate), if supported by "plaintiff-specific factfinding." *Id.* at 918.  And the district court in the *Doe* litigation has scheduled a preliminary injunction hearing on June 8, 2026 to consider doing just that, with the male inmates continuing to argue that the Constitution requires their placement in female facilities.  *See Doe v. Blanche*, No. 1:25-CV-286-RCL (D.D.C.).  It remains to be seen how the *Doe v. Blanche* litigation will play out, but one thing is clear:  Warden Rule has never had the benefit of any binding precedent that would squarely govern the issues raised by Plaintiffs relating to the housing of male inmates at FMC Carswell. Instead, Warden Rule and prison officials throughout the BOP continue to this day to be confronted with a welter of potentially conflicting court decisions that do not speak with any one single voice, much less lay down any body of clearly established law.

All of the foregoing is more than sufficient to show why Plaintiffs cannot meet

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 8**

their burden on the "clearly established law" prong of the qualified immunity analysis, but there is yet more. In particular, although there were no precedential decisions generated in favor of Plaintiffs' position in other litigation pre-dating the events relevant to this lawsuit, that was not for lack of trying by Plaintiff Fleming herself. Fleming had filed other lawsuits—including in this very district—to challenge the housing of male inmates in female prison facilities, but in those cases she never successfully established that her rights were violated, nor did her litigation lead to the creation of any clearly established law in her favor on the issue of housing male inmates in female prisons (as discussed below). This provides yet another data point showing that, no matter what the courts may ultimately decide going forward about the rules for housing (or not housing) male inmates in female prisons, the law in this area was not settled—much less clearly established—in favor of Plaintiffs leading up to and during the time period in which they allege Warden Rule was violating their rights.

For example, in prior litigation in this district that concluded in 2021, Fleming claimed that the government was "deliberately indifferent for her need for protection from transgender inmates, that she suffered retaliation for complaining about transgender inmates, that housing transgender inmates in the women's prison violated her First Amendment rights and her rights under the Religious Freedom Restoration Act, and that Defendants' policy of housing transgender inmates in the women's prison was unconstitutional." *See* Order Dismissing Case at 2–3, *Fleming v. United States*, No. 7:18-CV-004-O (N.D. Tex. Mar. 31, 2021) (Doc. 50 on the docket in that action). These allegations prompted the court to specifically discuss and consider BOP transgender

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 9**

policy, which the court explained included:  (1) BOP's general designation authority under 18 U.S.C. § 3621(b) to decide to house inmates in "any available penal or correctional facility that meets minimum standards of health and habitability"; (2) the Prison Rape Elimination Act (PREA) regulations at 28 C.F.R. § 115 that call for a "risk screening" of inmates (including transgender inmates) for risks of sexual abuse; and (3) the BOP Transgender Offender Manual, which provided guidance relating to the management of transgender inmates and required a "Transgender Executive Council" to consider issues relating to the placement of transgender inmates in specific facilities on a case-by-case basis.  *Id.* at 4–5.  Ultimately, the court rejected Fleming's claims that BOP transgender policy was "negligently enacted" based on what Fleming alleged were failures to consider the "potential physical and psychological harm to female inmates" and to consult with female inmates, community advocates, and prison experts.  *Id.* at 8–9. The court then went on to also determine that Fleming "failed to demonstrate that the Bureau of Prisons' policy of housing transgender inmates in the women's prison has resulted in a violation of her federal statutory or constitutional rights," and dismissed the case.  *Id.* at 16.

More recently, in a case filed by Fleming in the Northern District of Florida, the court conducted a bench trial and ruled against Fleming on a claim for invasion of bodily privacy due to the presence of male inmates in prison with her; specifically analyzed BOP's Transgender Offender Manual and found it to be reasonable; and ultimately dismissed all of Fleming's claims.  *See* Order Following Bench Trial at 3, 4–7, 9, *Fleming v. Pistro*, No. 4:21-CV-325-MW-MJF (N.D. Fla. Jan. 17, 2025) (Doc. 176 on

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 10**

the docket in that action).  Notably, the court had also determined, at an earlier stage of that case, that qualified immunity barred Fleming's RFRA claim against the warden of the Florida BOP facility in an individual capacity.  *See Fleming v. Strong*, No. 4:21-CV-325-MW-MJF, 2023 WL 2142670, at *4 (N.D. Fla. Jan. 25, 2023), *rec. accepted*, 2023 WL 2145978 (N.D. Fla. Feb. 21, 2023).  In words that would be equally true here, the court explained that "[t]he law preexisting [the warden's] conduct did not compel the conclusion that [the warden's] actions—housing biologically male inmates in open dormitories with Fleming and other female inmates, and requiring Fleming to address and refer to them with female pronouns[2]—violated RFRA."  *Id.*  The same considerations continue to apply with respect to Plaintiffs' claim against Warden Rule—the law in effect at the relevant time similarly did not compel any conclusion that Warden Rule's alleged conduct violated RFRA.

