IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

| | |
|---|---|
| RHONDA FLEMING, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 4:25-cv-00157-D |
| WARDEN T. RULE, *et al.*, | (Consolidated with Civil Action No. 4:25-cv-00438-D) |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS FLEMING AND
HERRERA'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL

RYAN RAYBOULD
UNITED STATES ATTORNEY

Brian W. Stoltz
  Assistant United States Attorney
  Texas Bar No. 24060668
Lisa R. Hasday
  Assistant United States Attorney
  Texas Bar No. 24075989
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8600
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov
lisa.hasday@usdoj.gov

Attorneys for Defendants

**Table of Contents**

I.     Introduction ................................................................................................. 1

II.    Any award would be payable to Plaintiffs, not their attorneys, and subject
       to offset for debts owed to the government. ............................................... 1

III.   Plaintiffs are not entitled to an award of attorneys' fees and expenses
       because Defendants' position was substantially justified. ........................ 3

IV.    Any fee award would be subject to the EAJA cap and any increase beyond
       the EAJA cost-of-living adjustment is unwarranted. ................................ 7

V.     Plaintiffs' claimed hours and expensive are excessive. ........................... 11

VI.    Conclusion ............................................................................................... 14

## Table of Authorities

### Cases

*Astrue v. Ratliff*,
   560 U.S. 586 (2010) ............................................................................................... 1, 2

*Beard v. Colvin*,
   No. 1:14-cv-144-DAS, 2015 WL 4527040 (N.D. Miss. July 27, 2015) ........................ 1

*Comm'r v. Jean*,
   496 U.S. 154 (1990) .................................................................................................. 12

*Davidson v. Veneman*,
   317 F.3d 503 (5th Cir. 2003) .................................................................................... 3, 9

*Est. of Cervin v. Comm'r*,
   200 F.3d 351 (5th Cir. 2000) .................................................................................... 8, 9

*F.A.A. v. Cooper*,
   566 U.S. 284 (2012) .................................................................................................. 12

*Faulk Co. v. Becerra*,
   No. 4:24-CV-609-P, 2025 WL 1953854 (N.D. Tex. July 16, 2025) .............................. 7

*Fleming v. Strong*,
   No. 4:21-cv-325-MW-MJF, 2023 WL 3603750 (N.D. Fla. Apr. 4, 2023) ..................... 4

*Fleming v. Strong*,
   No. 4:21-cv-325-MW-MJF, 2023 WL 3604362 (N.D. Fla. May 23, 2023) ................... 4

*Hall v. Shalala*,
   50 F.3d 367 (5th Cir. 1995) ........................................................................................ 7

*Haygood v. Morrison*,
   116 F.4th 439 (5th Cir. 2024) ................................................................................... 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................. 12

*Lucas v. White*,
   63 F. Supp. 2d 1046 (N.D. Cal. 1999) ....................................................................... 11

*Maddox v. Comm'r*,
   No. 3:22-cv-2829-BK, 2024 WL 7051313 (N.D. Tex. May 31, 2024) .......................... 2

*Nkenglefac v. Garland*,
  64 F.4th 251 (5th Cir. 2023) .................................................................................. 8

*Perales v. Casillas*,
  950 F.2d 1066 (5th Cir. 1992) .............................................................................. 10

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ............................................................................... 3, 4, 8, 9, 10

*Powers v. Comm'r*,
  43 F.3d 172 (5th Cir. 1995) .................................................................................. 11

*Sylejmani v. Barr*,
  768 F. App'x 212 (5th Cir. 2019) ............................................................................ 4

*Turner v. Safley*,
  482 U.S. 78 (1987) .................................................................................................. 4

*United States v. Truesdale*,
  211 F.3d 898 (5th Cir. 2000) .................................................................................. 3

*W.M.V.C. v. Barr*,
  926 F.3d 202 (5th Cir. 2019) ................................................................................ 12

*Woodford v. Ngo*,
  584 U.S. 81 (2006) ................................................................................................ 12