To sum up, it is Plaintiffs' burden to show that any purported harm caused by Warden Rule's alleged actions stem from rights clearly established under law at the time of the incidents in question, and the contours of those rights must have been sufficiently clear at that time such that a reasonable officer would understand that his actions were violative of the rights at issue.  But no such clearly established law existed to govern the matters at issue in Plaintiffs' complaint at any relevant time, and in the absence of any such clearly established law, Warden Rule is entitled to qualified immunity and a

---

[2] To be clear, Plaintiffs do not appear to allege that Warden Rule personally required them to address male inmates with female pronouns.  This was an additional allegation made against the warden in Florida, on top of Fleming's other allegations in Florida that do parallel her allegations here, relating to things like sharing living spaces with male inmates.

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 11**

dismissal of the RFRA claim against him.

> **2.     Plaintiffs fail to allege any violation of a statutory right by Warden Rule.**

Apart from the issue of clearly established law, Plaintiffs' RFRA claim also fails to overcome Warden Rule's entitlement to qualified immunity because Plaintiffs do not allege specific facts showing that Warden Rule actually violated any of Plaintiffs' rights under that statute.  When supervisory government officials like Warden Rule are sued in an individual capacity for alleged violations of a plaintiff's civil rights, "only the direct acts or omissions of the supervisor will support a claim for individual liability," and to hold the supervisor personally liable, he must be "personally involved" or his conduct must be causally connected to the alleged deprivation, or he must have "implemented a policy so deficient that the policy itself violates constitutional rights and is the moving force behind a constitutional deprivation."  *Ingle v. Butler*, No. 2:24-CV-140-Z-BR, 2025 WL 1184657, at *3 (N.D. Tex. Apr. 1, 2025), *rec. adopted*, 2025 WL 1182088 (N.D. Tex. Apr. 23, 2025).

Here, the body of Plaintiffs' second amended complaint contains only a few sparse allegations about Warden Rule, and nothing showing the type of direct, personal involvement that would be required to sustain an individual-capacity claim.  Plaintiffs first recite that "Warden Rule is responsible for the daily administration of FMC Carswell and the enforcement of BOP policies challenged here."  (Doc. 149, ¶ 6.)  Plaintiffs then later state that unspecified "[p]rison officials have permitted male inmates to be dispersed throughout the facility rather than confined to a separate housing unit," and that "Warden

Rule has discretion to assign all male inmates to a single unit for security and administrative reasons, but Warden Rule has declined to do so." (Doc. 149, ¶ 65.) That is the totality of the specific factual allegations against Warden Rule in the body of the second amended complaint, and as discussed below, these allegations are insufficient to support a claim against Warden Rule for individual-capacity liability (nor do they support Plaintiffs' conclusory recitations of their claim and of Warden Rule's alleged liability that appear within the paragraphs comprising the RFRA claim itself (within the "Fourth Cause of Action" section at Doc. 149, ¶¶ 133–37)).

Plaintiffs' allegations about Warden Rule's overall responsibility for administration and enforcement of BOP policy at FMC Carswell do not show the violation of any statutory right. First, although Plaintiffs allege that Warden Rule is "responsible" for the daily administration of FMC Carswell and the "enforcement of BOP polices" that Plaintiffs are challenging, neither of these allegations supports any claim. Plaintiffs' reference to Warden Rule's generalized responsibility for FMC Carswell's administration—i.e., due to his status as the warden—is essentially an attempt to impose respondeat superior or vicarious liability on Warden Rule by holding him personally liable for anything and everything that might happen at FMC Carswell, regardless of the absence of any well-pleaded facts establishing direct personal involvement.