## Statutes, Rules, and Other Authorities

28 U.S.C. § 1920(2) ................................................................................................ 14

28 U.S.C. § 2412(a)(1) ........................................................................................... 13

28 U.S.C. § 2412(d) .................................................................................................. 1

28 U.S.C. § 2412(d)(1)(A) ........................................................................................ 3

28 U.S.C. § 2412(d)(2)(A) ................................................................................... 7, 11

31 U.S.C. § 3727 ....................................................................................................... 2

42 U.S.C. § 1997e(a) ............................................................................................... 12

Fed. R. Civ. P. 54(d) ............................................................................................... 13

S. Rep. No. 94-1011 (1976) ........................................................................................ 12

## I.        Introduction

Plaintiffs Rhonda Fleming and Miriam Crystal Herrera request, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), a payment of fees and expenses related to their constitutional claims in this lawsuit.  Doc. 177.  As an initial matter, Plaintiff Fleming owes the federal government more than $4 million, and any fees award would be offset by this debt.  Regardless, the Court should deny Plaintiffs' application because Defendants' position in connection with this litigation was substantially justified given the state of the law at all relevant times.  Additionally, even if some fees are awarded, Plaintiffs are not entitled to any special factors enhancement under EAJA, and their claimed amounts are excessive in certain respects.  Accordingly, Defendants respectfully request that the Court deny Plaintiffs' application, or in the alternative limit any award of fees as set forth herein.

## II.       Any award would be payable to Plaintiffs, not their attorneys, and subject to offset for debts owed to the government.

The EAJA provides that any award of fees or expenses be directed "to a prevailing party" rather than to a prevailing party's attorney.  28 U.S.C. § 2412(d)(1)(A); *see Astrue v. Ratliff*, 560 U.S. 586, 588–89 (2010).  Plaintiffs argue that any award should be paid directly to counsel because Plaintiffs "assigned their rights to recovery of fees and costs to counsel."  Doc. 177 at 23 (citing *Beard v. Colvin*, No. 1:14-cv-144-DAS, 2015 WL 4527040, at *2 (N.D. Miss. July 27, 2015)).[1]  For such an assignment to be valid, the

---

[1] "Doc. __" citations refer to the items on the Court's electronic docket.

Defendants' Response to Plaintiffs Fleming and Herrera's Application
for Attorneys' Fees and Costs – Page 1

assignment must meet the requirements of the Assignment of Claims Act, 31 U.S.C.

§ 3727.  The Assignment of Claims Act imposes the following requirements:

> An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued.  The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses.  The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment.  The certificate shall state that the official completely explained the assignment when it was acknowledged.

31 U.S.C. § 3727.  These requirements have not been met here and, even if these requirements are met in the future, "the vast majority of courts in this Circuit which have addressed assignments . . . have directed that the EAJA fee award be made payable to the claimant despite the assignment."  *Maddox v. Comm'r*, No. 3:22-cv-2829-BK, 2024 WL 7051313, at *2 (N.D. Tex. May 31, 2024) (collecting cases).  Moreover, any assignment would be subject to an offset to pay for any pre-existing debts of either Plaintiff to the federal government, as Plaintiffs seem to acknowledge.  *See Astrue*, 560 U.S. at 597 (explaining that, in 2005, "the Treasury Department modified the TOP [Treasury Offset Program] to require offsets against 'miscellaneous' payments such as attorney's fees awards"); *id.* at 589 (explaining that a fee award is "subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States"); Doc. 177 at 23 (noting that *Beard* allowed assignment of an award to counsel "subject to any legitimate offsets").  As of May 2026, Fleming owes the United States approximately $4,423,987.61.  Accordingly, as a practical matter, any fees or expenses recovered herein will serve to reduce Fleming's debt rather than being paid over to anyone.

**Defendants' Response to Plaintiffs Fleming and Herrera's Application**
**for Attorneys' Fees and Costs – Page 2**

### III.   Plaintiffs are not entitled to an award of attorneys' fees and expenses because Defendants' position was substantially justified.