But even if one were to assume some violation of Plaintiffs' RFRA rights occurred at FMC Carswell so as to cause Plaintiffs to sustain compensable damages, there are no factual allegations showing that *Warden Rule* personally caused the alleged harm, and "[g]overnment officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676; *see also*

*Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 55–56 (D.D.C. 2015) (explaining that a

RFRA claim is not available under a vicarious liability theory based on the actions of a

supervisor's subordinates, and that RFRA was enacted against the backdrop of *Bivens*

and § 1983 litigation in which it is well-established that no such supervisory liability

exists).

Plaintiffs' allegation that Warden Rule had a general responsibility for the

"enforcement of BOP polices" at FMC Carswell is also insufficient to make out any

violation of RFRA.  The policy that Plaintiffs primarily seem to have in mind is that of

housing (some) transgender-identifying male inmates alongside female inmates,[3] as well

as the attendant interactions between the male inmates and female inmates like Plaintiffs.

(*See* Doc. 1 at p. 2 ("[T]he BOP endangers female inmates by housing biological men . . .

at FMC Carswell . . . . This unjust policy and practice must cease.").)  But Plaintiffs have

not pleaded any facts showing that Warden Rule should have been on notice that any

policy he was enforcing was "so deficient that the policy itself violates [statutory] rights

and is the moving force behind a [statutory] deprivation." *Ingle*, 2025 WL 1184657, at

*3 (with references to constitutional rights and deprivations, as opposed to statutory

rights and deprivations, in the original).

The relevant legal landscape at the time of Warden Rule's actions also dispels any

---

[3] Plaintiffs do not contend that Warden Rule *created* this policy, which makes sense given that Fleming previously challenged the housing of male inmates at FMC Carswell under a predecessor warden.  *See Fleming v. United States*, No. 7:18-CV-004-O (N.D. Tex.) (prior lawsuit with then-Warden Jody Upton as a defendant).

such thought.  As discussed above, just a few years ago in a different lawsuit filed by Fleming, another court in this district rejected Fleming's challenge to BOP transgender policy, after considering the relevant "statutory and regulatory background" including things like the PREA regulations that Plaintiffs have challenged in this litigation and the BOP Transgender Offender Manual, as well as the agency's Transgender Executive Council.  *See* Order Dismissing Case in No. 7:18-CV-004-O (N.D. Tex.), *supra*, at 4–5, 8–9.  Given that a court in this district had recently considered BOP transgender policy at Fleming's request but ultimately rejected her challenge to it, it cannot be said that Warden Rule was all the while incurring personal liability on account of this same policy based on his supervisory role as the warden at FMC Carswell.

Similarly, when the court in the Northern District of Florida considered Fleming's challenge to the BOP Transgender Offender Manual even more recently, it likewise rejected her claims, and expressly found the policy as set forth in the manual to be reasonable.  *See* Order Following Bench Trial in No. 4:21-CV-325-MW-MJF (N.D. Fla.), *supra*, at 5–7.

In light of these rulings, it cannot be said that Warden Rule should have somehow been on notice that some aspect of BOP transgender policy was so deficient as to give rise to personal liability on his part.  Moreover, to the extent Plaintiffs are complaining about abusive behavior by male inmates (or the threat or fear of the possibility of such behavior), they fail to show that any such behavior was or would have been carried out *pursuant to or consistent with* any BOP policy (as opposed to in violation of it).  And there is no plausible reading of Plaintiffs' allegations under which this would be the

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 15**

case—abusive behavior by *any* inmate, male or female, would not be consistent with BOP policy.  No basis for subjecting Warden Rule to personal liability on the basis of his overall administration of FMC Carswell or his "enforcement" of BOP policy is shown.

    <u>Plaintiffs fail to plead facts showing that Warden Rule had discretion to order male inmates into segregated housing</u>.  Plaintiffs' remaining factual allegation specific to Warden Rule is that he allegedly "has discretion to assign all male inmates to a single unit for security and administrative reasons, but [] has declined to do so," such that male inmates were instead "dispersed throughout the facility rather than confined to a separate housing unit." (Doc. 149, ¶ 65.)  However, Plaintiffs plead no facts showing the existence of this alleged discretion.  And 28 C.F.R. § 115.42(g) confirms that no such discretion existed at any relevant time, given that this regulation dictates that "[t]he agency shall not place lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such inmates."  Again, no basis for subjecting Warden Rule to personal liability on the basis of allegedly failing to exercise discretion is shown, where Plaintiffs plead no facts establishing that such discretion in fact existed—and § 115.42(g) confirms that it did

**Motion to Dismiss on Behalf of Defendant Warden T. Rule in his Individual Capacity – Page 16**

not.[4]

* * * * *

For the reasons outlined above, Warden Rule is entitled to qualified immunity on both prongs of the qualified immunity analysis (with either prong by itself a sufficient basis upon which to confer immunity).