Here, although Plaintiffs ultimately prevailed by obtaining permanent injunctive relief on their constitutional claims, no award should be allowed because the government's position with respect to Plaintiffs' claims was substantially justified. *See* 28 U.S.C. § 2412(d)(1)(A).[2]  Failure to prevail does not automatically mean that the government's position was not substantially justified. *See Pierce v. Underwood*, 487 U.S. 552, 569 (1988) ("[T]he Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose.").  While the EAJA itself does not define "substantially justified," the Supreme Court has explained that, to meet this standard, the government must show that its position was "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Id*. at 565.  "This standard is not overly stringent." *Davidson v. Veneman*, 317 F.3d 503, 506 (5th Cir. 2003) (citing *Pierce*, 487 U.S. at 565).  Indeed, the government need not show that its position was "'justified to a high degree.'" *Pierce*, 487 U.S. at 565.  Moreover, the government must prove only by a preponderance of the evidence that its position was substantially justified. *United States v. Truesdale*, 211 F.3d 898, 908 (5th Cir. 2000).

Whether the government's position and litigation arguments were "grounded in . . . precedents" is relevant to the question of whether its position was substantially

---

[2] With respect to Plaintiffs' constitutional claims, Defendants do not rely upon § 2412(d)(1)(A)'s other exception to allowing an award—for "special circumstances [that] make an award unjust."

**Defendants' Response to Plaintiffs Fleming and Herrera's Application for Attorneys' Fees and Costs – Page 3**

justified. *See Sylejmani v. Barr*, 768 F. App'x 212, 219, 220 (5th Cir. 2019) (concluding that the government had "met its burden to demonstrate that its litigation position—though not sufficient to save the [agency's] decision—was 'justified to a degree that could satisfy a reasonable person'" (citing *Pierce*, 487 U.S. at 565)). Here, precedent in the form of prior court rulings in other litigation filed by Fleming herself has informed the government's position, both in this litigation itself and with respect to the agency's underlying actions. Fleming previously sought injunctive relief against the government in a lawsuit in Florida in which she claimed that Federal Bureau of Prisons (BOP) Transgender Policy violated her constitutional right to bodily privacy. *See Fleming v. Strong*, No. 4:21-cv-325-MW-MJF, 2023 WL 3603750, at *1 (N.D. Fla. Apr. 4, 2023), *report and recommendation adopted*, No. 4:21-cv-325-MW-MJF, 2023 WL 3604362 (N.D. Fla. May 23, 2023). The court denied her motion and eventually dismissed all of her claims, finding that the government had not violated Fleming's right to bodily privacy. *See id*. at *4; *Fleming v. Pistro*, No. 4:21-cv-325-MW-MJF, ECF 176 (N.D. Fla. Jan. 17, 2025). In so finding, the court analyzed the BOP Transgender Offender Manual under *Turner v. Safley*, 482 U.S. 78 (1987), and concluded that it was reasonable. *See Fleming*, No. 4:21-cv-325-MW-MJF, ECF 176, at *5.

Similarly, in prior litigation in this district that concluded in 2021, Fleming claimed that the government was "deliberately indifferent for her need for protection from transgender inmates, that she suffered retaliation for complaining about transgender inmates, that housing transgender inmates in the women's prison violated her First Amendment rights and her rights under the Religious Freedom Restoration Act, and that

**Defendants' Response to Plaintiffs Fleming and Herrera's Application**
**for Attorneys' Fees and Costs – Page 4**

Defendants' policy of housing transgender inmates in the women's prison was unconstitutional." *See* Order Dismissing Case at 2–3, *Fleming v. United States*, No. 7:18-CV-004-O (N.D. Tex. Mar. 31, 2021) (Doc. 50 on the docket in that action). These allegations prompted the court to specifically discuss and consider BOP transgender policy, which the court explained included: (1) BOP's general designation authority under 18 U.S.C. § 3621(b) to decide to house inmates in "any available penal or correctional facility that meets minimum standards of health and habitability"; (2) the Prison Rape Elimination Act (PREA) regulations at 28 C.F.R. § 115 that call for a "risk screening" of inmates (including transgender inmates) for risks of sexual abuse; and (3) the BOP Transgender Offender Manual, which provided guidance relating to the management of transgender inmates and required a "Transgender Executive Council" to consider issues relating to the placement of transgender inmates in specific facilities on a case-by-case basis. *Id.* at 4–5. Ultimately, the court rejected Fleming's claims that BOP transgender policy was "negligently enacted" based on what Fleming alleged were failures to consider the "potential physical and psychological harm to female inmates" and to consult with female inmates, community advocates, and prison experts. *Id.* at 8–9. The court then went on to also determine that Fleming "failed to demonstrate that the Bureau of Prisons' policy of housing transgender inmates in the women's prison has resulted in a violation of her federal statutory or constitutional rights," and dismissed the case. *Id.* at 16.

In light of these decisions, the substantial-justification requirement is met with respect to the government's underlying position and its position in this litigation. The

**Defendants' Response to Plaintiffs Fleming and Herrera's Application**
**for Attorneys' Fees and Costs – Page 5**

government's litigation position has also been substantially justified in other ways. The government's assertion of an exhaustion defense, for example, was consistent with law and precedent, *see* 42 U.S.C. § 1997e(a), *Woodford v. Ngo*, 584 U.S. 81, 83–84 (2006), and the exhaustion issue was sufficiently complex and uncertain that the Court held an evidentiary hearing on that issue, and then ruled only that "defendants have failed at this preliminary stage to demonstrate that they are likely to prevail on their exhaustion defense" (Doc. 117 at 1)—not that the exhaustion defense had been definitively resolved against Defendnats. In an effort to streamline these proceedings, though, Defendants did not continue further litigating the exhaustion issue with respect to Plaintiffs' constitutional claims, but instead worked with Plaintiffs to facilitate the entry of permanent injunctive relief. This was done out of a desire to expeditiously resolve these proceedings in an efficient way and in recognition of the fact that the government's policy as announced by the current Administration in January 2025 is aligned with Plaintiffs' desire to be separated from male inmates while in custody—notwithstanding that prior court decisions had failed to confer such relief upon female inmates (and Fleming specifically) as a matter of law.

* * * * *

To sum up, Plaintiffs raised claims in this action mirroring claims that had previously been asserted by Fleming in prior litigation, but had been dismissed or otherwise resolved against her, and the government's position at all relevant times met the not "overly stringent" standard for demonstrating substantial justification. Moreover, Plaintiffs themselves describe this litigation as involving a "novel issue of law," in "an

**Defendants' Response to Plaintiffs Fleming and Herrera's Application
for Attorneys' Fees and Costs – Page 6**

area of law rife with nuance and complexity" (so much so that the Court's award of relief to Plaintiffs represented a "landmark ruling"), Doc. 177 at 12 & n.12, which all further cuts against any finding that the government's position has not been substantially justified. "If an issue is difficult or novel, the United States' position may be substantially justified." *Faulk Co. v. Becerra*, No. 4:24-CV-609-P, 2025 WL 1953854, at *1 (N.D. Tex. July 16, 2025). Here, there is no question that the issue was novel—Plaintiffs aver that this was the case. And it is also true that in several other lawsuits, including one handled by another court within this district (*Fleming v. United States*, No. 7:18-CV-004-O), BOP transgender policy and practices were put directly at issue but there was no finding that these violated Fleming's rights. Under these circumstances, the government's position has been substantially justified even if—as a policy matter—the government does now agree that female inmates should be separated from male inmates in prison facilities.

**IV.**      **Any fee award would be subject to the EAJA cap and any increase beyond the EAJA cost-of-living adjustment is unwarranted.**

Fee awards under 28 U.S.C. § 2412(d) are capped at $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). A cost-of-living adjustment under the EAJA is discretionary, not mandatory. *Hall v. Shalala*, 50 F.3d 367, 368, 370 (5th Cir. 1995). That said, to the extent Plaintiffs are awarded attorneys' fees, the government would not

object to an enhancement of the $125 statutory rate based on increases in the cost of living.

But as for any enhancement based on a special factor, the government would oppose. In *Pierce v. Underwood*, 487 U.S. 552 (1988), the Supreme Court narrowly construed the EAJA's "special factor" provision, emphasizing that deviations from what was then a cap of $75 per hour should be rare, lest exceptions swallow the rate that Congress established as generally sufficient to ensure adequate representation. *See id.* at 571–74. The *Pierce* Court stressed that Congress could not have intended the "special factor" provision to mean "that if the rates for all lawyers in the relevant city—or even in the entire country—come to exceed $75 per hour (adjusted for inflation), then that market-minimum rate will govern instead of the statutory cap." *Id.* at 572. Rather, the Court found that "the 'special factor' formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be." *Id.*

The Fifth Circuit has explained that, pursuant to *Pierce*, the special factor inquiry involves assessing three questions: "(1) whether the attorneys had a specialized skill that was necessary to the litigation; (2) whether the number of attorneys with such skill was so limited that litigants with potentially valid claims were unable to obtain counsel; and (3) whether an increased fee award would have reduced this shortage." *Nkenglefac v. Garland*, 64 F.4th 251, 255 (5th Cir. 2023) (quoting *Est. of Cervin v. Comm'r*, 200 F.3d 351, 353–54 (5th Cir. 2000)).

As to the first question regarding the presence of a specialized skill, the EAJA's reference to "'qualified attorneys' . . . must refer to attorneys 'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." *Pierce*, 487 U.S. at 572.  Legal specializations such as tax law or insurance law are insufficient to meet the "special factors" exception.  *Est. of Cervin*, 200 F.3d at 354.  Instead, "nonlegal or technical abilities" are required. *Id*. at 355.  And here, counsel has identified no such nonlegal or technical ability that was needed to handle this lawsuit.  Plaintiffs' lead attorney Cort Thomas is no doubt a very capable attorney and appears to specialize in things like securities law, bankruptcy law, and commercial law.[3]  *See* Doc. 178 at PageID 2638, ¶¶ 3–4 (stating that for seven years Thomas worked on a variety of commercial disputes and then for the next eight years his "law practice has been substantially dedicated to complex business and commercial litigation").  But this sort of specialization does not translate to the kind of special "nonlegal or technical abilities" for which an EAJA enhancement is available.  *See Davidson*, 317 F.3d at 354 (giving as an example members of the Patent Bar, who have science and technical qualifications and take a separate examination for admission to their bar).  Even an "extraordinary level of the general lawyerly knowledge and ability useful in all litigation" is not enough, *Pierce*, 487 U.S. at 572, and likewise even if the attorney is litigating in "a specialty area requiring an extensive and current knowledge of applicable statutes and regulations, such

---

[3] Mr. Thomas is mentioned specifically here since he has been functioning in a lead role, but this is not meant as a slight to any other lawyers at his firm who have worked on this case—all are very capable attorneys, but that does not translate to the kind of special factor relevant here.

is true for virtually any area of law, particularly those involving the intricate federal statutory schemes that typically give rise to awards under the EAJA," *Perales v. Casillas*, 950 F.2d 1066, 1078 (5th Cir. 1992) (internal quotation marks omitted).

The *Pierce* Court cautioned that "the other 'special factors' envisioned by the exception must be such as are not of broad and general application." *Pierce*, 487 U.S. at 573. While the Court declined to specify what such factors might be, it held that none of the factors that the district court relied upon to justify its rate enhancement qualified, including "[t]he 'novelty and difficulty of the issues,' 'the undesirability of the case,' the 'work and ability of counsel,' and 'the results obtained.'" *Id*. Yet these are precisely the factors upon which Plaintiffs rely. Doc. 177 at 12, 15. The *Pierce* Court explained that these "are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *Pierce*, 487 U.S. at 573. The Court thus concluded that the district court abused its discretion by relying on these factors. *Id*.

As to the Fifth Circuit's second question regarding the limited availability of qualified attorneys, Plaintiffs also have not made the requisite showing. They argue that their status as court-appointed counsel proves that the number of qualified attorneys was limited. *See* Doc. 177 at 16–17. But their appointment proves only that their particular incarcerated clients may have been unable to secure adequate representation without the Court's assistance, not that Plaintiffs could not obtain counsel because the field of qualified attorneys was limited. (In fact, the intervenor plaintiffs obtained representation without any need for court appointed-counsel, and the government is aware of other matters in this district in which prisoners have successfully obtained private counsel

**Defendants' Response to Plaintiffs Fleming and Herrera's Application**
**for Attorneys' Fees and Costs – Page 10**

without the need for any court appointment. *See, e.g.*, *Coleman v. United States*, No. 4:15-CV-769-O (N.D. Tex.); *Dudley v. United States*, No. 4:19-CV-317-O (N.D. Tex.).) And as to the third question about whether an increased fee award would have reduced this claimed shortage of attorneys, an increased fee award would not necessarily have had much impact, as for the same reasons discussed above, attorneys seem willing to represent clients in circumstances similar to Plaintiffs' without any guarantee of such a fee enhancement.[4]  This district's local counsel requirement has also been no barrier to representation, as the Court granted the intervenor-plaintiffs' (unopposed) motion to proceed without local counsel. *See* Doc. 113.  In sum, Plaintiffs have not satisfied the elements for a "special factor" enhancement.

And even if Plaintiffs could satisfy the "special factor" elements, which Defendants deny, no enhancement should apply to time spent litigating fees, because such work requires no special expertise. *See Lucas v. White*, 63 F. Supp. 2d 1046, 1062–63 (N.D. Cal. 1999); *see also Powers v. Comm'r*, 43 F.3d 172, 183 (5th Cir. 1995) (stating, with respect to a statutory cap of $125 for attorneys' fees, that enhanced fees should not be awarded for fee litigation).  For the same reason, no enhancement should apply to travel time.  *See* Doc. 178 at 36, 42, 44, 49, 56 (ECF numbers).

###### V.      Certain of Plaintiffs' claimed hours and expenses are excessive.

Attorneys' fees and other expenses awarded under the EAJA must be reasonable. 28 U.S.C. § 2412(d)(2)(A).  Here, though, the claimed hours and expenses are excessive.

---

[4] Again, the intervenor-plaintiffs are represented by counsel who was not court-appointed.

**Defendants' Response to Plaintiffs Fleming and Herrera's Application for Attorneys' Fees and Costs – Page 11**

<u>Hours</u>.  In determining what constitutes a reasonable attorneys' fee, a court's first step is to calculate a "lodestar" by multiplying the number of hours it finds the prevailing party expended on the litigation by a reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[5]  Courts should exclude from the fee calculation "hours that were not 'reasonably expended.'"  *Id*. at 434 (quoting S. Rep. No. 94-1011, at 6 (1976)).  An excessive number of claimed hours, overstaffing, and redundancy are a few reasons that hours might be reduced.  *See id*.

Here, one obvious example of excess hours arises from Plaintiffs' failure to proportionately reduce their claimed hours for certain work performed in benefit of Plaintiffs' unadjudicated non-constitutional claims.  *See* Doc. 177 at 10  The case upon which Plaintiffs rely in support of including those hours—*Haygood v. Morrison*, 116 F.4th 439, 446 n.10 (5th Cir. 2024)—is not an EAJA case and appears never to have been cited by the Fifth Circuit in an EAJA case.  Plaintiffs simply assume that *Haygood* applies, but that is far from clear.  Imposing a fee award against the federal government is not the same as imposing such an award in other contexts.  EAJA represents a waiver of sovereign immunity, and "any ambiguities in the scope of a waiver" of sovereign immunity must be construed "in favor of the sovereign."  *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012); *see also W.M.V.C. v. Barr*, 926 F.3d 202, 208 (5th Cir. 2019) ("As a partial waiver of sovereign immunity, the EAJA is strictly construed in favor of the United

---

[5] Although *Hensley* is not an EAJA case, the Supreme Court has stated that it applies to the EAJA, *Comm'r v. Jean*, 496 U.S. 154, 161 (1990), and courts consistently invoke *Hensley* in the EAJA context.

States." (internal quotation marks and citation omitted)).  Accordingly, hours for work that benefited Plaintiffs' non-constitutional claims should be proportionately reduced or excluded so as not to count such work toward any recoverable fee.

The number of hours claimed for work on the constitutional claims also appear to be excessive based on the fact that five attorneys have handled this matter for Plaintiffs (with four attorneys billing substantial numbers of hours), and this overstaffing seems to have led to some inefficiencies and redundancies.  For example, Plaintiffs' lead counsel emphasized giving junior attorneys courtroom experience over presenting the most efficient oral argument.  *See* Doc. 98 at 4 ("We'll just split up the arguments . . . so my associates can get some experience."); *id*. at 4–63 (Plaintiffs' subsequent opening oral argument lasting approximately one hour and twenty minutes).  While it is a worthy practice to give junior attorneys courtroom experience, the government should not have to bear the cost of this training.  Neither should the government have to bear the cost of a lawyer attending hearings without participating in them.  *See* Doc. 178 at 42 (requesting $295 per hour for a non-participating associate to attend the hearing on November 17, 2025, which lasted for approximately an hour and a half); *id*. at 49 (requesting $295 per hour for the associate to attend the hearing on December 18, 2025, for a total expense of $1,652).

Expenses.  Plaintiffs request $1,311.35 for expenses.  Doc. 177 at 29.  The expenses are for parking and for hearing transcripts.  Doc. 178 at 61–62.  The EAJA provides that "a judgment for costs, as enumerated in section 1920 of this title . . . may be awarded to the prevailing party in any civil action brought by or against the United States

**Defendants' Response to Plaintiffs Fleming and Herrera's Application
for Attorneys' Fees and Costs – Page 13**

. . . ." 28 U.S.C. § 2412(a)(1).  Thus, a prevailing party may recover only costs that are specified in 28 U.S.C. § 1920; *see also* Fed. R. Civ. P. 54(d) (providing that "costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law").  While "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" are taxable costs, *see* 28 U.S.C. § 1920(2), parking is not a taxable cost.  Therefore, any award for expenses should be reduced by $34.35, which are the claimed parking expenses.  *See* Doc. 178 at 61.[6]   *See id*. at 62.

## VI.    Conclusion

The Court should deny Plaintiffs' application, or in the alternative limit any award as set forth herein.

---

[6] Defendants would also request that Plaintiffs provide receipts for the transcript expenses rather than listing them as line items without documentation.

**Defendants' Response to Plaintiffs Fleming and Herrera's Application
for Attorneys' Fees and Costs – Page 14**

Respectfully submitted,

BRETT A. SHUMATE
ASSISTANT ATTORNEY GENERAL

RYAN RAYBOULD
UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
  Assistant United States Attorney
  Texas Bar No. 24060668
Lisa R. Hasday
  Assistant United States Attorney
  Texas Bar No. 24075989
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8600
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov
lisa.hasday@usdoj.gov

Attorneys for Defendants

Certificate of Service

On June 8, 2026, I electronically submitted the foregoing document with the Clerk

of Court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the Court.  I hereby certify that I have served all parties electronically or

by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

**Defendants' Response to Plaintiffs Fleming and Herrera's Application
for Attorneys' Fees and Costs – Page 15**