**B.      The Prison Litigation Reform Act bars Plaintiffs' RFRA claim because Plaintiffs fail to make any showing of a physical injury or statutorily defined sexual act as a result of the challenged conduct.**

The Court need go no further if it agrees that Warden Rule is entitled to qualified immunity. But even aside from any consideration of qualified immunity, the Prison Litigation Reform Act serves as an additional, independent bar to Plaintiffs' RFRA claim against Warden Rule. Plaintiffs seek compensatory damages from Warden Rule (Doc. 149 at p. 39) and explain that they have "suffered and continue to suffer emotional, dignitary, spiritual, and other compensable injuries, including but not limited to humiliation, anxiety, loss of sleep, fear of sexual assault, and violation of their religious conscience" (Doc. 149, ¶ 136). But the Prison Litigation Reform Act precludes any claim for such alleged injuries unless the inmate has first shown a physical injury or the commission of a statutorily defined sexual act while in custody.

Specifically, under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental

---

[4] In addition, as the Court is aware, a series of injunctions were entered in other litigation beginning in February 2025 to require BOP to maintain and continue various male inmates housing status in female prison facilities, which the government understood to prohibit moving the male inmates at FMC Carswell into a separate segregated unit. (*See* Doc. 166 at 3.)

or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18)." Plaintiffs have not made a prior showing of any such physical injury or sexual act.[5] (*See* Doc. 149.) Instead, they cite only "emotional, dignitary, [and] spiritual" injuries (Doc. 149, ¶ 136), which by definition are forms of "mental or emotional injury" and conversely are not *physical* injuries (or any statutorily defined sexual act). Nor can Plaintiffs rely on any alleged manifestations or follow-on effects of these claimed injuries—such as anxiety, loss of sleep, or fear—to satisfy the physical injury requirement. *See, e.g.*, *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (explaining that allegations that a prisoner had suffered "mental anguish, emotional distress, psychological harm, and insomnia" were barred by the physical injury requirement); *Figueroa v. Wright*, No. 9:07-CV-1223, 2009 WL 674262, at *8 (N.D.N.Y. Mar. 11, 2009) (explaining that "numerous courts have held . . . that even physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injuries' for purposes of the PLRA"); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (rejecting an inmate's attempt to rely on

---

[5] The sexual act must be of the type described in 18 U.S.C. § 2246, which defines that term in a very specific way as "(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *See* 18 U.S.C. § 2246(2).

depression and headaches caused by emotional distress to satisfy the physical injury requirement).

Because Plaintiffs have not made a prior showing of a qualifying physical injury or the commission of a sexual act falling into the (relatively narrow) statutory definition of that term, they cannot proceed on their RFRA claim against Warden Rule. *See Ali v. ICE*, No. 1:16-CV-037-BL, 2017 WL 4325785, at *10 (N.D. Tex. Aug. 29, 2017) ("With regard to the specific claims that may be allowed to be served upon some defendants (retaliation, First Amendment, RFRA), courts have recognized that § 1997e(e) bars a plaintiff from seeking monetary damages to compensate for emotional or mental injury, absent a showing of physical injury."), *rec. adopted*, 2017 WL 4296756 (N.D. Tex. Sept. 16, 2017); *Knight v. Shults*, No. 3:18-CV-34, 2020 WL 1283116, at *2 n.3 (S.D. Miss. Feb. 7, 2020) ("Knight does not claim that he suffered any physical injury as a result of his alleged First Amendment and RFRA violations.  Thus, to the extent he seeks compensatory damages, his claim is barred by the Prison Litigation Reform Act's physical injury requirement."), *rec. adopted*, 2020 WL 1277211 (S.D. Miss. Mar. 16, 2020); *see also Massingill v. Livingston*, 277 F. App'x 491, 493 (5th Cir. 2008) (affirming the dismissal of a Texas prisoner's claim that he was denied the right to freely practice his religion, based on § 1997e(e)'s bar on prisoner claims for compensatory damages without a prior showing of physical injury).

### V.      Conclusion

For all these reasons, the Court should dismiss the RFRA claim asserted against Warden Rule in his individual capacity.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Warden T. Rule,
in his Individual Capacity

Certificate of Service

On June 5, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney